1   NANCY HOFFMEIER ZAMORA (State Bar No. 137326)
    U.S. Bank Tower
2   633 West 5th Street, Suite 2600
    Los Angeles, California   90071
3   (213) 488-9411   FAX:   (213) 488-9418
    e-mail:  zamora3@aol.com
4
    Chapter 7 Trustee
5

6

7               UNITED STATES BANKRUPTCY COURT

8               CENTRAL DISTRICT OF CALIFORNIA

9               SAN FERNANDO VALLEY DIVISION

| | | |
|---|---|---|
| 10 | In re | ) Case No. 1:16-bk-11387-GM |
| 11 | REAL ESTATE SHORT SALES, INC., | ) Chapter 7 |
| 12 | Debtor. | ) MOTION FOR ORDER<br>) AUTHORIZING TRUSTEE TO SELL |
| 13 | | ) REAL PROPERTY FREE AND<br>) CLEAR OF LIENS, SUBJECT TO |
| 14 | | ) SHORT SALE APPROVAL;<br>) MEMORANDUM OF POINTS AND |
| 15 | | ) AUTHORITIES; DECLARATIONS<br>) IN SUPPORT [BERENDO |
| 16 | | ) PROPERTY] |
| 17 | | ) [FILED CONCURRENTLY WITH<br>) NOTICE OF MOTION FOR ORDER |
| 18 | | ) AUTHORIZING TRUSTEE TO SELL<br>) REAL PROPERTY FREE AND |
| 19 | | ) CLEAR OF LIENS, SUBJECT TO<br>) SHORT SALE APPROVAL |
| 20 | | ) [BERENDO PROPERTY]] |
| 21 | | ) DATE:  November 5, 2018<br>) TIME:  10:00 a.m. |
| 22 | | ) CTRM:  303 |

23

24

25

26

27

28

RESSI/Berendo sale motion

# TABLE OF CONTENTS

                                                                    PAGE

MOTION. . . . . . . . . . . . . . . . . . . . . . . . . . . .   1.

  I.     INTRODUCTION. . . . . . . . . . . . . . . . . . .   1.

  II.    LIENS AND PROPOSED DISBURSEMENTS FROM SALE ESCROW .   2.

  III.   LIENS NOT TO BE PAID. . . . . . . . . . . . . . .   4.

  IV.    FINDING OF GOOD FAITH PURCHASER . . . . . . . . .   5.

  V.     CONCLUSION. . . . . . . . . . . . . . . . . . . .   5.

MEMORANDUM OF POINTS AND AUTHORITIES. . . . . . . . . . . . .   6.

  I.  FACTS. . . . . . . . . . . . . . . . . . . . . . .   6.

    A.   GENERAL BACKGROUND. . . . . . . . . . . . . . .   6.

    B.   THE REAL PROPERTY . . . . . . . . . . . . . . .   6.

    C.   REAL ESTATE BROKER AND COMMISSION CALCULATION . . .   7.

    D.   MARKETING THE REAL PROPERTY . . . . . . . . . .   7.

    E.   TERMS OF PROPOSED SALE OF REAL PROPERTY . . . . . .   8.

  II.  ARGUMENT . . . . . . . . . . . . . . . . . . . .   10.

    A.   THE REAL PROPERTY IS PROPERTY OF THE ESTATE . . . .   10.

    B.   THE COURT HAS AUTHORITY TO APPROVE THE SALE

        OF THE REAL PROPERTY FREE AND CLEAR OF ANY

        INTEREST AND LIENS PURSUANT TO 11 U.S.C. §§363(b)

        AND (f) . . . . . . . . . . . . . . . . . . . .   10.

        1.  Liens to be paid in full . . . . . . . . . .   11.

        2.  Liens not to be paid . . . . . . . . . . . .   11.

    C.   SALE OF THE REAL PROPERTY FREE AND CLEAR OF LIENS IS

        IN THE BEST INTEREST OF CREDITORS OF THE ESTATE . . .   12.

    D.   NOTICE OF THE SALE IS ADEQUATE. . . . . . . . . .   12.

    E.   BUYER SHOULD BE DEEMED A "GOOD FAITH PURCHASER"

        PURSUANT TO 11 U.S.C. §363(m) . . . . . . . . . . .   13.

F.    THE BROKER COMMISSION SHOULD BE APPROVED. . . . . . 14.

G.    TRUSTEE MAY SELL PROPERTY OF THE ESTATE

WITHOUT OVERBID . . . . . . . . . . . . . . . . . 14.

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . 15.

DECLARATION OF BEHNAZ TAVAKOLI. . . . . . . . . . . . . . . 17.

DECLARATION OF NANCY HOFFMEIER ZAMORA . . . . . . . . . . . 20.

EXHIBIT A -- AGREEMENT. . . . . . . . . . . . . . . . . . . 25.

EXHIBIT B -- SHORT SALE APPROVAL AND HOA DEMAND . . . . . . 44.

EXHIBIT C -- PRELIMINARY TITLE REPORT . . . . . . . . . . . 57.

EXHIBIT D -- ESTIMATED CLOSING STATEMENT. . . . . . . . . . 73.

EXHIBIT E -- STATEMENTS WITH CURRENT BALANCES . . . . . . . 75.

EXHIBIT F -- GRANT DEED . . . . . . . . . . . . . . . . . . 84.

EXHIBIT G -- INSTRUCTION FOR REDUCED BROKER COMMISSION. . . 86.

1

**TABLE OF AUTHORITIES**

2   <u>CASES</u>                                                <u>PAGE</u>

*In re Abbotts Dairies of Pennsylvania, Inc.,*

    788 F.2d 143 (3d Cir. 1986). . . . . . . . . . . . . .   13.

*In re Bakalis*, 200 B.R. 525 (Bankr. E.D.N.Y. 1998). . . . .   14.

*In re Blue Coal Corp.*, 67 B.R. 798 (Bankr. Pa. 1994). . . .   14.

*In re Blue Coal Corp.*, 168 B.R. 553 (Bankr. Pa. 1994) . . .   14.

*Community Thrift & Loan v. Suchy (In re Suchy),*

    786 F.2d 900 (9th Cir. 1985) . . . . . . . . . . . . .   13.

*In re Cummins*, 15 B.R. 893 (BAP 9th Cir. 1981). . . . . . .   14.

*Ewell v. Diebert (In re Ewell),*

    958 F.2d 276 (9th Cir. 1992) . . . . . . . . . . . . .   13.

<u>FEDERAL STATUTES</u>

11 U.S.C. §363(b) . . . . . . . . . . . . . . . . . . .   1, 10.

11 U.S.C. §363(f) . . . . . . . . . . . . . . . . . . .   1, 10.

11 U.S.C. §363(m) . . . . . . . . . . . . . . 1, 5, 13, 14, 16.

11 U.S.C. §503(b) . . . . . . . . . . . . . . . . . . . . .   4.

11 U.S.C. §506(a) . . . . . . . . . . . . . . . . . . 1, 4, 11.

11 U.S.C. §506(c) . . . . . . . . . . . . . . . . . . . 1, 4.

11 U.S.C. §541(a)(1). . . . . . . . . . . . . . . . . . . .   10.

<u>RULES</u>

Federal Rule of Bankruptcy Procedure 6004(h). . . . . . . .   16.

# I.    <u>INTRODUCTION</u>

Nancy Hoffmeier Zamora, Chapter 7 Trustee ("Trustee") of the bankruptcy estate (the "Estate") in the above-captioned chapter 7 bankruptcy case (the "Case") of debtor Real Estate Short Sales, Inc. ("Debtor") hereby respectfully moves the Court for an order approving sale of that certain residential real property commonly known as 625 South Berendo Street, Unit #613, Los Angeles, California 90005, identified by Los Angeles County Assessor's Parcel Number 5502-027-098 (the "Real Property"), with the legal description set forth in the Preliminary Title Report prepared by First American Title Company ("First American") identified by order number 5546627, dated as of September 21, 2017 (the "PTR"), free and clear of any interests and liens pursuant to 11 U.S.C. §§363(b), (f) and (m), 506(a), and 506(c), and on an "AS-IS, WHERE-IS" basis, to Roshni Nelson and Jeffrey Kelsey ("Buyer") for a sales price of $610,000.00 (the "Sales Price") through escrow for sale of the Real Property (the "Sale Escrow") at Encore Escrow Company, Inc. ("Encore") and on the other terms and conditions set forth in that certain Purchase and Sale Agreement and Escrow Instructions (Residential Property) with short sale addendum dated as of March 17, 2017 as modified by amendments dated June 4, 2018 and June 12, 2018, and Addenda 1 through 4 dated June 4, 2018, June 12, 2018, July 17, 2018, and August 15 and 16, 2018, respectively (collectively, the "Agreement").

A true and correct copy of the Agreement (including Buyer's contingency removals) is attached as <u>Exhibit A</u> to the Declaration of Nancy Hoffmeier Zamora (the "Trustee Declaration") attached hereto and incorporated herein by reference.

## II.   **LIENS AND PROPOSED DISBURSEMENTS FROM SALE ESCROW**

Trustee moves for approval and authorization to execute any and all documents necessary to transfer the Real Property from the Estate to Buyer and to pay from the Sale Escrow at Encore the following:

A.   the debt secured by undisputed liens consisting of:

1.   the debt secured by the first deed of trust (the "First TD") in the original principal amount of $440,000.00 recorded on August 10, 2005 as instrument no. 05-1908862 of official records in the County of Los Angeles ("Official Records") with Mortgage Electronic Registration Systems, Inc., ("MERS") as beneficiary, as assigned to Wells Fargo Bank, N.A., as Trustee under the Pooling and Servicing Agreement Relating to Impac Secured Assets Corp., Mortgage Pass-Through Certificates, Series 2005-2 by various assignments, the last of which was recorded April 8, 2013 as instrument no. 13-518488 in the Official Records, now being serviced by Ocwen Loan Servicing, LLC (collectively, "First TD Holder"), plus accrued interest and other amounts that total approximately $814,824.24 as of April 27, 2018, for which First TD Holder has agreed to accept, as payment in full, a payoff amount of $492,829.31 (the "First TD Payoff") pursuant to First TD Holder's short sale approval letter dated October 11, 2018, including any subsequent updates to such letter (the "Short Sale Approval"), referred to at exception no. 18 in the PTR (true and correct copies of the Short Sale Approval and the PTR are attached as part of <u>Exhibit B</u> and as <u>Exhibit C</u>, respectively, to the Trustee Declaration and incorporated herein by reference), . . . . .

1      2.    the debt secured by the notice of homeowners

2    association assessment lien in the original amount of $4,224.68,

3    and any amounts due thereunder, recorded by Barcelona Tower, Inc.

4    (the "HOA") on January 24, 2007 as instrument no. 07-143266 of

5    Official Records, and the notice of homeowners association

6    assessment lien in the original amount of $48,652.28, and any

7    other amounts due thereunder, recorded by the HOA on August 20,

8    2015 as instrument no. 15-1027470 of Official Records

9    (collectively, the "HOA Liens") for which HOA has agreed to

10    accept $36,300.00 as payment in full of the HOA Liens and all

11    other current HOA charges (the "HOA Payoff") pursuant to a

12    reduced payoff demand dated August 21, 2018 (the "HOA Payoff

13    Demand") for which First TD Holder has consented to allow payment

14    from the Sales Price, referred to at exception nos. 20 and 23 of

15    the PTR, (a true and correct copy of the HOA Payoff Demand is

16    attached as a portion of Exhibit B to the Trustee Declaration and

17    incorporated herein by reference),

18    B.    the real estate broker commission (the "Broker Commission")

19        in the reduced amount of five percent (5%) of the Sales

20        Price of $610,000.00 ($30,500.00) to be paid one-half to

21        Rodeo Realty, Inc. ("Estate Broker") and one-half to Douglas

22        Elliman of California, Inc. ("Buyer Broker") as set forth in

23        the estimated closing statement prepared by Encore (the

24        "Estimated Closing Statement") and approved by the Short

25        Sale Approval (a true and correct copy of the Estimated

26        Closing Statement is attached as Exhibit D to the Trustee

27        Declaration and incorporated herein by reference);

28    . . . . .

C.    seller's closing costs including, but not limited to escrow

fees of $1,735.00, title fees of $1,951.50, and transfer

taxes of $3,416.00, pro-rated real property taxes of

$3,018.19, and Buyer's credit of $10,000.00 (the "Closing

Costs") as set forth in the Estimated Closing Statement and

approved by the Short Sale Approval; and

D.    the amount of approximately $36,300.00 to Trustee to deposit

into the Estate bank account (the "Estate Distribution") for

administrative fees and expenses of the Estate to be paid

pursuant to 11 U.S.C. §§506(c) and 503(b) as set forth in

the Estimated Closing Statement and approved by the Short

Sale Approval.

### III.   <u>LIENS NOT TO BE PAID</u>

In addition to the First TD and the HOA Liens, the PTR

includes another deed of trust identified as exception no. 19,

and described below, which is not to be paid:

A.    the debt secured by a second deed of trust (the "Second TD")

in the original principal amount of $120,833.00 recorded on

March 8, 2006 as instrument no. 05-500090 of Official

Records with Beneficial California, Inc., ("Beneficial") as

beneficiary, for which First TD Holder will not consent to

any payment from the Sales Price, and which is unsecured as

there is no equity in the Real Property to which the Second

TD can attach.

**There is no equity in the Real Property to which the Second**

**TD can attach after payment of the First TD.  Consequently,**

**pursuant to 11 U.S.C. §506(a), this claim is unsecured.  The**

**Broker Commission, the Closing Costs, the HOA Payoff, and the**

**Estate Distribution, pursuant to the Short Sale Approval, are being paid as a "carve-out" from the sale proceeds that would otherwise be paid to First TD Holder.**

Trustee reserves all rights to object to the validity, scope, and priority of all disputed liens, claims and/or interests, if necessary, which will attach to the funds received by the Estate from the sale in the same priority, validity, and scope as such liens currently exist against the Real Property but the Real Property will be sold free and clear of all liens, claims and/or interests.

### IV.   <u>FINDING OF GOOD FAITH PURCHASER</u>

Trustee requests that the Court's order (the "Sale Order") include a finding that Buyer is a "good faith purchaser" per 11 U.S.C. §363(m).

### V.   <u>CONCLUSION</u>

This motion (the "Motion") is based on the notice of motion (the "Notice") filed with this Court and served on Debtor, Debtor's counsel, the United States Trustee, all creditors, and other interested parties, and on the memorandum of points and authorities, and the declarations, including exhibits, attached hereto.

DATED: October 16, 2018


/s/ Nancy Hoffmeier Zamora
Nancy Hoffmeier Zamora
Chapter 7 Trustee

## MEMORANDUM OF POINTS AND AUTHORITIES

This Memorandum of Points and Authorities is submitted in support of the Motion to Sell Real Property Free and Clear of Liens, Subject to Short Sale Approval (the "Motion") to which it is attached.  The capitalized terms have the meanings ascribed to them in the Motion unless otherwise defined herein.

## I.   <u>FACTS</u>

### A.   GENERAL BACKGROUND

1.   On May 6, 2016 (the "Petition Date"), Debtor filed its voluntary petition for relief under Chapter 11 of the U.S Bankruptcy Code commencing the Case.  On September 19, 2017 (the "Conversion Date"), the Court entered that certain order converting the Case to Chapter 7.

2.   Trustee is the duly appointed, acting and permanent Chapter 7 Trustee of the Estate in the Case.

### B.   THE REAL PROPERTY

3.   The Real Property is one of the primary assets of the Estate.  Debtor listed the Real Property in its schedule A.

4.   According to the PTR, title to the Real Property is vested in Real Estate Short Sales, Inc.

5.   According to the PTR, at exception no. 21, Giancarlo Nicolas Molica, one of the shareholders of Debtor, transferred the Real Property to Debtor by that certain grant deed recorded on March 23, 2007 as instrument no. 20070669089 (the "Grant Deed").  A true and correct conformed copy of the Grant Deed is attached as <u>Exhibit F</u> to the Trustee Declaration and incorporated herein by reference.

. . . . .

**C.   REAL ESTATE BROKER AND COMMISSION CALCULATION**

6.   On December 11, 2017, the Court entered that certain order (the "Employment Order") authorizing Trustee to employ Estate Broker to market and sell the Real Property.  Estate Broker listed and actively marketed the Real Property for sale. Estate Broker informed Trustee regarding all marketing activity related to the Real Property.  Estate Broker received and presented thirteen (13) offers to Trustee.  Trustee, with the assistance of Estate Broker, made counter-offers.  After Trustee opened an escrow that the initial potential buyer canceled, Trustee negotiated the Agreement with Buyer and requested short sale approval that First TD Holder issued as of October 11, 2018.

7.   The Employment Order provides for the Broker Commission to be calculated based on six percent (6%) of the gross sales price for the Real Property.  Estate Broker and Buyer Broker agreed to a reduced percentage of five percent (5%) of the Sales Price based on First TD Holder's requirement in order to obtain the Short Sale Approval.  The total Broker Commission requested for the Court's approval is $30,500.00 (one-half each to Estate Broker and Buyer Broker) based on the Sales Price of $610,000.00. A true and correct copy of the fully executed instruction for reduced broker commission (the "Instruction for Reduced Broker Commission") is attached as <u>Exhibit G</u> to the Trustee Declaration and incorporated herein by reference.

**D.   MARKETING THE REAL PROPERTY**

8.   Estate Broker actively marketed the Real Property with Debtor's cooperation.  Debtor removed all personal property from the Real Property and turned over keys.  Estate Broker conducted

an open house and additional individual showings of the Real

Property to real estate agents and prospective buyers.  Estate

Broker responded to at least twenty (20) inquiries.  Estate

Broker listed the Real Property on the multiple listing service

(the "MLS") and various well-known internet real estate sites

such as Trulia, Redfin, Zillow, and Realtor.com (the "Internet

Sites").

**E.   TERMS OF PROPOSED SALE OF REAL PROPERTY**

9.   Trustee desires to maximize distributions to creditors

of the Estate by selling the Real Property free and clear of

liens and on an "AS-IS, WHERE-IS" basis to Buyer for the Sales

Price of $610,000.00 and pursuant to the other terms set forth in

the Agreement.

10.   The Sales Price offered by Buyer is the highest and

best offer that has been received, and not withdrawn, as of the

date of the Motion.  Trustee received a total of thirteen (13)

offers.  The initial potential buyer who opened escrow, subject

to short sale approval, subsequently canceled escrow before

Trustee could obtain short sale approval. Trustee believes the

Sales Price represents the fair market value for the Real

Property considering current market conditions, the condition of

the Real Property, and the marketing efforts of Estate Broker,

including listing of the Real Property on the MLS and the

Internet Sites, and multiple showings of the Real Property to

real estate agents and potential buyers.

11.   Trustee has no relationship to or with Buyer and is not

related to Buyer in any manner.  Trustee reviewed Debtor's

schedules and the claims register and claims filed in the Case.

Based on this review, Trustee determined that Buyer is not a creditor of the Estate.  Trustee believes that Buyer is a good faith purchaser.  Trustee and Buyer negotiated at "arms-length."

12.  Estate Broker provided Trustee with information necessary to satisfy Trustee that the immediate sale of the Real Property to Buyer is in the best interest of the Estate.

13.  Encore prepared the Estimated Closing Statement to assist Trustee with analysis of the amounts to be paid through the Sale Escrow from the Sales Price and to obtain the Short Sale Approval.

14.  As described herein and in the exhibits attached to the Trustee Declaration, the Sales Price ($610,000.00) will provide payment as follows:

a.  $492,829.31 for the First TD per Short Sale Approval;

b.  $30,250.00 for the HOA;

c.  $30,500.00 for the Broker Commission;

d.  $20,120.69 for the Closing Costs; and

e.  $36,300.00 to the Estate for the Estate Distribution.

15.  The Motion seeks approval and authorization for Trustee to execute any and all documents necessary to transfer the Real Property from the Estate to Buyer and to pay through the Sale Escrow the amounts set forth in the Short Sale Approval and the Estimated Closing Statement.

16.  Trustee seeks the Court's approval to sell the Real Property free and clear of liens and on an "AS-IS, WHERE-IS" basis to Buyer for the Sales Price of $610,000.00, and pursuant to the other terms and conditions set forth in the Agreement and the Short Sale Approval.

## II.  ARGUMENT

**A.   THE REAL PROPERTY IS PROPERTY OF THE ESTATE**

11 U.S.C. §541(a)(1) provides that property of a debtor's bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."

In the instant case, as of the Petition Date, Debtor held title to the Real Property.  Therefore, the Real Property is property of the Estate.

**B.   THE COURT HAS AUTHORITY TO APPROVE THE SALE OF THE REAL PROPERTY FREE AND CLEAR OF ANY INTERESTS AND LIENS PURSUANT TO 11 U.S.C. §§363(b) AND (f)**

Trustee seeks this Court's authority to sell the Real Property free and clear of liens pursuant to 11 U.S.C. §§363(b) and (f) of the Bankruptcy Code.  11 U.S.C. §363(b) provides that:

> [t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

11 U.S.C. § 363(f) provides that:

> [t]he trustee may sell property. . . free and clear of any interest in such property of an entity other than the estate, only if –. . .
>
> (1)   applicable nonbankruptcy law permits sale of such property free and clear of such interest; . . .
>
> (2)   such entity consents; . . .
>
> (3)   such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)   such interest is in bona fide dispute; or
>
> (5)   such entity could be compelled, in a legal or equitable proceeding, to

accept a money satisfaction of such interest.

Because subsections (1) through (5) of Bankruptcy Code §363(f) are written in the disjunctive, authority to sell the Real Property free and clear of any and all interests and liens should be granted if, with respect to each lien holder, any of the conditions are met.  In this case, the First TD Holder and the HOA have agreed to accept, as payment in full, and are being paid, those amounts as set forth in the Short Sale Approval and the Estimated Closing Statement.

**1.  Liens to be paid in full.**

In the instant case, Trustee proposes to sell the Real Property for the Sales Price of $610,000.00.  If approved by the Court, proceeds from the sale as proposed by Trustee will provide sufficient funds to pay off all undisputed liens in full.

The liens to be paid through the Sale Escrow are:

1.  $492,829.31 for the First TD; and

2.  $30,250.00 for the HOA Liens.

The Short Sale Approval also allows for payment of the Broker Commission of $30,500.00, the Closing Costs of $20,120.69, and the Estate Distribution of $36,300.00.

**2.  Liens not to be paid.**

By the Short Sale Approval, the First TD Holder does not consent to the payment of any amounts from the Sales Price for the Second TD.

**There is no equity in the Real Property to which the Second TD can attach after payment of the First TD Holder and the HOA. Consequently, pursuant to 11 U.S.C. §506(a), such claim is**

**unsecured.  The Broker Commission, the Closing Costs, and the Estate Distribution are being paid as a "carve-out" from the sale proceeds based on the Short Sale Approval.**

Trustee reserves all rights to object to the validity, scope, and priority of all disputed liens, claims and/or interests, if necessary, which will attach to the funds received by the Estate from the sale in the same priority, validity, and scope as such liens currently exist against the Real Property subject to all applicable provisions of the Bankruptcy Code and other relevant law, but the Real Property will be sold free and clear of all liens and interests.

**C.    SALE OF THE REAL PROPERTY FREE AND CLEAR OF LIENS IS IN THE BEST INTEREST OF CREDITORS OF THE ESTATE**

Sale of the Real Property pursuant to the terms of the Agreement is in the best interest of creditors with claims against the Estate for the following reasons:

1.    The Real Property is one of the primary assets of the Estate. As a result, sale of the Real Property will minimize administrative expenses to the Estate by resolving the Estate's administration in a speedy and cost-efficient manner for the benefit of secured lienholders and other creditors of the Estate.

2.    Sale of the Real Property will eliminate the risk and uncertainty of future fluctuations in the real estate market.

**D.    NOTICE OF THE SALE IS ADEQUATE**

Trustee is serving notice of the sale on Debtor, Debtor's counsel, the Office of the United States Trustee, all creditors, and all other interested parties.

. . . . .

**E.    BUYER SHOULD BE DEEMED A "GOOD FAITH PURCHASER" PURSUANT TO 11 U.S.C. § 363(m)**

11 U.S.C. § 363(m) provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

A good faith buyer "is one who buys 'in good faith' and 'for value.'" *Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 281 (9th Cir. 1992) (*citing In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986)). "[L]ack of good faith is [typically] shown by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" *Id.* (*quoting Community Thrift & Loan v. Suchy (In re Suchy)*, 786 F.2d 900, 902 (9th Cir. 1985)).

In the instant case, Buyer is buying in good faith, and has not colluded with the Trustee.  The anticipated sale of the Real Property has been negotiated with Buyer in "arm's-length" discussions.  Moreover, Trustee is informed and believes that Estate Broker actively marketed the Real Property through commercially reasonable means of selling residential real property including the MLS listing, the Internet Sites, and multiple showings of the Real Property to real estate agents and potential buyers.  Estate Broker received and presented thirteen (13) offers to Trustee.  The Agreement is the highest and best offer Trustee has received and that has not been withdrawn as of

the date of the Motion.  Based on such facts and circumstances,
Trustee believes that this Court can properly determine that
Buyer is a "good faith purchaser" pursuant to 11 U.S.C. § 363(m).

**F.    THE BROKER COMMISSION SHOULD BE APPROVED**

Real estate brokers are "professionals" for purposes of §327
of the Bankruptcy Code and, as such, their employment must be
approved by the court.  *In re Cummins*, 15 B.R. 893, 895 (BAP 9th
Cir. 1981).  The Court entered the Employment Order approving the
Broker Commission of six percent (6%) of the Sales Price.
Trustee seeks the Court's approval of the Broker Commission in
the reduced amount of five percent (5%) of the Sales Price, that
is, $30,500.00.  The Broker Commission is to be divided equally
between Estate Broker and Buyer Broker.

As previously discussed, the sale is fair and reasonable and
in the best interest of the Estate.  Therefore, the reduced
Broker Commission should be approved by the Court.

**G.    TRUSTEE MAY SELL PROPERTY OF THE ESTATE WITHOUT OVERBID**

Other courts have held that overbids are not required with
respect to bankruptcy sales.  See e.g., In re Bakalis, 200 B.R.
525 (Bankr. E.D.N.Y. 1998); In re Blue Coal Corp., 168 B.R. 553
(Bankr. Pa. 1994); In re Blue Coal Corp., 67 B.R. 798 (Bankr. Pa.
1986); and In re Blue Coal Corp., 168 B.R. at 564, quoting 4B
Collier on Bankruptcy.  In this Case, Trustee is not proposing an
overbid procedure because of the Short Sale Approval that is
specific to Buyer and has been negotiated in detail over several
months.

.  .  .  .  .

.  .  .  .  .

### III.   **CONCLUSION**

**WHEREFORE,** Trustee requests that the Court enter an order providing that:

A.    The Motion is approved in its entirety;

B.    Trustee is authorized to execute any and all documents, including, but not limited to, the Agreement, escrow instructions, and a quit claim deed on behalf of the Estate necessary to sell and transfer the Real Property to Buyer, free and clear of all liens and interests, for the Sales Price, and pursuant to the terms and conditions set forth in the Agreement and the Short Sale Approval;

C.    Trustee is authorized to pay, through the Sale Escrow with Encore, and Encore is authorized to issue from the Sales Price:

1.    $492,829.31 to First TD Holder for the First TD pursuant to the Short Sale Approval;

2.    $30,250.00 to the HOA;

3.    $30,500.00 for the Broker Commission;

4.    $20,120.69 for the Closing Costs; and

5.    $36,300.00 to the Estate for the Estate Distribution;

D.    Trustee reserves all rights to object to the validity, scope and priority of all disputed liens, claims and/or interests;

E.    Any unpaid lien will attach to the funds received by the Estate from the sale in the same amount, priority, validity, and scope as such lien currently exists against the Real Property subject to all applicable provisions of the Bankruptcy Code and . . . .

other relevant law, but the Real Property will be sold free and clear of all liens and interests;

F.    Buyer is entitled to the protections of § 363(m) of the Bankruptcy Code;

G.    Notice of the Motion and of the sale is proper and adequate;

H.    There shall be no liability to Trustee or her professionals, in any capacity, by virtue of the consummation of the sale or by virtue of the failure of such sale to consummate;

I.    The stay of the order approving this Motion imposed by Federal Rule of Bankruptcy Procedure 6004(h) and any other applicable bankruptcy rules is waived; and

J.    Such other and further relief as the Court may deem just and appropriate.

DATED: October 16, 2018

/s/ Nancy Hoffmeier Zamora
Nancy Hoffmeier Zamora
Chapter 7 Trustee

## DECLARATION OF BEHNAZ TAVAKOLI

I, Behnaz Tavakoli, declare that:

1.    I am a duly licensed real estate professional employed by Rodeo Realty, Inc.

2.    I have personal knowledge of the facts stated herein and if called as a witness, I could and would competently testify hereto.

3.    The capitalized terms used herein have the meanings ascribed to them in the Motion for Order Authorizing Trustee to Sell Real Property Free and Clear of Liens, Subject to Short Sale Approval (the "Motion") and the Memorandum of Points and Authorities to which this declaration is attached unless otherwise defined.

4.    Pursuant to the Employment Order, Trustee employed Estate Broker in the Case of Debtor to market and sell the Real Property.  Buddy Gordon and I are the agents of Estate Broker primarily responsible for marketing and selling the Real Property.

5.    Estate Broker actively marketed the Real Property with Debtor's cooperation.  Debtor removed all personal property from the Real Property and turned over keys.

6.    Marketing efforts by Estate Broker included:

a.    Listing in the MLS and the Internet Sites;

b.    One (1) open house;

c.    Additional individual showings of the Real Property to real estate agents and prospective buyers; and

d.    Responding to at least twenty (20) inquiries from brokers and individuals.

7.   I informed Trustee regarding all marketing activity related to the Real Property.  The marketing resulted in thirteen (13) offers.  I presented all of the written offers to Trustee and communicated Trustee's counter-offers.

8.   The initial potential buyer who opened escrow, subject to short sale approval, subsequently canceled the escrow before Trustee could obtain short sale approval.  Thereafter,  I assisted Trustee in negotiating the Agreement, opened the Sale Escrow with Buyer, and sought the Short Sale Approval.

9.   The Agreement represents the highest and best offer for the Real Property that has not been withdrawn as of the date of this declaration.

10.   The Real Property continues to be listed on the MLS. The listing for the Real Property will be amended to include information concerning the Hearing.

11.   Based on my experience as a real estate agent, I believe that the Sales Price of $610,000.00 reflects the fair market value of the Real Property based on its present condition.

12.   Estate Broker does not represent Buyer.  I believe that Buyer is not associated in any way with Debtor, the Estate, Trustee, and Trustee's professionals in the Case.

13.   The Employment Order provides for the Broker Commission to be calculated based on six percent (6%) of the gross sales price for the Real Property.  Estate Broker and Buyer Broker agreed to a reduced percentage of five percent 5% of the Sales Price based on the First TD Holder's requirements in order to obtain the Short Sale Approval.  The total Broker Commission requested for the Court's approval is $30,500.00 based on the

1  Sales Price of $610,000.00.  The Broker Commission will be

2  divided equally between Estate Broker and Buyer Broker.

3      I declare under penalty of perjury that the foregoing is

4  true and correct.  Executed this 16th day of October, 2018, at

5  Calabasas, California.

6

7

8  _____
                            Behnaz Tavakoli

9

10

## DECLARATION OF NANCY HOFFMEIER ZAMORA

I, Nancy Hoffmeier Zamora, declare:

1.    I am the duly appointed, qualified and acting Chapter 7 Bankruptcy Trustee of the above-entitled case.  If called upon as a witness I could and would competently testify to the matters stated herein.

2.    All capitalized terms used in this declaration have the meanings ascribed to them in the foregoing Motion to Sell Real Property Free and Clear of Liens, Subject to Short Sale Approval (the "Motion") and the Memorandum of Points and Authorities in support of the Motion unless otherwise defined herein.

3.    I reviewed the Court's docket and pleadings filed in the Case.  I reviewed the claims register and claims filed in the Case.

4.    On the Petition Date, Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code commencing the Case.  On the Conversion Date, the Court entered that certain order converting the Case to Chapter 7.

5.    The Real Property is one of the primary assets of the Estate.  Debtor listed the Real Property in its schedule A.

6.    According to the PTR, title to the Real Property is vested in Real Estate Short Sales, Inc.

7.    According to the PTR, at exception no. 21, Giancarlo Nicolas Molica, one of the shareholders of Debtor, transferred the Real Property to Debtor by the Grant Deed.

8.    On December 11, 2017, the Court entered the Employment Order authorizing me to employ Estate Broker to market and sell the Real Property.  Estate Broker listed and actively marketed

1   the Real Property for sale.  Estate Broker informed me regarding

2   all marketing activity related to the Real Property.  Estate

3   Broker received and presented thirteen (13) offers to me.  With

4   the assistance of Estate Broker, I made counter-offers.  After I

5   opened an escrow that the initial potential buyer canceled, I

6   negotiated the Agreement with Buyer and requested short sale

7   approval that First TD Holder issued as of October 11, 2018.

8        9.   The Employment Order provides for the Broker Commission

9   to be calculated based on six percent (6%) of the gross sales

10   price for the Real Property.  Estate Broker and Buyer Broker

11   agreed to a reduced percentage of five percent 5% of the Sales

12   Price based on First TD Holder's requirement in order to obtain

13   the Short Sale Approval.  The total Broker Commission requested

14   for the Court's approval is $30,500.00 (one-half each to Estate

15   Broker and Buyer Broker) based on the Sales Price of $610,000.00.

16        10.  Estate Broker actively marketed the Real Property with

17   Debtor's cooperation.  Debtor removed all personal property from

18   the Real Property and turned over keys.  Estate Broker conducted

19   an open house and additional individual showings of the Real

20   Property to real estate agents and prospective buyers.  Estate

21   Broker responded to at least twenty (20) inquiries.  Estate

22   Broker listed the Real Property on the MLS and the Internet

23   Sites.

24        11.  I desire to maximize distributions to creditors of the

25   Estate by selling the Real Property free and clear of liens and

26   on an "AS-IS, WHERE-IS" basis to Buyer for the Sales Price of

27   $610,000.00 and pursuant to the other terms set forth in the

28   Agreement.

12. The Sales Price offered by Buyer is the highest and best offer that has been received, and not withdrawn, as of the date of the Motion. I received a total of thirteen (13) offers. The initial potential buyer who opened escrow, subject to short sale approval, subsequently canceled escrow before I could obtain short sale approval. I believe the Sales Price represents the fair market value for the Real Property considering current market conditions, the condition of the Real Property, and the marketing efforts of Estate Broker, including listing of the Real Property on the MLS and the Internet Sites, and multiple showings of the Real Property to real estate agents and potential buyers.

13. I have no relationship to or with Buyer and am not related to Buyer in any manner. I reviewed Debtor's schedules and the claims register and claims filed in the Case. Based on this review, I determined that Buyer is not a creditor of the Estate. I believe that Buyer is a good faith purchaser. Buyer and I negotiated at "arms-length."

14. Estate Broker provided me with information necessary to satisfy me that the immediate sale of the Real Property to Buyer is in the best interest of the Estate.

15. Encore prepared the Estimated Closing Statement to assist me with analysis of the amounts to be paid through the Sale Escrow from the Sales Price and to obtain the Short Sale Approval.

16. As described in the Motion and the exhibits attached to this declaration, the Sales Price ($610,000.00) will provide payment as follows:

. . . . .

a.    $492,829.31 for the First TD Holder pursuant to the
Short Sale Approval;

b.    $30,250.00 for the HOA;

c.    $30,500.00 for the Broker Commission;

d.    $20,120.69 for the Closing Costs; and

e.    $36,300.00 to the Estate for the Estate Distribution.

17.    The Motion seeks approval and authorization for me to execute any and all documents necessary to transfer the Real Property from the Estate to Buyer and to pay through the Sale Escrow the amounts set forth in the Short Sale Approval and the Estimated Closing Statement.

18.    I seek the Court's approval to sell the Real Property free and clear of liens and on an "AS-IS, WHERE-IS" basis to Buyer for the Sales Price of $610,000.00, and pursuant to the other terms and conditions set forth in the Agreement and the Short Sale Approval.

19.    A true and correct copy of the Agreement is attached as Exhibit A to this declaration and incorporated herein by reference.

20.    True and correct copies of the Short Sale Approval and the HOA Payoff Demand are attached as Exhibit B to this declaration and incorporated herein by reference.

21.    A true and correct copy of the PTR is attached as Exhibit C to this declaration and incorporated herein by reference.

22.    A true and correct copy of the Estimated Closing Statement is attached as Exhibit D to this declaration and incorporated herein by reference.

23.   True and correct copies of payoff statements or demands showing the full balance of debt owed to First TD Holder and the HOA (the "Statements with Current Balances") are attached as Exhibit E to this declaration and incorporated herein by reference.

24.   A true and correct conformed copy of the Grant Deed is attached as Exhibit F to this declaration and incorporated herein by reference.

25.   A true and correct copy of the Instruction for Reduced Broker Commission is attached as Exhibit G to this Declaration and incorporated herein by reference.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 16th day of October, 2018, at Los Angeles, California.

NANCY HOFFMEIER ZAMORA

# EXHIBIT  A

DocuSign Envelope ID: 407E15BD-BD60-4A43-8261-3C693F444727

## PURCHASE AND SALE AGREEMENT AND ESCROW INSTRUCTIONS
### (RESIDENTIAL PROPERTY)

This purchase and sale agreement and escrow instructions (the "Agreement") is entered into as of March 17, 2018 (the "Execution Date") by and between Roshni Nelson and Jeff Kelsey ("Buyer") and Nancy Hoffmeier Zamora ("Trustee") in her capacity as chapter 7 trustee for the bankruptcy estate (the "Estate") of Real Estate Short Sales, Inc.  Together, Buyer and Trustee hereinafter shall be referred to as the "Parties."

## RECITALS

A.    That certain residential real property (the "Real Property") commonly known as 625 South Berendo Street, Penthouse #613, Los Angeles, California 90005 and identified as Los Angeles County Assessor's Parcel No.5502-027-098 is an asset of the Estate.

B.    Trustee is the duly appointed chapter 7 trustee for the Estate.

C.    Subject to approval by the United States Bankruptcy Court (the "Bankruptcy Court"), Section 363(f) of the United States Bankruptcy Code authorizes Trustee to sell the Real Property free and clear of any interests and liens pursuant to the Agreement.

D.    Article 1.5 ("Article 1.5") of the California Civil Code ("Civil Code") requires disclosures by sellers upon the transfer of residential real property (Civil Code section 1102 et seq.).  Civil Code section 1102.2 of the Civil Code exempts Trustee from the provisions of Article 1.5.

## AGREEMENT

In consideration of the mutual covenants and agreements reflected herein, and for other good and valuable consideration, receipt of which is hereby acknowledged, the Parties to this Agreement agree as follows:

1.    **Purchase of the Real Property**.  Buyer shall purchase the Real Property from the Estate for a total sales price of $615,000.00 (the "Purchase Price") payable in cash upon Close of Escrow (as defined below in Paragraph 6).

2.    **Purchase of Personal Property**.  The Purchase Price shall include Buyer's purchase of all existing fixtures and fittings (the "Personal Property") attached to or located at the Real Property free and clear of liens and without Trustee's warranty.  Buyer acknowledges that prior occupants of the Real Property may have caused waste to the Real Property by, among other things, removing various fixtures, fittings, and appliances from the Real Property.

3.    **As-Is; Where-Is**.  Buyer agrees to purchase the Real Property and the Personal Property on an "as-is, where-is" basis.  Buyer acknowledges that Trustee made no investigation of nor makes any representation or warranty regarding the condition of the Real Property or the Personal Property.

4.    **Earnest Money Deposit**.

a.    **Escrow Account**.  Buyer shall deposit $10,000.00 (the "Initial Earnest Money") with Escrow Holder (as defined below in Paragraph 6) on or before March 19, 2018 and an additional $10,000.00 (the "Increased Earnest Money", collectively with the Initial Earnest Money, the "Earnest Money") upon receipt of written short sale approval from the Lender (as defined below in Paragraph 5).  The Earnest Money shall be in the form of cashier's checks or wire transfers made payable to Escrow Holder.  Escrow Holder shall apply the Earnest Money to the Purchase Price upon Close of Escrow.

b.    **Refund of the Earnest Money**.  Trustee shall authorize Escrow Holder to refund the Earnest Money to Buyer if the Parties cancel Escrow pursuant to Paragraph(s) 5, 8, 9, 15 and/or 16 (as provided below in Paragraph 6(g)(2)).

RESSI/Nelson and Kelsey.final

Trustee

Buyer

Page 1 of 10

**025**

DocuSign Envelope ID: 407E15BD-BD60-4A43-8261-3C693F444727

     c.     **Surrender of the Earnest Money.** As provided below in Paragraph 17, Buyer shall surrender the Earnest Money to Trustee as liquidated damages if the Bankruptcy Court approves Buyer's purchase of the Real Property, then Buyer defaults under this Agreement.

     5.     **Motion for Order Approving Sale of Real Property.**

     a.     **Buyer Acknowledgment..** Buyer acknowledges that sale of the Real Property pursuant to this Agreement is subject to prior approval by the Bankruptcy Court and by the current holders of the first trust deed and the second trust deed secured by the Real Property (the "Lenders"). As such, the Bankruptcy Court's approval of this Agreement and consent by the Lenders (the "Short Sale Approval") are contingencies of sale.

     b.     **Short Sale Addendum.** Trustee and Buyer attach and incorporate herein the Short Sale Addendum dated March 17, 2018.

     c.     **Sale Motion and Hearing.**

     (1)     **Motion.** After the Parties execute this Agreement and Trustee receives the Short Sale Approval , Trustee shall file with the Bankruptcy Court a motion (the "Sale Motion") for order approving sale of the Real Property free and clear of any interests and liens, and a notice of hearing (the "Hearing") on the Sale Motion. Trustee shall attach this Agreement as an exhibit to the Sale Motion.

     (2)     **Order.** At the conclusion of the Hearing, Trustee shall lodge a proposed order with the Court approving sale of the Real Property to Buyer pursuant to this Agreement and the Short Sale Approval. Upon the Bankruptcy Court's entry of the order approving Trustee's sale of the Real Property to Buyer pursuant to this Agreement and the Short Sale Approval (the "Sale Order"), Trustee shall deposit a certified copy of the Sale Order into Escrow.

     (3)     **Buyer Not Approved.** If the Bankruptcy Court does not approve Buyer to purchase the Real Property, the Parties shall cancel Escrow and Trustee shall authorize Escrow Holder to refund the Earnest Money to Buyer.

     6.     **Escrow.**

     a.     **Opening Escrow.** This sale shall be consummated through an escrow ("Escrow") established with Encore Escrow ("Escrow Holder"), located at 23901 Calabasas Road, #1033, Calabasas, California, 91302. On March 19, 2018, the Parties shall deposit this Agreement with Escrow Holder, which deposit shall open Escrow for sale of the Real Property.

     b.     **Earnest Money.** Upon receipt of the Initial Earnest Money, Escrow Holder shall deposit the Initial Earnest Money into an escrow account established exclusively for the purpose of selling the Real Property. The Increased Earnest Money shall be deposited into the same exclusive escrow account.

     c.     **Joint Escrow Instructions to Escrow Holder.** The applicable portions of this Agreement shall constitute joint escrow instructions (the "Joint Escrow Instructions") of Trustee and Buyer to Escrow Holder.

     d.     **Supplemental Escrow Instructions.** The Joint Escrow Instructions may be modified and/or supplemented pursuant to addenda executed by the Parties. Trustee and Buyer acknowledge that Escrow Holder will ask the Parties to execute general escrow provisions (the "Supplemental Escrow Instructions") that control the duties and obligations of Escrow Holder only. To the extent the Supplemental Escrow Instructions conflict with this Agreement or the Joint Escrow Instructions, this Agreement and the Joint Escrow Instructions, not the Supplemental Escrow Instructions, shall control the rights, duties, and obligations of the Parties.

Trustee     Buyer     JDK
Page 2 of 10

**026**

DocuSign Envelope ID: 407E15BD-BD60-4A43-8261-3C693F444727

e.    **Closing Date.** Close of Escrow shall occur on the first business day that is at least fifteen (15) days after entry of the Sale Order (the "Closing Date"). The Parties can accelerate or extend the Closing Date by executing an amendment to this Agreement that provides for an earlier or later Closing Date that is consistent with the Sale Order.

f.    **Close of Escrow.** "Close of Escrow" shall occur when Escrow Holder records the Quitclaim Deed (as defined below in Paragraph 15) transferring fee title to the Real Property from the Estate to Buyer.

g.    **Cancellation of Escrow.**

(1)    **Buyer Default.** If Close of Escrow does not occur by the Closing Date because Buyer defaults on Buyer's obligations pursuant to this Agreement, Buyer agrees to forfeit the Earnest Money to Trustee and the Estate as provided below in Paragraph 17.

(2)    **Cancellation Pursuant to Contingency.** If Buyer cancels Escrow pursuant to Paragraph(s) 5, 8, 9, 15 and/or 16 of this Agreement, the Parties shall cancel Escrow and Trustee shall authorize Escrow Holder to refund the Earnest Money to Buyer.

(3)    **No Prejudice.** Cancellation of Escrow as provided herein shall be without prejudice to whatever legal rights Trustee and Buyer may have against each other.

h.    **Preliminary Closing Statements.** No less than five (5) business days prior to Close of Escrow, Escrow Holder shall provide Trustee with preliminary closing statements (the "Preliminary Closing Statements") for both Trustee as seller of the Real Property and Buyer as purchaser of the Real Property.

i.    **Closing Documents.** No less than five (5) business days prior to Close of Escrow, Escrow Holder shall provide the Parties with any and all documents that the Parties must execute and deposit with Escrow Holder prior to Close of Escrow.

7.    **Balance of Purchase Price.** Buyer shall deposit the balance of the Purchase Price (the "Purchase Price Balance"), i.e., $595,000.00 based on the Purchase Price of $615,000.00 and the Earnest Money of $20,000.00, into Escrow in the form of cash or by wire transfer at least one (1) business day before the Closing Date or by cashier's check during business hours at least two (2) business days before the Closing Date. After paying all approved costs and liens, Escrow Holder shall pay a distribution to the Estate, consistent with the Short Sale Approval, from the Purchase Price Balance to Trustee by check made payable to "Nancy Hoffmeier Zamora, Chapter 7 Trustee, RESSI Estate."

8.    **Inspection Contingency.** Buyer may cancel Escrow on or before March 29, 2018 (the "Contingency Deadline") based on Buyer's inspection of the Real Property. Buyer shall notify Trustee in writing that Buyer is canceling Escrow based on Buyer's inspection of the Real Property and Buyer's ability to obtain a homeowner's insurance policy for the Real Property. If Buyer cancels Escrow pursuant to this inspection contingency, the Parties shall cancel Escrow and Trustee shall authorize Escrow Holder to refund the Initial Earnest Money to Buyer.

9.    **Loan Contingency.**

a.    **Buyer Representation.** Buyer represents that Buyer has obtained preliminary approval for financing sufficient to close Escrow by the Closing Date. Buyer agrees to pursue financing sufficient to pay the Purchase Price Balance and any additional closing costs.

b.    **Trustee Acknowledgment.** Trustee acknowledges that Buyer will require financing to purchase the Real Property and that Buyer's financing is a contingency of this Agreement.

c.    **Buyer Acknowledgment.** Buyer acknowledges that, in evaluating competing offers, Trustee will prefer an all cash offer for the Real Property without a financing contingency, all other terms of the offers being equal. Buyer agrees to remove the financing contingency prior to the Sale Hearing.

027

DocuSign Envelope ID: 407E15BD-BD60-4A43-8261-3C693F444727

d. **Close of Escrow**. Buyer agrees to deposit funds equal to the Purchase Price Balance and Buyer's closing costs by the Closing Date as provided in Paragraph 7.

10. **Closing and Possession**.

a. **Delivery**. Trustee shall deliver possession and occupancy of the Real Property to Buyer on the Closing Date.

b. **Assignable Warranty Rights**. Upon Close of Escrow, to the extent permitted by law and/or contract, Trustee shall hereby assign warranty rights, if any, for the Personal Property.

c. **Access**. Upon Close of Escrow, Trustee shall provide Buyer all keys and or means to operate all locks, mailboxes, security systems, alarms, and garage door openers that are in Trustee's possession or control, if any.

11. **Reports and Disclosures**.

a. **Pest Control**. Trustee shall not pay for or provide Buyer with a pest control report for the Real Property as a condition of sale. Trustee has made no investigation of and makes no representation or warranty regarding the physical condition of the Real Property. Buyer acknowledges that sale of the Real Property is on an "as-is, where-is" basis.

b. **Natural Hazard Zone Disclosure Report**. Buyer acknowledges that Civil Code section 1103.2(a)(1) specifically exempts transfers of real property by a trustee in bankruptcy. Accordingly, Buyer acknowledges that Trustee shall not pay for or otherwise provide a natural hazard zone disclosure report (the "NHZD Report") for Buyer's review prior to Close of Escrow. If Buyer and/or Title Company (as defined below in Paragraph 15) require a NHZD Report in order to close Escrow, Buyer shall pay for the NHZD Report. Trustee has made no investigation of and makes no representation or warranty regarding the physical condition of the Real Property or the location of the Real Property. Buyer acknowledges that sale of the Real Property is on an "as-is, where-is" basis.

c. **Data Base Disclosure Addendum (Megan's Law)**. Buyer acknowledges that Civil Code section 2079.10a (referring to Civil Code section 1102) specifically exempts transfers of real property by a trustee in bankruptcy from the requirements of 2079.10a, commonly referred to as "Megan's Law." Accordingly, Buyer acknowledges that Trustee will not execute a "Data Base Disclosure Addendum (Megan's Law)" as a condition for closing Escrow. Trustee has made no investigation of and makes no representation or warranty regarding the existence or non-existence of convicted sex offenders or other criminals in the neighborhood surrounding the Real Property. Buyer acknowledges that sale of the Real Property is on an "as-is, where-is" basis.

d. **Real Estate Transfer Disclosure Statement**. Buyer acknowledges that Civil Code section 1102 specifically exempts from the provisions of Article 1.5 transfers of real property by a trustee in bankruptcy. Buyer acknowledges that Article 1.5 requires, among other things, disclosures by sellers upon the sale of residential real property. Accordingly, Buyer acknowledges that Trustee will not provide Buyer with a Real Estate Transfer Disclosure Statement or addenda thereto, including, without limitation, an "Airport Proximity Addendum for Los Angeles County." Trustee has made no investigation and makes no representation or warranty regarding the neighborhood surrounding the Real Property, or the general location of the Real Property. Buyer acknowledges that sale of the Real Property is on an "as-is, where-is" basis.

e. **Mello-Roos Community Facilities Act**. Trustee has made no investigation and makes no representation or warranty regarding any special taxes assessed against the Real Property by a local agency pursuant to the Mello-Roos Community Facilities Act ("Mello-Roos").

12. **Prorations of Property Taxes and Other Items**.

a. **Buyer and Trustee**. The following items shall be paid current and prorated between Buyer and Trustee as of Close of Escrow:

RESSI/Nelson and Kelsey.final

4.

Trustee

Buyer    JDK

Page 4 of 10

**028**

DocuSign Envelope ID: 407E15BD-BD60-4A43-8261-3C693F444727

(1)     real property taxes and assessments;

(2)     interest;

(3)     rents;

(4)     municipal utilities;

(5)     payments on bonds and assessments assumed by Buyer, if any;

(6)     payments on Mello-Roos and other special assessment district bonds and assessments, if any, which are now a lien; and

(7)     any and all other items identified by Escrow Holder in the Preliminary Closing Statements and approved by the Parties prior to Close of Escrow.

b.    **Buyer**. Buyer shall be responsible for prorated payments on Mello-Roos and other special assessment district bonds and assessments that are now a lien but not yet due.

c.    **Supplemental Tax Bills**. For periods after Close of Escrow, Buyer shall be responsible for any and all supplemental taxes assessed against the Real Property.  For periods prior to Close of Escrow, Trustee shall be responsible for any and all supplemental taxes assessed against the Real Property.

13.    **Additional Buyer Costs**.  In addition to costs allocated to Buyer by other provisions of this Agreement, Buyer shall pay for the cost of:

a.    smoke detector installation, carbon monoxide detector installation and/or water heater bracing, if required by law;

b.    compliance with any other minimum mandatory government retrofit standards, inspections and reports if required as a condition of closing Escrow under any law;

c.    fifty percent (50%) of the escrow fees ("Escrow Fees") charged by Escrow Holder;

d.    homeowner's warranty policy;

e.    the NHZD Report;

f.    Home Owner Association ("HOA") transfer fee and document preparation fees; and

g.    such portion of the delinquent HOA fees as are required by the Short Sale Approval.

14.    **Additional Trustee Costs**.  Trustee shall pay for the cost of the following in the amounts and to the extent that the Short Sale Approval authorizes such payment from the Purchase Price:

a.    county transfer tax or transfer fee;

b.    city transfer tax or transfer fee;

c.    fifty percent (50%) of the Escrow Fees;

d.    title insurance policy;

e.    delinquent real property taxes;

f.    city and/or county assessments;

RESSI/Nelson and Kelsey.final

5.

Page 5 of 10

DocuSign Envelope ID: 407E15BD-BD60-4A43-8261-3C693F444727

g.      such portion of the delinquent HOA fees as are allowed by the Short Sale Approval; and

h.      disbursement to the bankruptcy estate.

15.   **Title and Vesting.**

a.      **Preliminary Title Report.** By 5:00 p.m. on March 19, 2018, Trustee will procure and deposit with Escrow Holder a preliminary title report ("PTR") issued by First American Title Company ("Title Company"). Escrow Holder, upon receipt of PTR, shall provide PTR to Buyer for review and approval. Buyer shall have until the Contingency Deadline to notify Trustee, in writing, of Buyer's disapproval of any exception in the PTR. If Buyer fails to disapprove any exceptions in the PTR by 5:00 p.m. on the Contingency Deadline, Buyer shall be deemed to have waived any and all objections to the PTR. If Buyer timely notifies Trustee of Buyer's disapproval and Trustee is unwilling or unable to cure or otherwise address the exception to Buyer's satisfaction, not to be unreasonably withheld, then the Parties shall cancel Escrow and Trustee shall authorize Escrow Holder to refund the Earnest Money to Buyer.

b.      **Quitclaim Deed.** At Close of Escrow, Buyer shall receive a quitclaim deed (the "Quitclaim Deed") transferring title ("Title") to the Real Property from the Estate to Buyer. Unless otherwise designated in Buyer's escrow instructions, title shall vest as follows: Roshni Nelson and Jeff Kelsey. Title shall include oil, mineral and water rights, if any, appurtenant to the Real Property. Title shall be subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters which are of record or are disclosed to Buyer prior to Close of Escrow.

c.      **Title Insurance.** Trustee shall procure from Title Company a California Land Title Association ("CLTA") standard policy of title insurance in the amount of the Purchase Price to be approved by Buyer, showing title vested in Buyer, as stated above, with only those exceptions to title approved by Buyer on the PTR produced by the Title Company.

d.      **Real Property Insurance.** Trustee's hazard and casualty insurance on the Real Property shall be canceled as of the Closing Date, and Buyer shall be responsible for obtaining insurance coverage as of the Closing Date.

16.   **Contingency and Cancellation Rights.** If Buyer removes any contingency or cancellation right as provided herein, Buyer shall conclusively be deemed to have:

a.      completed all inspections, investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right;

b.      elected to proceed with purchasing the Real Property pursuant to this Agreement; and

c.      assumed all liability, responsibility, and expense for repairs or corrections pertaining to that contingency or cancellation right.

17.   **LIQUIDATED DAMAGES.** If Buyer fails to complete the purchase contemplated by this Agreement because of Buyer's default, Trustee shall retain the Earnest Money as liquidated damages and shall be released from any further obligation to sell the Real Property to Buyer. Escrow Holder shall release the Earnest Money to Trustee upon receiving Trustee's written notification that Buyer has defaulted under the terms of this Agreement.

Buyer's Initials  _____      Trustee's Initials _____

DocuSign Envelope ID: 407E15BD-BD60-4A43-8261-3C693F444727

18.   **Additional Obligations**.

a.   **Withholding Taxes**. Trustee and Buyer agree to execute and deliver any instrument, affidavit, statement, or instruction reasonably necessary to comply with federal and state tax withholding laws.

b.   **Additional Documents**. Trustee and Buyer agree to take such further action and execute all such further documents as may be necessary or appropriate in order to consummate this Agreement.

19.   **Broker Compensation**.

a.   **Broker's Fee**. Subject to approval by the Bankruptcy Court and the Lender's consent and approval, in consideration of real estate brokerage services rendered, Trustee agrees to pay Rodeo Realty, Inc. ("Estate Broker") and Douglas Elliman of California, Inc. ("Buyer Broker") upon Close of Escrow, a total real estate brokerage fee equal to six percent (6%) of the Purchase Price, i.e., three percent (3%) each to Estate Broker and Buyer Broker. If, and only if, Lender requires a reduced brokerage commission, Estate Broker and Buyer Broker shall accept such reduced brokerage commission.

b.   **Failure to Close Escrow**. No commission or other fee shall be payable to Estate Broker or Buyer Broker if Escrow fails to close. Trustee and Buyer acknowledge that no other broker's commission or finder's fee is payable with regard to this transaction.

c.   **Indemnification**. Trustee and Buyer each ("Indemnitor") agrees to indemnify and hold the other harmless from and against all liability, claims, demands, damages, or costs of any kind arising from or connected with any broker's or finder's fee or commission or charge claimed to be due any person arising from Indemnitor's conduct with respect to this transaction, other than the commissions authorized in this paragraph.

20.   **Miscellaneous**.

a.   **Disputes**. The Bankruptcy Court shall have sole and exclusive jurisdiction over any dispute between the Parties over the terms of this Agreement and over any transaction or event referenced or contemplated by this Agreement.

b.   **Bankruptcy Court Jurisdiction**. The Bankruptcy Court shall have continuing jurisdiction to interpret and enforce this Agreement.

c.   **Attorneys' Fees**. The prevailing party in any dispute arising out of this Agreement shall be entitled to recover as an element of its costs of suit, and not as damages, reasonable attorneys' fees and costs to be fixed by the Bankruptcy Court. The "prevailing party" shall be the party who is entitled to recover its costs of suit, whether or not said suit proceeds to final judgment. A party not entitled to recover its costs shall not recover attorney's fees. No sum for attorneys' fees shall be included in calculating the amount of a judgment for purposes of deciding whether a party is entitled to its costs or attorneys' fees.

d.   **Time of the Essence**. Time is of the essence of each provision of this Agreement in which time is an element. Unless the context otherwise requires, all periods terminating on a given day, period of days, or date, shall terminate at 5:00 p.m., Pacific Daylight Savings Time, on that day or date, and reference to "days" shall refer to calendar days.

e.   **Amendment and Waiver**. Neither this Agreement, nor any of the provisions hereof, may be changed, waived, discharged or terminated, except by an instrument in writing signed by the party against whom enforcement of the change, waiver, discharge or termination is sought.

f.   **Successors and Assigns**. This Agreement shall be binding upon, and inure to the benefit of, the Parties hereto and their respective successors and assigns.

031

DocuSign Envelope ID: 407E15BD-BD60-4A43-8261-3C693F444727

g.     Headings. Paragraph headings contained in this Agreement are for reference purposes only, and shall not affect in any way the meaning or interpretation of this Agreement.

h.     Third Party Rights. Except with respect to the releases provided for above, no rights are intended to be created in any person not a party to this Agreement.

i.     Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which taken together constitute one and the same instrument.

j.     Entire Agreement. This Agreement sets forth the entire agreement among the Parties and fully supersedes any and all prior agreements or understandings between the Parties pertaining to the subject matter of this Agreement.

k.     Understanding of the Parties. The Parties have each read this Agreement carefully, and the contents hereof are known and understood by all, and the Agreement is signed freely by each person executing this Agreement. Prior to the execution of this Agreement by the Parties, and each of them, each of the Parties hereto has had the opportunity to receive independent legal advice by attorneys of his or her choice with respect to the advisability  of executing this Agreement.

l.     No Statements, Representations, and/or Reliance. Except as expressly stated in this Agreement, neither of the Parties hereto has made any statement or representation to any other party regarding any fact relied upon by such other party entering into this Agreement, and each of the Parties specifically does not rely upon any statement, representation or promise of any other party in executing this Agreement, except as expressly stated in this Agreement.

m.     Construing the Agreement. This Agreement shall be construed without regard as to which party drafted the Agreement, and this Agreement shall be construed as if the Parties hereto participated equally in the drafting of the Agreement.

n.     Applicable Law. This Agreement shall be construed in accordance with, and governed by, the laws of the State of California and applicable federal law.

o.     Severability. Wherever possible, each provision of this Agreement shall be interpreted in such a manner as to be valid under applicable law, but if any provision of this Agreement shall be invalid, or prohibited thereunder, such provision shall be ineffective to the extent of such prohibition without invalidating the remainder of such provision or the remaining provisions of this Agreement.

p.     Recitals. The recitals at the beginning of this Agreement are incorporated herein by this reference.

q.     Terms. Whenever the singular number is used in this Agreement, and when required by the context, the same shall include the plural, and the masculine, and feminine and neuter genders shall each include the others.

r.     Representations and Warranties. All representations and warranties contained herein shall survive the execution and delivery of this Agreement. All obligations of the Parties to this Agreement which have not been fully performed, paid and satisfied as of the Execution Date, shall survive the execution and delivery of this Agreement.


[SIGNATURES APPEAR ON FOLLOWING PAGE]

RESSI/Nelson and Kelsey.final

8.

Trustee

JDK

Buyer
Page 8 of 10

032

DocuSign Envelope ID: 407E15BD-BD60-4A43-8261-3C693F444727

## SIGNATURES OF THE PARTIES

### OFFER

As of the Execution Date, the undersigned offers and agrees to buy the Real Property on the terms and conditions stated in this Agreement and acknowledges receiving a copy of this Agreement.

**BUYER:**

Roshni Nelson                  3/18/2018 | 10:02 AM PDT

Jeff Kelsey                    3/18/2018 | 9:33 AM PDT

### ACCEPTANCE

As of the Execution Date, Trustee accepts the foregoing offer to purchase the Real Property and agrees to sell the Real Property to Buyer on the terms and conditions specified in this Agreement. Trustee acknowledges receipt of a copy of this Agreement and authorizes Estate Broker to deliver a signed copy to Buyer.

**ESTATE:**

By:

Nancy Hoffmeier Zamora, Esq. Trustee
Chapter 7 Estate of Real Estate Short Sales, Inc.
In re Real Estate Short Sales, Inc.
Case No. 1:16-bk-11387-GM

RESSI/Nelson and Kelsey.final

9.

Trustee

JDK
Buyer
Page 9 of 10

033

DocuSign Envelope ID: 407E15BD-BD60-4A43-8261-3C693F444727

## SIGNATURES OF THE BROKERS

### BROKERS' CONSENT

Estate Broker and Buyer Broker consent to the commission provision in Paragraph 19 above. By signing below, Estate Broker and Buyer Broker acknowledge that any and all disputes arising under this Agreement or related to the sale of the Real Property are subject to the jurisdiction of the Bankruptcy Court. The signing of this paragraph shall not result in Estate Broker and Buyer Broker being deemed parties to this Agreement.

**ESTATE BROKER:**

Behnaz Tavakoli, Real Estate Agent
Rodeo Realty, Inc.

**BUYER BROKER:**

Marc Hernandez, Real Estate Agent  3/18/2018 | 8:03 AM PDT
Douglas Elliman of California, Inc.

Kevin Dasilva        Real Estate Agent    3/17/2018 | 7:25 PM PDT

Douglas Elliman of California, Inc

RESSI/Nelson and Kelsoy.final                10.                    Trustee    Buyer    Page 10 of 10

**034**

CALIFORNIA
ASSOCIATION
OF REALTORS®

**SHORT SALE ADDENDUM**
(C.A.R. Form SSA, Revised 4/12)

This is an addendum to the ☒ California Residential Purchase Agreement, ☐ Counter Offer, ☐ Other _____
_____ ("Agreement"), dated _March 17, 2018_

| | |
|---|---|
| on property known as | _625 South Berendo Street, Penthouse # 613, Los Angeles, CA 90005_ |
| ("Property"), between | _Roshni Nelson, Jeff Kelsey_ |
| ("Buyer") and | _Nancy Zamora, Chapter 7 Trustee_ |
| ("Seller"). | |

## 1. SHORT SALE APPROVAL:

A. This Agreement is contingent upon Seller's receipt of and delivery to Buyer of written consent ("Short Sale Lenders' Consent") to the Agreement from all existing secured lenders and lienholders ("Short Sale Lenders"), by 5:00 P.M. no later than 45 (or ☐ _____ ) Days After Acceptance (or ☐ on _____ (date) ("Short Sale Contingency Date"). If Buyer or Seller cancels this Agreement prior to the Short Sale Contingency Date, that party may be in breach of the Agreement unless the cancellation is made pursuant to some other paragraph in this addendum or in the Agreement, whether or not time periods in the Agreement have commenced.

B. Short Sale Lenders' Consent means that all Short Sale Lenders shall collectively agree to reduce their respective loan balances by an amount sufficient to permit the proceeds from the sale of the Property to pay the existing balances on loans secured by the Property, real property taxes, brokerage commissions, closing costs, and other monetary obligations the Agreement requires Seller to pay at Close Of Escrow (including, but not limited to, escrow charges, title charges, documentary transfer taxes, prorations, retrofit costs, Homeowners Association Fees and Repairs) without requiring Seller to place any funds into escrow or have any continuing obligation to Short Sale Lenders.

C. (i) Seller shall Deliver to Buyer a copy of Short Sale Lenders' Consent or term sheet(s) within 3 (or ☐ _____ ) Days After receipt by Seller. (ii) Seller's presentation to Buyer of Short Sale Lender's Consent satisfying 1B removes the contingency in 1A.

D. If by the Short Sale Contingency Date, (i) Seller has not received Short Sale Lenders' Consent satisfying 1B, Seller may in writing cancel this Agreement, or (ii) Buyer has not received a copy of Short Sale Lenders' Consent satisfying 1B, Buyer may cancel this Agreement in writing. In either case, Buyer shall be entitled to return of any remaining deposit delivered to escrow.

E. Seller shall reasonably cooperate with existing Short Sale Lenders in the short sale process, but neither Seller nor Buyer is obligated to change the terms of their Agreement to satisfy Short Sale Lenders' consent or term sheet(s).

F. If Short Sale Lenders' written consent or term sheet(s) provided to Seller require changes to the Agreement in order to satisfy the terms of 1B, (i) neither Buyer nor Seller shall be obligated to continue negotiations to satisfy any of the requirements of the term sheet(s) (ii) either party may in writing cancel this Agreement and (iii) Seller is advised to seek legal, accounting and tax advice before agreeing to any such changes. If the Agreement is cancelled pursuant to this paragraph, Buyer shall be entitled to return of any remaining deposit delivered to escrow.

## 2. TIME PERIODS.
Time periods in the Agreement for inspections, contingencies, covenants, and other obligations: (i) shall begin the Day After Seller delivers to Buyer Short Sale Lenders' Consent satisfying 1B. However, time periods for providing pre-approval/pre-qualification letters and verification of down payment and closing costs shall nonetheless begin as otherwise specified in the Agreement; or (ii) (if checked) ☒ shall begin as specified in the Agreement.

Buyer's Initials ( _____ ) ( _____ )                    Seller's Initials ( _NZC_ ) ( _____ )

The copyright laws of the United States (TITLE 17 U.S. Code) forbid the unauthorized reproduction of this form by any means, including facsimile or computerized formats. Copyright © 2007-2012, CALIFORNIA ASSOCIATION OF REALTORS®. ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

**SSA REVISED 4/12 (PAGE 1 OF 2)**                    **SHORT SALE ADDENDUM (SSA PAGE 1 OF 2)**

**035**



*Encore Escrow Company Inc.*

23901 Calabasas Rd., #1033, Calabasas, CA 91302

(818) 224-2788 • Fax: (818) 224-2789

THIS AMENDMENT SUPERSEDES THE AMENDMENT PREVIOUSLY DATED APRIL 3, 2018.

Jenica Pivnik                                                              Date:  June 04, 2018
Escrow Officer                                                       Escrow No.:  15662-JP

### AMENDED ESCROW INSTRUCTIONS

Property Address:        625 South Berendo Street Unit # 613,  Los Angeles, CA  90005

THE ABOVE NUMBERED ESCROW IS HEREBY AMENDED AND/OR SUPPLEMENTED AS FOLLOWS:

**1. REVOCATION OF CANCELLATION REQUEST/RE-ACTIVATION OF ESCROW:** Buyer and Seller herein wish to withdraw the previously executed/partially executed Cancellation Instructions dated April 2, 2018 issued by Encore Escrow and any corresponding C.A.R. "Cancellation of Contract, Release of Deposit and Joint Escrow Instructions" form(s) in their entirety.  Buyer and Seller mutually agree to continue with the transaction.

**2. AMENDED PURCHASE PRICE:**  Buyer and Seller herein agree that the purchase price is amended to be  **$605,000.00.**

**3. CREDIT FROM SELLER TOWARDS CLOSING COSTS:** Seller herein agrees to credit the Buyer **$10,000.00** to be applied towards Buyer's non-recurring and recurring closing costs. Escrow holder is hereby authorized and instructed to debit the Seller and credit the Buyer accordingly at the close of escrow.

**4. CONTRACT CHANGE:** Item 13g on page 5 of the Purchase and Sale Agreement and Escrow Instructions (Residential Property) dated March 17, 2018 is hereby deleted in its entirety. Escrow holder shall not be further concerned with, nor held liable, in connection with same.

**5. PROPERTY ADDRESS CORRECTION:** The property address of the subject real property in the Purchase Agreement, all addenda to the Purchase Agreement, the escrow instructions issued by Encore Escrow datede March 19, 2018 and all amendments thereto is hereby amended to reflect the correct property address as "625 South Berendo Street Unit #613, Los Angeles, CA  90005" (the word "Penthouse" is changed to "Unit".)

ALL OTHER TERMS AND CONDITIONS TO REMAIN THE SAME.

SELLERS:                                               BUYERS:

Nancy Zamora, also known as Nancy Hoffmeier                    6/5/2018  |  8:13 PM PDT
Zamora, Trustee for the Chapter 7 Estate for Real          Roshni Nielson
Estate Short Sales, Inc., Case : 1:16-bk-11387-GM

                                                                          6/5/2018  |  8:01 PM PDT
                                                       Jeff Kelsey
                                                       E4FAEE80F1AB4FA...

By:      *Nancy Zamora, Chapter 7 Trustee*
         Nancy Zamora, also known as
         Nancy Hoffmeier Zamora,
         Trustee

036



23901 Calabasas Rd., #1033, Calabasas, CA 91302

(818) 224-2788 • Fax: (818) 224-2789

Jenica Pivnik
Escrow Officer

Date:  June 12, 2018
Escrow No.:  15662-JP

### AMENDED ESCROW INSTRUCTIONS

Property Address:      625 South Berendo Street Unit #613, Los Angeles, CA  90005

THE ABOVE NUMBERED ESCROW IS HEREBY AMENDED AND/OR SUPPLEMENTED AS FOLLOWS:

**BUYER'S NAME(S):** The Purchase and Sale Agreement and Joint Escrow Instructions (Residential Property) dated March 17, 2018, the "Addendum to Purchase and Sale Agreement" issued by Encore Escrow dated March 19, 2018 and all amendments, reports, and addendums thereto are hereby amended to reflect the Buyer's names as follows:  Jeffrey Kelsey and Roshni Nelson.

ALL OTHER TERMS AND CONDITIONS TO REMAIN THE SAME.

SELLERS:

Nancy Zamora, also known as Nancy Hoffmeier
Zamora, Trustee for the Chapter 7 Estate for Real
Estate Short Sales, Inc., Case : 1:16-bk-11387-GM

By:   Nancy Zamora, also known as
       Nancy Hoffmeier Zamora,
       Trustee

BUYERS:

Jeffrey Kelsey

Roshni Nelson

**037**



CALIFORNIA
ASSOCIATION
OF REALTORS®

# ADDENDUM

(C.A.R. Form ADM, Revised 12/15)                                    No. *(1)* _____

The following terms and conditions are hereby incorporated in and made a part of the: ☒ Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind), ☐ Other _____
dated _____ *March 17, 2018* _____ , on property known as _____ *625 South Berendo Street, unit 613* _____
*Los Angeles, CA  90005* _____
in which _____ *Roshni Nelson, Jeff Kelsey* _____ is referred to as ("Buyer/Tenant")
and _____ *Nancy Zamora, Chapter 7 Trustee* _____ is referred to as ("Seller/Landlord").

_**#1.  The property address of the subject real property in the Purchase Agreement, all addenda to Purchase Agreement, escrow instructions, and all amendments to Purchase Agreement and escrow instructions is hereby corrected to change Penthouse #613 to Unit 613.**_

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date _____                    Date *June 4, 2018*

Buyer/Tenant _____ 6/4/2018  |  6:33 PM PDT     Seller/Landlord  *Nancy Zamora, Chapter 7 Trustee*   06/04/2018 21:46:17
*Roshni Nelson*                                             *Nancy Zamora, Chapter 7 Trustee*

Buyer/Tenant _____ 6/4/2018  |  6:45 PM PDT    Seller/Landlord
*Jeff Kelsey*

© 1986-2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

EQUAL HOUSING
OPPORTUNITY

ADM REVISED 12/15 (PAGE 1 OF 1)

ADDENDUM (ADM PAGE 1 OF 1)

Rodeo Realty - Calabasas, 23901 Calabasas Rd. #1050 Calabasas CA 91302          Phone: 8183267760          Fax: 8182227872          625 S Berendo St,
Behnaz Tavakoli                              Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com



CALIFORNIA
ASSOCIATION
OF REALTORS®

## ADDENDUM

(C.A.R. Form ADM, Revised 12/15)

No. **(2)**

The following terms and conditions are hereby incorporated in and made a part of the: ☒ Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind), ☐ Other _____,

dated _____*March 17, 2018*_____ , on property known as _____*625 South Berendo Street, unit 613*_____
_____*Los Angeles, CA  90005*_____
in which _____*Roshni Nelson, Jeffrey Kelsey*_____ is referred to as ("Buyer/Tenant")
and _____*Nancy Zamora, Chapter 7 Trustee*_____ is referred to as ("Seller/Landlord").

*#1.  This is an addendum to all of the documents including the purchase agreement dated March 17, 2018 to correct one of*
*the buyer's first name from Jeff to "Jeffrey " as appears on the buyer's driver license.*
*#2.  All other terms and conditions to be remain the same.*

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

6/12/2018 | 4:21 PM PDT
Date _____   Date 06/12/2018 22:26:39

Buyer/Tenant _____   Seller/Landlord _____
*Roshni Nelson*   *Nancy Zamora, Chapter 7 Trustee*

Buyer/Tenant _____   Seller/Landlord _____
*Jeffrey Kelsey*   6/12/2018 | 4:20 PM PDT

© 1986-2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

EQUAL HOUSING
OPPORTUNITY

ADM REVISED 12/15 (PAGE 1 OF 1)

## ADDENDUM (ADM PAGE 1 OF 1)

Rodeo Realty - Calabasas, 23901 Calabasas Rd. #1050 Calabasas CA 91302    Phone: 8183267760    Fax: 8182227872    625 S Berendo St,
Behnaz Tavakoli    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

039

DocuSign Envelope ID: E778E83E-0F61-45B2-896E-A5352A3C24CC



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

# ADDENDUM

**(C.A.R. Form ADM, Revised 12/15)**

**No. _(3)_**

The following terms and conditions are hereby incorporated in and made a part of the: ☐ Purchase Agreement, ☐ Residential Lease
or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right
to rescind), ☐ Other _____ ,
dated _____*March 17, 2018*_____ , on property known as _____*625 South Berendo Street, unit 613*_____
_____*Los Angeles, CA 90005*_____
in which _____*Roshni Nelson, Jeffrey Kelsey*_____ is referred to as ("Buyer/Tenant")
and _____*Nancy Zamora, Chapter 7 Trustee*_____ is referred to as ("Seller/Landlord").

**#1.  This is an addendum to correct the last name of one of the buyer from Kesley to " Kelsey".**
**#2.  All other terms and conditions to be remain the same.**

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date _____7/17/2018 | 10:04 PM PDT_____   Date _____*July 17, 2018*_____

Buyer/Tenant _____   Seller/Landlord _____
Roshni Nelson   *Nancy Zamora Chapter 7 Trustee*

Buyer/Tenant _____   Seller/Landlord _____
Jeffrey Kelsey   7/17/2018 | 10:03 PM PDT

© 1986-2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**ADM REVISED 12/15 (PAGE 1 OF 1)**

**ADDENDUM (ADM PAGE 1 OF 1)**

Rodeo Realty - Calabasas, 23901 Calabasas Rd. #1050 Calabasas CA 91302    Phone: 8183267760    Fax: 8182227872    625 S Berendo St,
Behnaz Tavakoli    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

DocuSign Envelope ID: 44E9D0E1-33E3-45D9-882C-7DF390E80FF6



CALIFORNIA
ASSOCIATION
OF REALTORS®

ADDENDUM

(C.A.R. Form ADM, Revised 12/15)

No. _4_

The following terms and conditions are hereby incorporated in and made a part of the: ☒ Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind), ☐ Other

dated _____March 17, 2018_____, on property known as _____625 South Berendo Street, unit 613_____
_____Los Angeles, CA 90005_____

in which _____Roshni Nelson, Jeffrey Kelsey_____ is referred to as ("Buyer/Tenant")
and _____Nancy Zamora, Chapter 7 Trustee_____ is referred to as ("Seller/Landlord").

**#1. Purchase price increased from $605,000.00 to $610,000.00.**
**#2. All other terms and conditions to be remain the same.**

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date     8/15/2018 | 9:02 PM PDT

Buyer/Tenant _____
*Roshni Nelson*      A74ED421...

Buyer/Tenant _____
*Jeffrey Kelsey*      E4FAEE80F1AB4FA...

Date     08/16/2018 0:27:47

Seller/Landlord _____*Nancy Zamora, Chapter 7 Trustee*_____
*Nancy Zamora, Chapter 7 Trustee*

Seller/Landlord _____

© 1986-2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

ADM REVISED 12/15 (PAGE 1 OF 1)

ADDENDUM (ADM PAGE 1 OF 1)

Rodeo Realty - Calabasas, 23901 Calabasas Rd. #1050 Calabasas CA 91302      Phone: 8183267760      Fax: 8182227872      625 S Berendo St,
Behnaz Tavakoli                Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

041

DocuSign Envelope ID: CC8E6CD6-44B6-49E9-B8FF-FCC4AA39180D

**CALIFORNIA**
**ASSOCIATION**
**OF REALTORS®**

**CONTINGENCY REMOVAL No.** *ONE (1)*
(C.A.R. Form CR, Revised, 6/16)

In accordance with the terms and conditions of the: ☐ Residential Purchase Agreement (C.A.R. Form RPA-CA), ☐ Request For Repair (C.A.R. Form RR), ☐ Response And Reply To Request For Repair (C.A.R. Form RRRR) or ☒ Other *Purchase & Sale Agreement & Escrow Instructions* ("Agreement"),
dated *03/17/2018* , on property known as *625 South Berendo Street #PH 613 PH 613, Los Angeles, CA 90005* ("Property"),
between *Jeff Kelsey, Roshni Nelson* ("Buyer")
and *Nancy Zamora, Chapter 7 Trustee* ("Seller").

I.  **BUYER REMOVAL OF BUYER CONTINGENCIES:**
1.  With respect to any contingency and cancellation right that Buyer removes, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations and review of reports and other applicable information and disclosures; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense, if any, for Repairs, corrections, or for the inability to obtain financing. Waiver of statutory disclosures is prohibited by law.
2.  Buyer removes those contingencies specified below.
    A.  ONLY the following individually checked Buyer contingencies are removed:
    1.  ☐ Loan (Paragraph 3J)
    2.  ☐ Appraisal (Paragraph 3I)
    3.  ☐ Buyer's Physical Inspection (Paragraph 12)
    4.  ☐ All Buyer Investigations other than a physical inspection (Paragraph 12)
    5.  ☐ Condominium/Planned Development (HOA or OA) Disclosures (Paragraph 10F)
    6.  ☐ Reports/Disclosures (Paragraphs 7 and 10)
    7.  ☐ Title: Preliminary Report (Paragraph 13)
    8.  ☐ Sale of Buyer's Property (Paragraph 4B)
    9.  ☐ Review of documentation for leased or liened items (Paragraph 8B(5)
    10. ☐ Other:
    11. ☐ Other:
  OR B. ☒ ALL Buyer contingencies are removed, EXCEPT: ☒ Loan Contingency (Paragraph 3J); ☒ Appraisal Contingency (Paragraph 3I); ☐ Contingency for the Sale of Buyer's Property (Paragraph 4B); ☐ Condominium/Planned Development (HOA) Disclosures (Paragraph 10F); ☐ Other
  OR C. ☐ BUYER HEREBY REMOVES ANY AND ALL BUYER CONTINGENCIES.
3.  Once all contingencies are removed, whether or not Buyer has satisfied him/herself regarding all contingencies or received any information relating to those contingencies, Buyer may not be entitled to a return of Buyer's deposit if Buyer does not close escrow. This could happen even if, for example, Buyer does not approve of some aspect of the Property or lender does not approve Buyer's loan.

NOTE: Paragraph numbers refer to the California Residential Purchase Agreement (C.A.R. Form RPA-CA). Applicable paragraph numbers for each contingency or contractual action in other C.A.R. contracts are found in Contract Paragraph Matrix (C.A.R. Form CPM).

Buyer *Jeff Kelsey* [signature] Date 4/5/2018 | 8:43 PM PDT

Buyer *Roshni Nelson* [signature] Date 4/5/2018 | 6:02 PM PDT

II. **SELLER REMOVAL OF SELLER CONTINGENCIES:** Seller hereby removes the following Seller contingencies: ☐ Finding of replacement property (C.A.R. Form SRPP); ☐ Closing on replacement property (C.A.R. Form SPRP); ☐ Other

Seller _____ Date _____

Seller _____ Date _____

( ___ / ___ ) (Initials) CONFIRMATION OF RECEIPT: A copy of this signed Contingency Removal was personally received by ☐ Buyer ☐ Seller or authorized agent on _____ (date), at _____ ☐ AM / ☐ PM.

© 2003-2016, California Association of REALTORS®, Inc.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

CR REVISED 6/16 (PAGE 1 OF 1)
**CONTINGENCY REMOVAL (CR PAGE 1 OF 1)**

Douglas Elliman of California, Inc., 9470 Wilshire Boulevard, Suite 120 Beverly Hills CA 90212   Phone: (323)434-4734   Fax: (323)434-4734   Nelson and Kelsey
Marc Hernandez   Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

**042**

DocuSign Envelope ID: 170C0B70-4AC9-4F79-AB94-9431773E3142

CALIFORNIA    **CONTINGENCY REMOVAL** No. *TWO (2)*
ASSOCIATION    (C.A.R. Form CR, Revised, 6/16)
OF REALTORS®

In accordance with the terms and conditions of the: ☐ Residential Purchase Agreement (C.A.R. Form RPA-CA), ☐ Request For Repair (C.A.R. Form RR), ☐ Response And Reply To Request For Repair (C.A.R. Form RRRR) or ☒ Other ***Purchase & Sale Agreement & Escrow Instructions*** _____ ("Agreement"),
dated *03/17/2018* , on property known as _____ *625 South Berendo Street #PH 613, Los Angeles, CA 90005* _____ ("Property"),
between _____ *Jeff Kelsey, Roshni Nelson* _____ ("Buyer")
and _____ *Nancy Zamora, Chapter 7 Trustee* _____ ("Seller").

I. **BUYER REMOVAL OF BUYER CONTINGENCIES:**

1. With respect to any contingency and cancellation right that Buyer removes, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations and review of reports and other applicable information and disclosures; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense, if any, for Repairs, corrections, or for the inability to obtain financing. Waiver of statutory disclosures is prohibited by law.

2. Buyer removes those contingencies specified below.
   A. ONLY the following individually checked Buyer contingencies are removed:
   1. ☐ Loan (Paragraph 3J)
   2. ☐ Appraisal (Paragraph 3I)
   3. ☐ Buyer's Physical Inspection (Paragraph 12)
   4. ☐ All Buyer Investigations other than a physical inspection (Paragraph 12)
   5. ☐ Condominium/Planned Development (HOA or OA) Disclosures (Paragraph 10F)
   6. ☐ Reports/Disclosures (Paragraphs 7 and 10)
   7. ☐ Title: Preliminary Report (Paragraph 13)
   8. ☐ Sale of Buyer's Property (Paragraph 4B)
   9. ☐ Review of documentation for leased or liened items (Paragraph 8B(5))
   10. ☐ Other: _____
   11. ☐ Other: _____

   OR B. ☐ ALL Buyer contingencies are removed, EXCEPT: ☐ Loan Contingency (Paragraph 3J); ☐ Appraisal Contingency (Paragraph 3I); ☐ Contingency for the Sale of Buyer's Property (Paragraph 4B); ☐ Condominium/Planned Development (HOA) Disclosures (Paragraph 10F); ☐ Other _____

   OR C. ☒ BUYER HEREBY REMOVES ANY AND ALL BUYER CONTINGENCIES.

3. Once all contingencies are removed, whether or not Buyer has satisfied him/herself regarding all contingencies or received any information relating to those contingencies, Buyer may not be entitled to a return of Buyer's deposit if Buyer does not close escrow. This could happen even if, for example, Buyer does not approve of some aspect of the Property or lender does not approve Buyer's loan.

NOTE: Paragraph numbers refer to the California Residential Purchase Agreement (C.A.R. Form RPA-CA). Applicable paragraph numbers for each contingency or contractual action in other C.A.R. contracts are found in Contract Paragraph Matrix (C.A.R. Form CPM).

Buyer _____ Jeff Kelsey _____ [DocuSigned by: E4FAEE80F1AB4FA...]  Date _____ 4/18/2018 | 4:50 PM PDT

Buyer _____ Roshni Nelson _____ [DocuSigned by: 1DC291A774ED421...]  Date _____ 4/18/2018 | 5:16 PM PDT

II. **SELLER REMOVAL OF SELLER CONTINGENCIES:** Seller hereby removes the following Seller contingencies: ☐ Finding of replacement property (C.A.R. Form SPRP); ☐ Closing on replacement property (C.A.R. Form SPRP) ☐ Other _____

Seller _____  Date _____

Seller _____  Date _____

( _____ / _____ ) (Initials) CONFIRMATION OF RECEIPT: A copy of this signed Contingency Removal was personally received by ☐ Buyer ☐ Seller or authorized agent on _____ (date), at _____ ☐ AM / ☐ PM.

© 2003-2016, California Association of REALTORS®, Inc.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

CR REVISED 6/16 (PAGE 1 OF 1)

**CONTINGENCY REMOVAL (CR PAGE 1 OF 1)**

Douglas Elliman of California, Inc., 9470 Wilshire Boulevard, Suite 120 Beverly Hills CA 90212    Phone: (323)434-4734    Fax: (323)434-4734    Nelson and Kelsey
Marc Hernandez    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

**043**

# EXHIBIT  B



**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!* ™

1661 Worthington Road, Ste. 100
West Palm Beach, FL 33409
Toll Free: (800) 746-2936

OCWEN

10/16/2018

Loan Number:      5674

To: Zamora3@aol.com

Subject: Here is the short sale approval letter.

**"Enclosed is the copy of the document you requested"**

*IF YOU RECEIVE THIS FAX/EMAIL IN ERROR, PLEASE DESTROY/DELETE THE MATERIALS IMMEDIATELY.*

Confidentiality Notice: This E-mail/Facsimile message and any attachments are intended solely for the use of the addressee hereof and may contain information that is confidential, privileged and/or exempt from disclosure under applicable law. Delivery of this message to any person other than the intended recipient shall not constitute a waiver of any right, privilege or exemption. If you are not the intended recipient, please immediately and permanently delete this message from your system without reproducing or disclosing it to any third party.

5674,        8258, Correspondence/SHORT SALE / DIL LETTER,
10/15/2018 08:55:10

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in an active bankruptcy case or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.

NMLS # 1852

**044**

REPRESENTATION OF PRINTED DOCUMENT

9-814-AQH73-0000007-001-01-001-000-000-000

 GIANCARLO NICOLAS MOLICA
LAW OFFICES OF RENE W SANZ
6323 VAN NUYS BLVD
VAN NUYS CA 91401-2611



MISREPRESENTATION OF PRINTED DOCUMENT

O C W E N

**Ocwen Loan Servicing, LLC**
www.ocwen.com
*Helping Homeowners Is What We Do!®*

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: 800.746.2936



10/11/2018

Account Number:    5674

Giancarlo Nicolas Molica
Law Offices Of Rene W Sanz
6323 Van Nuys Blvd
Van Nuys, CA 91401

**Property Address:**
625 S BERENDO ST Unit 613
LOS ANGELES, CA 90005-1718

### DISCOUNTED PAYOFF AGREEMENT
DISCOUNTED PAYOFF EXPIRES ON **11/29/2018**

Dear Accountholder(s),



**Why We Are Sending This Letter**

Ocwen Loan Servicing, LLC, ("Ocwen"), acting on behalf of WELLS FARGO BANK, N.A., AS TRUSTEE for IMPAC SECURED ASSETS CORP., MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-2 ("Investor"), **has approved a discounted payoff** on the above referenced account of **$492,829.31 ("Payoff Amount")** and, subject to the conditions set forth herein, **an assistance payment to the accountholder of $0.00 ("Assistance Payment").**

**Follow the detailed steps** listed on the following page **on or before 11/29/2018:**

1. Documents listed below must be signed and returned:

| For fastest processing: email or fax documents to: | | Mail documents to: |
|---|---|---|
| **Email:** SS@ocwen.com<br>**Fax:** 407.737.5071 | OR | Ocwen Loan Servicing, LLC<br>Attn: Collateral Based Solutions (SS)<br>1661 Worthington Road, Suite 100<br>West Palm Beach, FL 33409 |

**What Needs To Be Done**

2. The full amount of the of **$492,829.31** (Payoff Amount) must be Wire Transferred to:

   Wells Fargo Bank, NA
   **Ocwen Bank ABA Routing number:**    0248
   **Bank Account Name:** Ocwen Loan Servicing, LLC
   **Ocwen Bank Account Number:**    3352
   **Reference:** Account Number, Property Address, and Accountholder(s) Name

   Once the transfer is completed, the details of the wire transfer and the confirmation **must be emailed** to Transferfunds@ocwen.com.

NMLS # 1852

DISC_PLS_VAM

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

046



**Ocwen Loan Servicing, LLC**
www.ocwen.com
*Helping Homeowners Is What We Do!®*

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: 800.746.2936

| What We Will Do | This discounted payoff expires on **11/29/2018** (the "Expiration Date"). The terms of this payoff option must be complied with on or before the expiration date. Otherwise, this payoff option offer will no longer be available. |
|---|---|

**For any questions we can be reached**, toll free at **888.554.6599, Monday through Friday 8 am to 9 pm ET**. Information concerning may also be found by securely accessing online account at www.ocwencustomers.com.

Sincerely,
*Loan Servicing*

NMLS # 1852                                                                DISC_PLS_VAM
*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

047

REPRESENTATION OF PRINTED DOCUMENT



## Ocwen Loan Servicing, LLC
www.ocwen.com
*Helping Homeowners Is What We Do!®*

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: 800.746.2936



**To accept the discounted payoff, the following must be done prior to the Expiration Date:**

1. There are no payments allowable to any Junior Liens.

2. The Maximum Allowable Real Estate Commission is 5.00000%.

3. If an approval is required to the final Settlement/ Closing Disclosure Statement before closing, a copy must be sent to us at least 48 hours in advance to: finalhudapproval@ocwen.com.

4. After receipt of the entire Payoff Amount, any funds held in the Accountholder(s) escrow/suspense account and/or insurance claim proceeds relating to the account shall be 1) released by Accountholder(s) to Ocwen, 2) considered the property of Ocwen, and 3) applied toward Ocwen's loss.

**To complete the discounted payoff and proceed with lien release, the payoff funds must be accompanied by:**
* A copy of the signed Discounted Payoff Agreement,
* The final Settlement/ Closing Disclosure Statement,
* The Affidavit of Arm's Length Transaction must be signed by all parties

If the required closing documents are not received at the time Ocwen receives the payoff funds, the funds will be returned to the title company.

---

NMLS # 1852                                                                                    DISC_PLS_VAM

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*



**Ocwen Loan Servicing, LLC**
www.ocwen.com
*Helping Homeowners Is What We Do!®*

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: 800.746.2936



## REQUIRED STEPS

All Items **MUST BE RECEIVED** by Ocwen on or before **11/29/2018** (the "Expiration Date").

## WIRE TRANSFER Payoff to Ocwen by the Expiration Date.

Ocwen must **RECEIVE** the approved Payoff Amount by bank wire transfer no later than the close of business of the Expiration Date.

☐ **Bank Wire Transfer** for the full amount of the Approved Payoff - include the account number

☐ Details of the wire transfer **must be emailed** for confirmation to Transferfunds@ocwen.com

BANK WIRE DETAILS - HOW TO REMIT PAYMENT:

> Ocwen Bank Name: Wells Fargo Bank, NA
> Ocwen ABA Routing Number:      0248
> Bank Account Name: Ocwen Loan Servicing, LLC
> Ocwen Bank Account Number:      3352
> Reference: Account Number, Property Address and Accountholder(s) Name

## The following must be mailed within 48 hours of the Expiration Date.

**Fax to 407.737.5071** or Email to SS@ocwen.com

ALL accountholders MUST sign and fax or email all parts of this letter along with the Settlement/ Closing Disclosure Statement:

☐ **Affidavit of "Arm's Length Transaction" – The document must be signed by all parties** .
☐ **Final SETTLEMENT/ CLOSING DISCLOSURE STATEMENT\*** – Fully completed and signed by all parties
☐ **\*IMPORTANT NOTE:** The SETTLEMENT/ CLOSING DISCLOSURE STATEMENT must be consistent with the preliminary SETTLEMENT/ CLOSING DISCLOSURE STATEMENT that Ocwen relied upon to approve this discounted payoff. Any surplus funds must be paid directly to Ocwen Loan Servicing, LLC. Under no circumstances shall any funds go the accountholder(s) unless Ocwen pre-approves such payment to the accountholder(s).
☐ Executed and Recorded copy of Conveyance Deed with "Deed Restriction" verbiage as mentioned in the acceptance terms of this document.
☐ **If junior liens are being paid off through this transaction, a copy of the payoff letter that contains language stating**  they will either pursue or not pursue any deficiency judgment or try to collect on the remaining balance must be received prior to the closing of this transaction.

NMLS # 1852

DISC_PLS_VAM

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

**049**



Ocwen Loan Servicing, LLC
www.ocwen.com
*Helping Homeowners Is What We Do!©*

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: 800.746.2936

OCWEN

## ACKNOWLEDGEMENTS

**ACTIVE BANKRUPTCY REQUIREMENT.** If the liability secured by the above-named property or said property is the subject of an active bankruptcy, the above-named Accountholder(s) must obtain and send Ocwen an order from the bankruptcy court with jurisdiction over such bankruptcy proceeding. Said court order must approve the terms and conditions of the short sale and the Discounted Payoff Agreement.

**PROPERTY MAINTENANCE AND EXPENSES:** The accountholder(s) are responsible for all property maintenance and expenses of their property until the closing of an approved short sale, including utilities, assessments, association dues and costs for interior and exterior maintenance. Additionally, any and all property damage must be reported to us and a hazard insurance claim for covered damage must be filed. Unless insurance proceeds are used to pay for repairs or personal property losses, we may require that they be applied to reduce the mortgage liability.

**ASSISTANCE PAYMENT.** As a condition to receiving the Assistance Payment, the accountholder(s) shall ensure that all occupants have voluntarily and permanently vacated the above-mentioned property no later than the Expiration Date 11/29/2018 leaving the property in "broom clean" condition, free of any exterior and interior debris, damage and destruction and that all appliances, lighting, fixtures, carpeting, etc. remain with the above-mentioned property and that all keys to the abovementioned property, mailboxes, common area facilities, garage door controls and security systems are surrendered to Ocwen or any agent that Ocwen may designate at the time the aforementioned property is vacated. If the Accountholder(s) complies with the foregoing condition and all other terms of this Discounted Payoff Agreement, Ocwen will instruct the settlement agent to pay the Accountholder the Assistance Payment from the sale proceeds at the time that all other payments are disbursed by the settlement agent.

**POSTPONEMENT OF A FORECLOSURE SALE.** If a foreclosure sale date is set, we will postpone the sale date to ensure enough time to complete the discounted payoff. We must receive the Payoff Amount; signed approval letter; executed Affidavit of Arm's Length Transaction; Application of Suspense Funds Affidavit, if applicable; and executed Promissory Note, if applicable, on or before the Expiration Date of this Agreement.

**AGREEMENT CONFIDENTIALITY.** All contents of this letter and the terms of this Discounted Payoff Agreement, are strictly confidential and may only be disclosed to parties authorized by Ocwen, the owner or guarantor of the loan and their respective agents or any other authorized third party. An authorized third party includes, but is not limited to, a counseling agency, Housing Finance Agency (HFA), Consumer Financial Protection Bureau (CFPB) or other similar entity that is assisting in obtaining a foreclosure prevention alternative or ensuring on behalf of the accountholder that all mortgage relief options were properly reviewed and offered. Any disclosure or transmittal of this letter or the terms of this Discounted Payoff Agreement (including, but not limited to website postings and any promotional materials or publications whatsoever) will result in revocation of the discounted payoff offer and liability against all parties involved in such disclosure.

**LEGAL ACTION.** Upon our timely receipt of the entire Payoff Amount, evidence of satisfaction of the above conditions and a copy of this letter, properly signed by each of the above-named Accountholder(s), Ocwen will execute a release/satisfaction and a discharge of the Deed of Trust/Mortgage. If necessary, Ocwen will file a withdrawal in connection with any legal action it may already have taken, as of the date of the response to this letter.

**BALANCE WAIVER.** The remaining deficiency after acceptance of the short sale proceeds is $340,271.62. Ocwen has approved the short sale offer as full and final satisfaction of the mortgage obligation for this lien. Ocwen agrees to waive the remaining balance due on the referenced mortgage or such waiver is required by state law and, therefore, Ocwen will release the Accountholder(s) from further obligation upon successful completion of the short sale. Furthermore, Ocwen agrees to waive all rights to pursue for further judgment or deficiencies, costs, fees, interest or expenses in association with the referenced mortgage. Ocwen further agrees that it shall not transfer any further obligations or rights to pursue further judgment or deficiencies to a third party liability-collector. Unless prohibited by state law, Ocwen will report this liability forgiveness to the Internal Revenue Service on Form 1099-C.

---

NMLS # 1852                                                                                                          DISC_PLS_VAM

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

**050**

CERTIFICATE OF PRINCIPAL PROSPECTUS

**Ocwen Loan Servicing, LLC**
www.ocwen.com
*Helping Homeowners Is What We Do!®*

O C W E N

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: 800.746.2936

## ADDITIONAL LEGAL DISCLOSURES

**NOTICE REGARDING TAX CONSEQUENCES.** Please be advised that completing a short sale may have consequences with respect to federal, state, or local tax liability, as well as eligibility for any public assistance benefits. Ocwen cannot advise on tax liability or any effect on public assistance benefits. It is therefore advisable to consult with a qualified individual or organization about any possible tax or other consequences resulting from the short sale and/or deficiency waiver.

**NOTICE REGARDING CREDIT REPORTING.** We will follow standard industry practice and report to the major credit reporting agencies that the above referenced mortgage was settled for less than the full payment. We have no control over or responsibility for the impact of this report on a credit score. The following website may be accessed to learn more about the potential impact of a short sale on one's credit: http://www.ftc.gov/bcp/edu/pubs/consumer/credit/cre24.shtm.

**NOTICE REGARDING CREDIT DISCRIMINATION:** The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is Federal Trade Commission, Equal Credit Opportunity, Washington, D.C. 20580.

Ocwen reserves the right to terminate this offer at any time prior to the timely acceptance of the terms set forth above. All terms within this agreement must be strictly complied with, and any failure to complete or comply with any term constitutes failure to accept this discounted payoff offer rendering the offer is null and void. If this discounted payoff is not accepted, is terminated prior to acceptance, or otherwise is not completed as instructed in the manner and time frame set forth in this letter, then nothing in this letter shall be construed to prejudice, waive, modify or alter any of Ocwen or Investor's rights or remedies in law or in equity in collecting the entire amounts due and to come due on the Mortgage or be construed to waive any defense of Ocwen or Investor.

---

NMLS # 1852

DISC_PLS_VAM

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

051



Ocwen Loan Servicing, LLC
www.ocwen.com
*Helping Homeowners Is What We Do!®*

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: 800.746.2936

ACKNOWLEDGED AND ACCEPTED by:

**SIGN HERE**

_____
Accountholder Name

/          /
_____
Date (MM|DD|YY)

NMLS # 1852                                                                                    DISC_PLS_VAM

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

**052**

MISREPRESENTATION OF PRINTED DOCUMENT

## Ocwen Loan Servicing, LLC
www.ocwen.com
*Helping Homeowners Is What We Do!®*

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: 800.746.2936

---

## AFFIDAVIT OF "ARM'S LENGTH TRANSACTION"

Account Number:    5674



**Property Address:**
625 S BERENDO ST Unit 613
LOS ANGELES, CA 90005-1718

All Parties to the contract to purchase aforementioned property dated: 03/17/2018

This affidavit is to be executed before or at the time of closing of the sale of the Mortgaged Premises by all Accountholder(s), purchaser(s), real estate brokers representing any of the parties, the escrow/closing agent performing the closing of the sale, and the transaction facilitator facilitating the sale (if any) certifying under penalty of perjury that to the best of each signatory's knowledge and belief:

(a) The sale of the Mortgaged Premises is an "arm's length" transaction, between parties who are unrelated and unaffiliated by family, marriage, or commercial enterprise;

(b) There are no agreements, understandings or contracts between the parties that the Accountholder will remain in the Mortgaged Premises as a tenant or later obtain title or ownership of the Mortgaged Premises, except to the extent that the Borrower is permitted to remain as a tenant on the Mortgaged Premises for a short term, as is common and customary in the market but no longer than ninety (90) days, in order to facilitate relocation;

(c) Neither the Accountholder(s) nor the purchaser(s) will receive any funds or commissions from the sale of the Mortgaged Premises. The Accountholder may receive a payment if it is offered by the Servicer, approved by the Investor and reflected in the SETTLEMENT/ CLOSING DISCLOSURE STATEMENT;

(d) There are no agreements, understandings or contracts relating to the current sale or subsequent sale of the Mortgaged Premises that have not been disclosed to the Servicer;

(e) All amounts to be paid to any party, including holders of other liens on the Mortgaged Premises, in connection with the short payoff transaction have been disclosed to and approved by the Servicer and will be reflected in the SETTLEMENT/ CLOSING DISCLOSURE STATEMENT;

(f) Each signatory understands, agrees and intends that the Servicer and the Investor are relying upon the statements made in the affidavit as consideration for the reduction of the payoff amount of the Mortgage and agreement to the sale of the Mortgaged Premises;

(g) A signatory who makes a negligent or intentional misrepresentation agrees to indemnify the Servicer and the Investor for any and all loss resulting from the misrepresentation including, but not limited to, repayment of the amount of the reduced payoff of the Mortgage;

(h) The certification will survive the closing of the transaction; and

(i) Each signatory understands that a misrepresentation may subject the party making the misrepresentation to civil and/or criminal liability.

---

NMLS # 1852                                                                                                    DISC_PLS_VAM

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

053



Ocwen Loan Servicing, LLC
www.ocwen.com
*Helping Homeowners Is What We Do!®*

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: 800.746.2936

## AFFIDAVIT OF "ARM'S LENGTH TRANSACTION" (PAGE 2)

Account Number:    5674



**Property Address:**
625 S BERENDO ST Unit 613
LOS ANGELES, CA 90005-1718

One cannot list the property with or sell the property to anyone that they are related to or with whom they have a close personal or business relationship. In legal language, it must be an **"arm's length transaction."** If one has a real estate license, then one cannot earn a commission by listing the owned property. There may not be any agreements to receive a portion of the commission or the sale price after closing. The purchaser of a property subject to a short sale must agree not to resell the property within 30 calendar days of closing and further prohibit any resale of the property for 31 to 90 calendar days after closing for a gross sales price greater than 120 percent of the gross sales price of the short sale transaction. Any knowing violation of the arm's length transaction prohibition may be a violation of federal law.



**SIGN HERE**

_____
Seller & Co-Seller(s) Signature & Date
(MM/DD/YY)

_____
Buyer & Co-Buyer(s) Signature & Date
(MM/DD/YY)

Roshni Nelson
Giancarlo Nicolas Molica
_____
Jeffrey Kelsey
_____
Seller's Printed Name

Buyer's Printed Name

**SIGN HERE**

_____
Seller's Agent Signature & Date
(MM/DD/YY)

_____
Buyer's Agent Signature & Date
(MM/DD/YY)

_____
Seller's Agent Name

_____
Buyer's Agent Name

9-814-AQH73-0000007-001-10-001-000-000-000

---

NMLS # 1852

DISC_PLS_VAM

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

**054**



Ocwen Loan Servicing, LLC
www.ocwen.com
*Helping Homeowners Is What We Do!*®

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: 800.746.2936



Escrow / Closing Agent Name

Escrow /Closing Agent Company Name

**SIGN HERE**

Escrow Closing Agent Signature & Date
(MM/DD/YY)

**SIGN HERE**

Transaction Facilitator Signature (if Applicable)
& Date (MM/DD/YY)

NMLS # 1852

DISC_PLS_VAM

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

**055**

# LILLY ENTERPRISES, INC.
## LILLY PROPERTY MANAGEMENT COMPANY

*Celebrating Over 25 Years*
*Of Providing Professional Service*
BROKER LIC. 00754144

### *Homeowner Association Demand Statement*

To:                                      Re:

_Encore Escrow Co._          _(o25 S. Berendo St. #PH13_
_23901 Calabasas Rd, Ste 1033_   _Los Angeles, CA 90005_
_Calabasas, CA 91302_

The following Demand Statement concerns the above-referenced premises and is accurate as of the date herein executed below. If your sale closes after this date, please contact our offices for an updated statement.

1. Association dues/assessments are $ ———— per month; due on the 1st day of each month. Dues/assessments are currently paid through ———— with the next payment due on ———— and payable as follows: _Barcelona HOA_ _____ c/o Lilly Property Management Co., 152 West Walnut Street, Ste 290, Gardena, CA 90248.

2. Delinquent and currently outstanding dues/assessments now total $ **$30,250** for the period(s)_____.

3. A late charge of $ ———— /10% ten percent is assessed 15 days after the due date of each Association dues/assessments.

4. Assessed and currently outstanding late charges now total $ ———— for the period(s)_____.

5. A transfer fee of $50.00 payable to: "Lilly Property Management, Co."

6. Premium for blanket hazard insurance is included in the monthly assessment.

7. Information regarding new owner(s) that must be provided to the Association to transfer membership:

   a. Name of new owner(s)
   b. Mailing address, if different from premises
   c. Telephone number for emergencies
   d. Date of ownership was transferred

Prepared by: _____ ;Agent    Date: 8/21/18
   Elizabeth Allard



**INVESTMENT, MANAGEMENT, DEVELOPMENT**
est Walnut Street, Suite 290, Gardena, California 90248
**TEL: (310) 324-7400 FAX: (310) 324-7404**
**WWW.LILLYENTERPRISESINC.COM**

**056**

# EXHIBIT  C

**CLTA Preliminary Report Form**
(Rev. 11/06)

Order Number:  5546627
Page Number:  1

 *First American Title*

# First American Title Company

**655 North Central Avenue, 8th Floor**
**Glendale, CA 91203**
California Department of Insurance License No. 151

Order Number:                5546627 (MP)

Title Officer:                    Michelle Pascual
Phone:                        (818)550-2517
Fax No.:                       (866)878-7977
E-Mail:                        mpascual@firstam.com
Property:                      625 South Berendo Street #613
                               Los Angeles, CA 90005

### PRELIMINARY REPORT

In response to the above referenced application for a policy of title insurance, this company hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an Exception below or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Exhibit A attached. *The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties.* Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Exhibit A. Copies of the policy forms should be read. They are available from the office which issued this report.

**Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit A of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

**057**

Order Number: 5546627
Page Number: 2

Dated as of September 21, 2017 at 7:30 A.M.

The form of Policy of title insurance contemplated by this report is:

ALTA/CLTA Homeowner's (EAGLE) Policy of Title Insurance (2010) and ALTA Ext Loan Policy 1056.06
(06-17-06) if the land described is an improved residential lot or condominium unit on which there is
located a one-to-four family residence; or ALTA Standard Owner's Policy 2006 (WRE 06-17-06) and the
ALTA Loan Policy 2006 (06-17-06) if the land described is an unimproved residential lot or condominium
unit

A specific request should be made if another form or additional coverage is desired.

Title to said estate or interest at the date hereof is vested in:

　　　Real Estate Short Sales Inc., subject to exception no. 21

The estate or interest in the land hereinafter described or referred to covered by this Report is:

　　　A FEE AS TO PARCEL(S) ONE AND TWO, AN EASEMENT AS TO PARCEL(S) THREE

The Land referred to herein is described as follows:

(See attached Legal Description)

At the date hereof exceptions to coverage in addition to the printed Exceptions and Exclusions in said
policy form would be as follows:

1.  General and special taxes and assessments for the fiscal year 2017-2018, a lien not yet due or
    payable.

2.  The lien of supplemental taxes, if any, assessed pursuant to Chapter 3.5 commencing with Section 75
    of the California Revenue and Taxation Code.

3.  Any easements or servitudes appearing in the public records.
    Affects:　　　　Common Area.

4.  The terms and provisions contained in the document entitled "COVENANT AND AGREEMENT"
    recorded November 21, 1994 as INSTRUMENT NO. 94-2094021 of Official Records.

5.  The fact that the land lies within the boundaries of the WILSHIRE CENTER/KOREATOWN RECOVERY
    Redevelopment Project Area, as disclosed by the document recorded December 26, 1995 as
    INSTRUMENT NO. 95-2040205 of Official Records.

**058**

Order Number: **5546627**
Page Number: **3**

6.  The terms and provisions contained in the document entitled "COVENANT AND AGREEMENT" recorded December 19, 2002 as INSTRUMENT NO. 02-3125647 of Official Records.

7.  The terms and provisions contained in the document entitled "COVENANT AND AGREEMENT" recorded December 19, 2002 as INSTRUMENT NO. 02-3125648 of Official Records.

8.  The terms and provisions contained in the document entitled "COVENANT AND AGREEMENT" recorded December 19, 2002 as INSTRUMENT NO. 02-3125649 of Official Records.

9.  The condition that the property shall be used for the sole purpose of providing, construction and maintaining Affordable Housing, as more fully defined therein, and upon the terms, covenants and conditions in that certain document recorded December 19, 2002 as INSTRUMENT NO. 02-3125650 of Official Records.

    **Note: A written consent or waiver may be necessary from the public agency for any sale or refinance.**

10. The terms and provisions contained in the document entitled "AFFIDAVIT REGARDING MAINTENANCE OF SUMP PUMP" recorded February 21, 2003 as INSTRUMENT NO. 03-510470 of Official Records.

11. The terms and provisions contained in the document entitled "COVENANT AND AGREEMENT" recorded February 21, 2003 as INSTRUMENT NO. 03-510471 of Official Records.

12. The terms and provisions contained in the document entitled "COVENANT AND AGREEMENT" recorded March 07, 2003 as INSTRUMENT NO. 03-662036 of Official Records.

13. The terms and provisions contained in the document entitled "COVENANT AND AGREEMENT" recorded January 17, 2004 as INSTRUMENT NO. 04-1549727 of Official Records.

14. The terms and provisions contained in the document entitled "COVENANT AND AGREEMENT" recorded January 17, 2004 as INSTRUMENT NO. 04-1549728 of Official Records.

15. The terms and provisions contained in the document entitled "COVENANT AND AGREEMENT" recorded January 17, 2004 as INSTRUMENT NO. 04-1549729 of Official Records.

16. Covenants, conditions, restrictions, easements, assessments, liens, charges, terms and provisions in the document recorded February 03, 2005 as INSTRUMENT NO. 05-259466 of Official Records, which provide that a violation thereof shall not defeat or render invalid the lien of any first mortgage or deed of trust made in good faith and for value, but deleting any covenant, condition, or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, sexual orientation, familial status, disability, handicap, national origin, genetic information, gender, gender identity, gender expression, source of income (as defined in California Government Code § 12955(p)) or ancestry, to the extent such covenants, conditions or restrictions violation 42 U.S.C. § 3604(c) or California Government Code § 12955. Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

    BARCELONA TOWER, INC. Homeowners Association is referenced in the above mentioned document.

    Document(s) declaring modifications thereof recorded March 10, 2005 as INSTRUMENT NO. 05-552166 of Official Records.

**059**

Order Number: 5546627
Page Number: 4

17. The terms and provisions contained in the document entitled "NOTICE OF ELECTION OF
ALTERNATIVE PRE-LITIGATION PROCEDURES FOR CONSTRUCTION CLAIMS PURSUANT TO
CALIFORNIA CIVIL CODE SECTION 895 ET SOUTHEAST QUARTER" recorded February 16, 2005
as INSTRUMENT NO; 05-356958 of Official Records.

18. A deed of trust to secure an original indebtedness of $440,000.00 recorded August 10,
2005 as INSTRUMENT NO. 05-1908862 OF OFFICIAL RECORDS.

| | |
|---|---|
| Dated: | August 02, 2005 |
| Trustor: | GIANCARLO NICOLAS MOLICA, A SINGLE MAN |
| Trustee: | LAWYERS TITLE |
| Beneficiary: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. |
| LENDER: | HOMEWIDE LENDING, CORP. |

According to the public records, the beneficial interest under the deed of trust has been assigned
to WELLS FARGO BANK, N.A., AS TRUSTEE UNDER THE POOLING AND SERVICING AGREEMENT
RELATING TO IMPAC SECURED ASSETS CORP., MORTGAGE PASS-THROUGH CERTIFICATES, SERIES
2005-2 by various assignments, the last of which was recorded APRIL 08, 2013 as INSTRUMENT NO.
13-518488 of Official Records.

A document recorded April 30, 2015 as INSTRUMENT NO. 15-491415 OF OFFICIAL RECORDS
provides that WESTERN PROGRESSIVE, LLC was substituted as trustee under the deed of trust.

The effect of a document entitled "TRUSTEE'S DEED UPON SALE", recorded July 28, 2016 as
INSTRUMENT NO. 16-887434 of Official Records.

The effect of a document entitled "NOTICE OF RESCISSION OF TRUSTEE'S DEED UPON SALE",
recorded August 19, 2016 as INSTRUMENT NO. 16-986432 of Official Records.

19. A deed of trust to secure an original indebtedness of $120,833.00 recorded March 08,
2006 as INSTRUMENT NO. 06-500090 OF OFFICIAL RECORDS.

| | |
|---|---|
| Dated: | March 03, 2006 |
| Trustor: | GIANCARLO NICOLAS MOLICA, SINGLE |
| Trustee: | HOUSEKEY FINANCIAL CORP. |
| Beneficiary: | BENEFICIAL CALIFORNIA, INC. |

A notice of default recorded June 27, 2007 as INSTRUMENT NO. 07-1538397 OF OFFICIAL
RECORDS.

A notice of trustee's sale recorded October 02, 2007 as INSTRUMENT NO. 07-2259153 OF OFFICIAL
RECORDS.

20. A notice of homeowners association assessment lien recorded January 24, 2007 as INSTRUMENT NO.
07-143266 OF OFFICIAL RECORDS.

| | |
|---|---|
| Association: | BARCELONA TOWER, INC. |
| Amount: | $4,224.68, and any other amounts due thereunder. |

A notice of default recorded May 14, 2007 as INSTRUMENT NO. 07-1165036 OF OFFICIAL RECORDS.

060

Order Number: **5546627**
Page Number: 5

21. The effect of a document entitled "GRANT DEED", recorded March 23, 2007 as INSTRUMENT NO. 07-669089 OF OFFICIAL RECORDS.

    THE REQUIREMENT THE DOCUMENT IS RE-RECORDED TO INCLUDE A COMPLETE AND CORRECT LEGAL DESCRIPTION

22. The terms and provisions contained in the document entitled "WAIVER OF DAMAGES, INDEMNIFICATION AGREEMENT AND RIGHT OF INGRESS AND EGRESS - COVENANT TO RUN WITH THE LAND" recorded November 20, 2007 as INSTRUMENT NO. 07-2582014 of Official Records.

23. A notice of homeowners association assessment lien recorded August 20, 2015 as INSTRUMENT NO. 15-1027470 OF OFFICIAL RECORDS.
    Association:                     BARCELONA TOWER, INC.
    Amount:                       $48,652.28, and any other amounts due thereunder.

    A notice of default recorded October 13, 2015 as INSTRUMENT NO. 15-1259880 OF OFFICIAL RECORDS.

    A notice of trustee's sale recorded December 30, 2016 as INSTRUMENT NO. 16-1664962 OF OFFICIAL RECORDS.

24. Any defects, liens, encumbrances or other matters which name parties with the same or similar names as REAL ESTATE SHORT SALES INC.. The name search necessary to ascertain the existence of such matters has not been completed.  In order to complete this preliminary report or commitment, we will require a statement of information.

25. This transaction may be subject to the FinCEN Geographic Targeting Order affecting residential sale transactions. This company must be provided with information prior to the closing sufficient to determine if IRS/FinCEN Form 8300 must be completed and filed and must be provided information sufficient to meet the records retention requirements of the FinCEN Geographic Targeting Order. This transaction will not be insured, and this company and/or its underwriter will not be involved in a Covered Transaction (as defined by the FinCEN Geographic Targeting Order) until this information is submitted and reviewed by this company.

    **Prior to the issuance of any policy of title insurance, the Company will require:**

26. With respect to REAL ESTATE SHORT SALES INC, a corporation:
    a. A certificate of good standing of recent date issued by the Secretary of State of the corporation's state of domicile.
    b. A certified copy of a resolution of the Board of Directors authorizing the contemplated transaction and designating which corporate officers shall have the power to execute on behalf of the corporation.
    c. Other requirements which the Company may impose following its review of the material required herein and other information which the Company may require.

Order Number: **5546627**
Page Number: 6

---

### INFORMATIONAL NOTES

---

Note: The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than the certain dollar amount set forth in any applicable arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. If you desire to review the terms of the policy, including any arbitration clause that may be included, contact the office that issued this Commitment or Report to obtain a sample of the policy jacket for the policy that is to be issued in connection with your transaction.

1. General and special taxes and assessments for the fiscal year 2016-2017.

   | | |
   |---|---|
   | First Installment: | $3,283.65, PAID |
   | Penalty: | $0.00 |
   | Second Installment: | $3,283.65, PAID |
   | Penalty: | $0.00 |
   | Tax Rate Area: | 6657 |
   | A. P. No.: | 7-098 |

2. This report is preparatory to the issuance of an ALTA Loan Policy. We have no knowledge of any fact which would preclude the issuance of the policy with CLTA endorsement forms 100 and 116 and if applicable, 115 and 116.2 attached.

   When issued, the CLTA endorsement form 116 or 116.2, if applicable will reference a(n) Condominium known as 625 SOUTH BERENDO STREET #613, LOS ANGELES, CA.

3. According to the public records, there has been no conveyance of the land within a period of twenty four months prior to the date of this report, except as follows:

   Trustee's Deed from WESTERN PROGRESSIVE, LLC as Trustee to WELLS FARGO BANK, N.A., AS TRUSTEE FOR IMPAC SECURED ASSETS CORP., MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-2 recorded July 28, 2016 as INSTRUMENT NO. 16-887434 of Official Records. Amount of the unpaid debt together with costs was $747,050.99

4. Note: Please contact the BARCELONA TOWER, INC. Homeowner's Association and/or their successors and assigns or any other appropriate entity regarding assessments, transfer fees and other requirements that may be due or imposed upon the contemplated transaction pursuant to the above document(s). Reference is made to the recorded document(s) for full particulars.

   NOTE to proposed insured lender only: No Private transfer fee covenant, as defined in Federal Housing Finance Agency Final Rule 12 CFR Part 1228, that was created and first appears in the Public Records on or after February 8, 2011, encumbers the Title except as follows: None

The map attached, if any, may or may not be a survey of the land depicted hereon. First American expressly disclaims any liability for loss or damage which may result from reliance on this map except to the extent coverage for such loss or damage is expressly provided by the terms and provisions of the title insurance policy, if any, to which this map is attached.

Order Number: **5546627**
Page Number: 7

## LEGAL DESCRIPTION

Real property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

A CONDOMINIUM COMPRISED OF:

PARCEL ONE:

AN UNDIVIDED 1/79TH INTEREST AND TO LOT 1 OF TRACT 53887, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1296, PAGES 3 AND 4 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM UNITS 98, 99, 101 THROUGH 112, 201 THROUGH 213, 301 THROUGH 313, 401 THROUGH 413, 501 THROUGH 513, 601 THROUGH 613, AS DEFINED AND DELINEATED ON A CONDOMINIUM PLAN RECORDED FEBRUARY 3, 2005, AS INSTRUMENT NO. 05-259465 OF OFFICIAL RECORDS.

PARCEL TWO:

UNIT NO. 613, CONSISTING OF CERTAIN AIR SPACE AND ELEMENTS AS DESCRIBED IN THE CONDOMINIUM PLAN MENTIONED ABOVE.

PARCEL THREE:

AN EXCLUSIVE EASEMENT APPURTENANT TO PARCEL ONE AND TWO ABOVE FOR ALL USES AND PURPOSES OF "PARKING SPACE AREA" OVER AND ACROSS THAT PORTION OF LOT 1 OF TRACT 53887 DEFINED AND DELINEATED AS EXCLUSIVE USE COMMON AREA WHICH BEARS THE SAME NUMBER AS THE UNIT REFERRED TO IN PARCEL ONE ABOVE FOLLOWED BY THE LETTER P-1 AND P-2, ON THE ABOVE REFERENCED CONDOMINIUM PLAN.

APN: .      7-098

063

Order Number: **5546627**
Page Number: **8**



Order Number: **5546627**
Page Number: **9**

## *NOTICE*

Section 12413.1 of the California Insurance Code, effective January 1, 1990, requires that any title insurance company, underwritten title company, or controlled escrow company handling funds in an escrow or sub-escrow capacity, wait a specified number of days after depositing funds, before recording any documents in connection with the transaction or disbursing funds. This statute allows for funds deposited by wire transfer to be disbursed the same day as deposit. In the case of cashier's checks or certified checks, funds may be disbursed the next day after deposit. In order to avoid unnecessary delays of three to seven days, or more, please use wire transfer, cashier's checks, or certified checks whenever possible.

**065**

Order Number: **5546627**
Page Number: **10**

# INCOMING DOMESTIC WIRE INSTRUCTIONS

**Beware of cyber-crime!** If you receive an e-mail or any other communication that appears to be generated from a First American Title Company employee that contains new, revised or altered bank wire instructions, consider it suspect and call our office at a number you trust.

## ** Our Wire Instructions Do Not Change. **

**Funds from other than buyer or seller:** Other than funds from a designated lender, real estate agent or broker, or the attorney of record, we will only accept incoming wires that are from the buyer or seller on a transaction. Other third party deposits not accompanied by appropriate instructions will be returned to the remitter.

**Funds from a U.S. Bank:** Funds should be wired from a bank within the United States.  Notify our office at (818)242-5800  when you have transmitted your wire.

**Funds from a non-U.S. Bank:**  If your funds are being wired from a non-U.S. bank, additional charges may apply.  Contact our office for Incoming International Wiring Instructions.

**ACH Transfers are NOT wire transfers:**  An ACH transfer is not immediately available funds and requires additional time for clearance.  An ACH transfer cannot be accepted for an imminent closing.  Acceptance of ACH transfers are subject to state law. Contact our office at (818)242-5800  prior to sending funds by ACH transfer.

Contact our office at (818)242-5800 when funds are sent.

```
PAYABLE TO:       First American Title Company
BANK:             First American Trust, FSB
ADDRESS           5 First American Way, Santa Ana, CA 92707
ACCOUNT NO.:          0000
ROUTING NUMBER       1255
```

```
PLEASE REFERENCE THE FOLLOWING:
PROPERTY:         625 South Berendo Street #613,  Los Angeles, CA 90005
FILE NUMBER:      5546627
```

## WIRES MAY BE RETURNED IF THE FILE NUMBER
## AND PROPERTY REFERENCE ARE NOT INCLUDED

**066**

Order Number: **5546627**
Page Number: **11**

**EXHIBIT A**
**LIST OF PRINTED EXCEPTIONS AND EXCLUSIONS (BY POLICY TYPE)**

**CLTA STANDARD COVERAGE POLICY – 1990**
**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a) Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
    (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2.  Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3.  Defects, liens, encumbrances, adverse claims or other matters:
    (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;
    (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
    (c) resulting in no loss or damage to the insured claimant;
    (d) attaching or created subsequent to Date of Policy; or
    (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.
4.  Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.
5.  Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6.  Any claim, which arises out of the transaction vesting in the insured the estate or interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

**EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I**

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
    Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public, records.
2.  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the public records.
4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.
6.  Any lien or right to a lien for services, labor or material not shown by the public records.

**CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)**
**EXCLUSIONS**

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1.  Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:
    a. building;
    b. zoning;
    c. land use;

**067**

Order Number: **5546627**
Page Number: 12

d. improvements on the Land;
e. land division; and
f. environmental protection.
This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.
2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3. The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.
4. Risks:
   a. that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
   b. that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
   c. that result in no loss to You; or
   d. that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.
5. Failure to pay value for Your Title.
6. Lack of a right:
   a. to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
   b. in streets, alleys, or waterways that touch the Land.
   This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7. The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.
8. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
9. Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1% of Policy Amount Shown in Schedule A or $2,500 (whichever is less) | $10,000 |
| Covered Risk 18: | 1% of Policy Amount Shown in Schedule A or $5,000 (whichever is less) | $25,000 |
| Covered Risk 19: | 1% of Policy Amount Shown in Schedule A or $5,000 (whichever is less) | $25,000 |
| Covered Risk 21: | 1% of Policy Amount Shown in Schedule A or $2,500 (whichever is less) | $5,000 |

## 2006 ALTA LOAN POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

      (i) the occupancy, use, or enjoyment of the Land;
      (ii) the character, dimensions, or location of any improvement erected on the Land;
      (iii) the subdivision of land; or
      (iv) environmental protection;

   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

*First American Title*
Page 12 of 16

**068**

Order Number: **5546627**
Page Number: **13**

(c) resulting in no loss or damage to the Insured Claimant;
(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or
(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.
6.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
    (a) a fraudulent conveyance or fraudulent transfer, or
    (b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.
7.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

### EXCEPTIONS FROM COVERAGE
[Except as provided in Schedule B - Part II,[ t[or T]his policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:
### [PART I
[The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:
1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency  that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.  Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by  persons in possession of the Land.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.  Any lien or right to a lien for services, labor or material not shown by the public records.

### PART II
In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:]

### 2006 ALTA OWNER'S POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

    (i) the occupancy, use, or enjoyment of the Land;
    (ii) the character, dimensions, or location of any improvement erected on the Land;
    (iii) the subdivision of land; or
    (iv) environmental protection;

    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.  Defects, liens, encumbrances, adverse claims, or other matters
    (a) created, suffered, assumed, or agreed to by the Insured Claimant;
    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

*First American Title*
Page 13 of 16

**069**

Order Number: **5546627**
Page Number: 14

(c) resulting in no loss or damage to the Insured Claimant;
(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 or 10); or
(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4.   Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
(a) a fraudulent conveyance or fraudulent transfer, or
(b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5.   Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:
[The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1.   (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency  that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.   Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by  persons in possession of the Land.
3.   Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4.   Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5.   (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.   Any lien or right to a lien for services, labor or material not shown by the Public Records.
7.   [Variable exceptions such as taxes, easements, CC&R's, etc. shown here.]

**ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY (07-26-10)**
EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.   (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

(i) the occupancy, use, or enjoyment of the Land;
(ii) the character, dimensions, or location of any improvement erected on the Land;
(iii) the subdivision of land; or
(iv) environmental protection;

or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk  5, 6, 13(c), 13(d), 14 or 16.
(b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
2.   Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.   Defects, liens, encumbrances, adverse claims, or other matters
(a) created, suffered, assumed, or agreed to by the Insured Claimant;
(b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
(c) resulting in no loss or damage to the Insured Claimant;
(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or
(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4.   Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5.   Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.
6.   Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the

*First American Title*
Page 14 of 16

Order Number: **5546627**
Page Number:  15

Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.

7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.

8. The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes.  This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.

9. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
   (a) a fraudulent conveyance or fraudulent transfer, or
   (b) a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.

10. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

11. Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

Order Number: **5546627**
Page Number: 16

 *First American Title*

**Privacy Information**

**We Are Committed to Safeguarding Customer Information**
In order to better serve your needs now and in the future, we may ask you to provide us with certain information. We understand that you may be concerned about what we will do with such information - particularly any personal or financial information. We agree that you have a right to know how we will utilize the personal information you provide to us. Therefore, together with our subsidiaries we have adopted this Privacy Policy to govern the use and handling of your personal information.

**Applicability**
This Privacy Policy governs our use of the information that you provide to us. It does not govern the manner in which we may use information we have obtained from any other source, such as information obtained from a public record or from another person or entity. First American has also adopted broader guidelines that govern our use of personal information regardless of its source. First American calls these guidelines its Fair Information Values.

**Types of Information**
Depending upon which of our services you are utilizing, the types of nonpublic personal information that we may collect include:
- Information we receive from you on applications, forms and in other communications to us, whether in writing, in person, by telephone or any other means;
- Information about your transactions with us, our affiliated companies, or others; and
- Information we receive from a consumer reporting agency.

**Use of Information**
We request information from you for our own legitimate business purposes and not for the benefit of any nonaffiliated party. Therefore, we will not release your information to nonaffiliated parties except: (1) as necessary for us to provide the product or service you have requested of us; or (2) as permitted by law. We may, however, store such information indefinitely, including the period after which any customer relationship has ceased. Such information may be used for any internal purpose, such as quality control efforts or customer analysis. We may also provide all of the types of nonpublic personal information listed above to one or more of our affiliated companies. Such affiliated companies include financial service providers, such as title insurers, property and casualty insurers, and trust and investment advisory companies, or companies involved in real estate services, such as appraisal companies, home warranty companies and escrow companies. Furthermore, we may also provide all the information we collect, as described above, to companies that perform marketing services on our behalf, on behalf of our affiliated companies or to other financial institutions with whom we or our affiliated companies have joint marketing agreements.

**Former Customers**
Even if you are no longer our customer, our Privacy Policy will continue to apply to you.

**Confidentiality and Security**
We will use our best efforts to ensure that no unauthorized parties have access to any of your information. We restrict access to nonpublic personal information about you to those individuals and entities who need to know that information to provide products or services to you. We will use our best efforts to train and oversee our employees and agents to ensure that your information will be handled responsibly and in accordance with this Privacy Policy and First American's Fair Information Values. We currently maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

**Information Obtained Through Our Web Site**
First American Financial Corporation is sensitive to privacy issues on the Internet. We believe it is important you know how we treat the information about you we receive on the Internet.
In general, you can visit First American or its affiliates' Web sites on the World Wide Web without telling us who you are or revealing any information about yourself. Our Web servers collect the domain names, not the e-mail addresses, of visitors. This information is aggregated to measure the number of visits, average time spent on the site, pages viewed and similar information. First American uses this information to measure the use of our site and to develop ideas to improve the content of our site.
There are times, however, when we may need information from you, such as your name and email address. When information is needed, we will use our best efforts to let you know at the time of collection how we will use the personal information. Usually, the personal information we collect is used only by us to respond to your inquiry, process an order or allow you to access specific account/profile information. If you choose to share any personal information with us, we will only use it in accordance with the policies outlined above.

**Business Relationships**
First American Financial Corporation's site and its affiliates' sites may contain links to other Web sites. While we try to link only to sites that share our high standards and respect for privacy, we are not responsible for the content or the privacy practices employed by other sites.

**Cookies**
Some of First American's Web sites may make use of "cookie" technology to measure site activity and to customize information to your personal tastes. A cookie is an element of data that a Web site can send to your browser, which may then store the cookie on your hard drive.
FirstAm.com uses stored cookies. The goal of this technology is to better serve you when visiting our site, save you time when you are here and to provide you with a more meaningful and productive Web site experience.
------------------------------------------------------
**Fair Information Values**
**Fairness** We consider consumer expectations about their privacy in all our businesses. We only offer products and services that assure a favorable balance between consumer benefits and consumer privacy.
**Public Record** We believe that an open public record creates significant value for society, enhances consumer choice and creates consumer opportunity. We actively support an open public record and emphasize its importance and contribution to our economy.
**Use** We believe we should behave responsibly when we use information about a consumer in our business. We will obey the laws governing the collection, use and dissemination of data.
**Accuracy** We will take reasonable steps to help assure the accuracy of the data we collect, use and disseminate. Where possible, we will take reasonable steps to correct inaccurate information. When, as with the public record, we cannot correct inaccurate information, we will take all reasonable steps to assist consumers in identifying the source of the erroneous data so that the consumer can secure the required corrections.
**Education** We endeavor to educate the users of our products and services, our employees and others in our industry about the importance of consumer privacy. We will instruct our employees on our fair information values and on the responsible collection and use of data. We will encourage others in our industry to collect and use information in a responsible manner.
**Security** We will maintain appropriate facilities and systems to protect against unauthorized access to and corruption of the data we maintain.

Form 50-PRIVACY (9/1/10)                    Page 1 of 1                    Privacy Information (2001-2010 First American Financial Corporation)

072

# EXHIBIT  D



**Encore Escrow Company Inc.**

23901 Calabasas Rd., #1033, Calabasas, CA 91302

(818) 224-2788 • Fax: (818) 224-2789

### MASTER ESTIMATED SETTLEMENT STATEMENT

Printed: October 4, 2018  01:46pm

| | |
|---|---|
| **PROPERTY:** | 625 South Berendo Street Unit #813<br>Los Angeles, CA 90005 |
| **BUYER:** | Jeffrey Kelsey and Roshni Nelson |
| **SELLER:** | Nancy Zamora, also known as Nancy Hoffmeier Zamora, Trustee for the Chapter 7 Estate for Real Estate Short Sales, Inc., Case : 1:16-bk-11387-GM |

| | |
|---|---|
| **CLOSING/RECORD DATE:** | November 30, 2018 |
| **ESCROW NO.:** | 15662-JP |

| SELLER DEBITS | CREDITS | | BUYER DEBITS | CREDITS |
|---|---|---|---|---|
| | | **FINANCIAL CONSIDERATION** | | |
| | 610,000.00 | Total Consideration | 610,000.00 | |
| | | Deposit from Roshni M. Nelson | | 10,000.00 |
| | | New 1st Trust Deed - | | 492,000.00 |
| | | New 2nd Trust Deed - | | 80,875.00 |
| | | **PAYOFF CHARGES - Ocwen**<br>**[Total Payoff $492,829.31]** | | |
| 492,829.31 | | Proposed Settlement | | |
| | | **PAYOFF CHARGES - 508C3 Bankruptcy Estate,**<br>**Case 1:16-bk-11387-GM**<br>**[Total Payoff $36,300.00]** | | |
| 36,300.00 | | Bankruptcy Carveout | | |
| | | **LOAN INFORMATION -**<br>**[Charges $2,289.00]** | | |
| | | Appraisal Fee | 575.00 | |
| | | Credit Report | 49.00 | |
| | | Lender Fee | 1,595.00 | |
| | | Tax Service Fee | 62.00 | |
| | | Flood Certification | 8.00 | |
| | | **PRORATIONS/ADJUSTMENTS** | | |
| 3,018.19 | | County Taxes at $3,846.13/semi-annually from 07/01/2018 to 11/30/2018 | | 3,018.19 |
| 10,000.00 | | Seller credit to buyer towards Closing Costs | | 10,000.00 |
| | | **COMMISSION CHARGES** | | |
| 15,250.00 | | Rodeo Realty, Inc. | | |
| 15,250.00 | | Douglas Elliman of California, Inc. | | |
| | | **H.O.A./MANAGEMENT** | | |
| | | Transfer Fee to Lily Property Management Co. | 50.00 | |
| 30,250.00 | | Settlement to Barcelona Tower Inc. | | |
| | | **OTHER DEBITS/CREDITS** | | |
| | | Farmers -Rough Estimate for Homeowner's Insurance | 1,000.00 | |
| | | Los Angeles Dept. of Water and Power for Certificate of Compliance | 15.00 | |
| | | Department of Building and Safety for 9a Report (must be prepaid) | 70.85 | |
| | | First American Natural Hazard Disclosures for Property Disclosure Report | 89.95 | |
| | | LA Low Flush Toilets Retrofit Work | 99.00 | |
| | | **TITLE/TAXES/RECORDING CHARGES - First American Title Company** | | |
| 1,794.00 | | Title - Owner's Title Insurance | | |
| | | Title - Lender's Title Insurance Full $1262 | 922.00 | |
| | | Title - Lender's Title Insurance Full $4175-2 (2nd Loan) | 175.00 | |
| | | Title - Endorsements estimate | 250.00 | |
| | | Title - Notary Signing estimate | 250.00 | |
| | | Title - Notary signing estimate - 2nd (2nd Loan) | 100.00 | |
| 62.50 | | Title - Sub Escrow Fee | 62.50 | |

Certified to be a true & correct copy of the original

Closing Date: November 30, 2018
Date: October 4, 2018

Escrow No.: 15662-JP
Printed: October 4, 2018  01:49pm

Page 2 of 2:

| | | | |
|---|---|---|---|
| 95.00 | Title - Wire Fee / Insp Fee | 95.00 | |
| | Recording Grant Deed | 60.00 | |
| | Recording Trust Deed | 150.00 | |
| | Recording Trust Deed -2nd (2nd Loan) | 100.00 | |
| | Recording Service fee | 25.00 | |
| | Recording SK Order | 200.00 | |
| 671.00 | Transfer Tax - County to Los Angeles County | | |
| 2,745.00 | Transfer Tax - City to City of Los Angeles | | |
| | Property Taxes ( 6 mo.) to Los Angeles County Tax Collector | 3,646.13 | |
| | **ESCROW CHARGES - Encore Escrow Company, Inc.** | | |
| 1,420.00 | Title - Escrow Fee | 1,420.00 | |
| | Title - Loan Tie-In Fee | 250.00 | |
| 200.00 | Title - Processing Demands & HOA $50 each | | |
| 50.00 | Title - Drawing Quitclaim Deed | | |
| | Title - Loan Tie-In Fee - 2nd (2nd Loan) | 100.00 | |
| 65.00 | Title - Messenger/Courier | | |
| | Title - Messenger Fee | 65.00 | |
| | **Net Proceeds** | | |
| | **Funds required** | | 45,581.24 |
| $  610,000.00  $  610,000.00 | **TOTAL** | $  621,474.43 | $  621,474.43 |

**THIS IS AN ESTIMATE ONLY AND FIGURES ARE SUBJECT TO CHANGE**

Certified to be a
true & correct copy
of the original

X————————

**074**

# EXHIBIT  E

To: 8182242789        From: OCWEN        Fax: OCWEN        Powered by KOFAX> at: APR-19-2018-07:16   Doc: 135   Page:002



## Ocwen Loan Servicing, LLC
www.ocwen.com
*Helping Homeowners Is What We Do!*®

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: 800.746.2936

See below for a breakdown of the total amount required to pay off the above-referenced account on or before 04/27/2018, as well as complete payoff instructions.

**Important Note:** If there is an escrow account associated with the mortgage for property taxes and insurance, we may need to pay the tax and insurance bills before this payoff quote expires on 04/27/2018. Any additional disbursements made on behalf of the mortgage will be added to the amounts due on payoff.

| Description | Amount Due |
|---|---|
| Principal | $558,700.53 |
| Interest | $217,318.92 |
| Escrow Advance | $36,203.52 |
| Property Inspection Fee | $172.25 |
| Property Maintenance Expense | $155.00 |
| Property Valuation | $109.00 |
| Notice of Default Recording | $34.00 |
| Fee/Recording | $18.50 |
| Appt. of Substitute Trustee | $21.00 |
| Notice of Sale | $31.00 |
| Legal Filing Service | $594.00 |
| Adversary Proceeding | $75.00 |
| Certified Mail Cost | $13.06 |
| Title Search | $1,205.00 |
| Late Charges | $173.46 |

| | |
|---|---|
| **Total Amount Due** | **$814,824.24** |

| | |
|---|---|
| Next Due Date | 05/01/2011 |
| Quoted Date | 04/19/2018 |
| Payoff Quote Expiration Date | 04/27/2018 |
| Grace Period End Date | 04/16/2018 |
| Original Principal Balance | $440,000.00 |

Given below is a breakdown of the interest that is shown above in the amount of $217,318.92 due on or before 04/27/2018. Please note that interest is generally charged in arrears. On a normal amortizing loan, the current month's payment will include the interest charges for the previous month. The unpaid principal balance is not the payoff amount.

| From | To | Interest Amount | Interest Rate | Principal Bal. | Daily Per Diem | # Days |
|---|---|---|---|---|---|---|
| 04/01/11 | 04/30/11 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |

NMLS # 1852                                                                                                                    PAYOFFF

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

**075**

To: 8182242789          From: OCWEN          Fax: OCWEN          Posted by KOFAX® at: APR-19-2018-07:16   Doc: 135   Page: 003



# OCWEN Loan Servicing, LLC
www.ocwen.com
*Helping Homeowners Is What We Do!®*

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: 800.746.2936

| From | To | Interest Amount | Interest Rate | Principal Bal. | Daily Per Diem | # Days |
|------|-----|----------------|---------------|----------------|----------------|--------|
| 05/01/11 | 05/31/11 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 06/01/11 | 06/30/11 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 07/01/11 | 07/31/11 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 08/01/11 | 08/31/11 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 09/01/11 | 09/30/11 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 10/01/11 | 10/31/11 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 11/01/11 | 11/30/11 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 12/01/11 | 12/31/11 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 01/01/12 | 01/31/12 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 02/01/12 | 02/29/12 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 03/01/12 | 03/31/12 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 04/01/12 | 04/30/12 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 05/01/12 | 05/31/12 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 06/01/12 | 06/30/12 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 07/01/12 | 07/31/12 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 08/01/12 | 08/31/12 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 09/01/12 | 09/30/12 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 10/01/12 | 10/31/12 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 11/01/12 | 11/30/12 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 12/01/12 | 12/31/12 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 01/01/13 | 01/31/13 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 02/01/13 | 02/28/13 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 03/01/13 | 03/31/13 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 04/01/13 | 04/30/13 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 05/01/13 | 05/31/13 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 06/01/13 | 06/30/13 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 07/01/13 | 07/31/13 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 08/01/13 | 08/31/13 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 09/01/13 | 09/30/13 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 10/01/13 | 10/31/13 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 11/01/13 | 11/30/13 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 12/01/13 | 12/31/13 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 01/01/14 | 01/31/14 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 02/01/14 | 02/28/14 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |

NMLS # 1852                                                                                          PAYOFFF

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

**Page 3 of 8**

076

To: 8182242789        From: OCWEN          Fax: OCWEN          Powered by
KOFAX9  at: APR-19-2018-07:16  Doc: 135  Page: 004



## OCWEN Loan Servicing, LLC
www.ocwen.com
*Helping Homeowners Is What We Do!®*

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: 800.746.2936

| From | To | Interest Amount | Interest Rate | Principal Bal. | Daily Per Diem | # Days |
|------|-----|----------------|---------------|----------------|----------------|--------|
| 03/01/14 | 03/31/14 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 04/01/14 | 04/30/14 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 05/01/14 | 05/31/14 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 06/01/14 | 06/30/14 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 07/01/14 | 07/31/14 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 08/01/14 | 08/31/14 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 09/01/14 | 09/30/14 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 10/01/14 | 10/31/14 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 11/01/14 | 11/30/14 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 12/01/14 | 12/31/14 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 01/01/15 | 01/31/15 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 02/01/15 | 02/28/15 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 03/01/15 | 03/31/15 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 04/01/15 | 04/30/15 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 05/01/15 | 05/31/15 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 06/01/15 | 06/30/15 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 07/01/15 | 07/31/15 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 08/01/15 | 08/31/15 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 09/01/15 | 09/30/15 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 10/01/15 | 10/31/15 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 11/01/15 | 11/30/15 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 12/01/15 | 12/31/15 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 01/01/16 | 01/31/16 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 02/01/16 | 02/29/16 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 03/01/16 | 03/31/16 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 04/01/16 | 04/30/16 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 05/01/16 | 05/31/16 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 06/01/16 | 06/30/16 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 07/01/16 | 07/31/16 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 08/01/16 | 08/31/16 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 09/01/16 | 09/30/16 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 10/01/16 | 10/31/16 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 11/01/16 | 11/30/16 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 12/01/16 | 12/31/16 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |

NMLS # 1852                                                                 PAYOFFF

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose.
However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for
informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to
collect a debt from you personally.*

**077**

To: 8182242789    From: OCWEN    Fax: OCWEN    Powered by KOFAX9  at: APR-19-2018-07:16    Doc: 135    Page: 005



### Ocwen Loan Servicing, LLC
www.ocwen.com
*Helping Homeowners Is What We Do!*

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: 800.746.2936

| From | To | Interest Amount | Interest Rate | Principal Bal. | Daily Per Diem | # Days |
|---|---|---|---|---|---|---|
| 01/01/17 | 01/31/17 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 02/01/17 | 02/28/17 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 03/01/17 | 03/31/17 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 04/01/17 | 04/30/17 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 05/01/17 | 05/31/17 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 06/01/17 | 06/30/17 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 07/01/17 | 07/31/17 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 08/01/17 | 08/31/17 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 09/01/17 | 09/30/17 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 10/01/17 | 10/31/17 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 11/01/17 | 11/30/17 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 12/01/17 | 12/31/17 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 01/01/18 | 01/31/18 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 02/01/18 | 02/28/18 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 03/01/18 | 03/31/18 | $2,560.71 | 5.50000% | $558,700.53 | $85.35702500 | 30 |
| 04/01/18 | 04/26/18 | $2,219.28 | 5.50000% | $558,700.53 | $85.35702500 | 26 |

NMLS # 1852                                                                PAYOFFF

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

078



### Ocwen Loan Servicing, LLC
www.ocwen.com
*Helping Homeowners Is What We Do!®*

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: 800.746.2936

## PAYOFF REQUIREMENTS AND CONDITIONS

Certified funds are required for payoff. Payoff funds must be provided via certified funds such as: Wire Transfer, Cashier's Check, Certified Bank Check, Title Company Check, Money Order, Attorney's Escrow Check, MoneyGram or Western Union. Non-certified payments will not be accepted, and the payoff will not be processed.

## HOW TO SUBMIT PAYOFF FUNDS

- Wire transfers are preferred. Wire transfer is the fastest, safest and most convenient payment option. Because this is the fastest option, it may also save money on per-diem interest.

- To make a wire transfer, provide the information listed under payment methods to the remitting bank.

- Be sure to always include the borrower's name, property address and account number on any remittance. If there is an inability to wire transfer funds, the payment should be sent in certified funds by overnight mail as shown below.

## PAYMENT METHODS:

| Preferred Option: Wire Transfer | | Overnight Mail |
|---|---|---|
| Bank: | Wells Fargo Bank, NA | Mail Certified Funds Check to: Ocwen Loan Servicing, LLC Attn: Cashiering / Payoff Department 1661 Worthington Road, Suite 100 West Palm Beach, FL 33409 Reference: Ocwen Account Number   5674 |
| Ocwen Bank ABA Routing Number: | 0248 | |
| Ocwen Bank Account Number: | 3352 | |
| Account Name: | Ocwen Loan Servicing, LLC | |
| Reference: | Ocwen Customer Account Loan #   5674, Property Address, and Borrower's Name | |
| Email: | Wire details to: Transferfunds@ocwen.com | |

*All checks/money orders should be made payable to: Ocwen Loan Servicing, LLC. **The mortgage account number, borrower's name and property address should be included on the front of any check or money order.**

| Western Union Quick Collect* | | MoneyGram* |
|---|---|---|
| Code City: OCWEN | | Receiver Code:  355 Payable to: Ocwen Loan Servicing, LLC City, State: Orlando, Florida Reference: Ocwen Account Number   5674 Agent locator: 800.926.9400 |
| State: Florida | | |
| Reference: Ocwen Account Number #   5674 | | |
| Agent Locator: 800.225.5227 | | |

**Western Union and MoneyGram may charge a fee for this service. Contact Western Union or MoneyGram for any payment or transaction limitations.

NMLS # 1852                                                                 PAYOFFF

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

**079**



**Ocwen Loan Servicing, LLC**
www.ocwen.com
*Helping Homeowners Is What We Do!*®

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: 800.746.2936

This payoff amount is subject to change. To the extent permitted by law, we reserve the right to correct any portion of this statement at any time.

- All balances are subject to change as a result of any transactions, the assessment of any fees, or any costs being incurred with respect to the account, which occur prior to the application of payoff funds. If the account is referred to foreclosure, becomes subject to a bankruptcy proceeding, if it was not already, or has any other valid fees or costs assessed to it prior to the Payoff Quote Expiration Date, this payoff quote is deemed invalid, and a new payoff quote will be provided.

- Similarly, if any payments applied to this account within the prior thirty (30) days of the date of this payoff quote are reversed for any reason, including but not limited to, insufficient funds or a stop payment being placed on a check, this payoff quote is deemed invalid, and a new payoff quote must be obtained from us to reflect the correct amount due and owing. Subsequent payoff quotes will reflect the full amount due and are subject to change for the reasons referenced above.

**Overpayment or underpayment of payoff amount.** Upon receipt of payoff funds, we will verify all amounts due and contact the issuer of the funds in the event of any discrepancies. The payoff amount does not include any applicable positive escrow balance. After the payoff funds have been applied, and the account has been reconciled, any overpayment of funds will be returned to the issuer through regular mail within 20 days of the date the funds are received. Escrow account overages will be disbursed within 20 days. Please be aware to the extent permitted by law, if the payoff funds received are less than the total amount necessary to pay the account in full, then any escrow funds remaining after payment of insurance and taxes due may be applied to the mortgage at payoff. If the desire is not to have any remaining escrow surplus funds applied to the loan at payoff, we must be notified at least 5 days prior to submitting the payoff funds. This notification may be emailed to payoffs@ocwen.com or faxed to 407.737.6118. In the event of an underpayment of the required stated payoff funds, if the escrow funds are insufficient to pay the account in full, we will return the funds and continue to accrue interest on the loan.

**Monthly payments due before payoff must still be paid by due date.** Issuance of this statement does not suspend the contractual requirement to make mortgage payments when due. If payoff funds are received after the expiration of the grace period, if such a period is applicable to this mortgage account, a late charge may be due. All late charges will be paid prior to the application of any payoff funds and preparation of the satisfaction of the Mortgage/Deed of Trust.

**Escrow disbursements will proceed until payoff funds are received.** Issuing this payoff statement will not stop future escrow disbursements. Property taxes or insurance may be paid after this quote is issued. If such disbursements create escrow advances and change the amount due to satisfy the mortgage, this payoff quote will be deemed invalid, and a new payoff quote must be obtained from us to reflect the correct amount due and owing. Subsequent payoff quotes will reflect the full amount due and are subject to change as referenced above.

**Past due fees still apply.** If the account is past due, collection expenses and legal fees may be accruing.

**Per diem interest may change.** If this is an adjustable rate mortgage, the per diem interest may change prior to payoff and the new per diem interest will be applicable for the payoff as well.

**The security instrument (Deed of Trust or Mortgage) will be released after payoff.** Upon receipt of the entire payoff amount, we will execute a release and discharge of the Deed of Trust/Mortgage and, if necessary, will file a withdrawal in connection with any legal action that may have been taken with regard to this mortgage account.

NMLS # 1852                                                                                      PAYOFFF

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

**080**

To:8182242789          From:OCWEN          Fax:OCWEN          Powered by:
KOFAX9  at:APR-19-2018-07:16   Doc: 135   Page:008



## Ocwen Loan Servicing, LLC
www.ocwen.com
*Helping Homeowners Is What We Do!®*

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: 800.746.2936

Prepayment penalty waiver may be allowed. If the terms of the mortgage documents allow for waiver of the prepayment penalty in certain circumstances, Ocwen must be provided with the requisite documentation to demonstrate waiver of a prepayment penalty in accordance with the terms of the mortgage documents. Such documentation must be provided to the Payoff Department within sixty (60) days following the date that the payoff was made. This documentation may be emailed to payoffs@ocwen.com or faxed to 407.737.6118. Unless otherwise prohibited by law, no prepayment penalty will be waived unless and until we are notified of the qualifying event.

Please verify the Social Security Number on file for tax reporting. Please visit our website at www.ocwen.com to verify the Social Security Number on file for the purposes of year-end tax reporting, if applicable.

For questions regarding this payoff quote, please contact our Customer Care Center at 800.746.2936. We are available Monday through Friday 8 am to 9 pm and Saturday 8 am to 5 pm ET.

Sincerely,
Loan Servicing

NMLS # 1852                                                                                    PAYOFFF

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

Page 8 of 8

081

| To: 8182242789 | From: OCWEN | Fax: OCWEN | Printed by KOFAX9 at: APR-19-2018-07:16  Doc:135  Page:001 |



## Ocwen Loan Servicing, LLC
www.ocwen.com
*Helping Homeowners Is What We Do!*®

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: 800.746.2936

04/19/2018

Account Number:    5674

Encore Escrow Company Inc.

**Property Address:** 625 S Berendo St 613, Los Angeles, CA 90005
**Requestor Fax Number:** (818) 224-2789

**Borrower(s) Name:** Giancarlo Nicolas Molica

# PAYOFF QUOTE
## VALID THROUGH 04/27/2018

Dear Requestor,



### Why We Are Sending This Letter

A payoff quote was requested for account number:    5674.

The total amount due is **$814,824.24**, which will be valid through 04/27/2018.

### What Needs To Be Done

1. Scheduled payments should still be made on time, until the account is paid off, to avoid late charges and payments being reported as late to the credit bureaus.
2. Refer to the following pages for a detailed breakdown of this quote and for payment instructions.
3. Payoff funds should be sent in one of the forms of certified funds listed here: Wire Transfer, Cashier's Check, Certified Bank Check, Title Company Check, Money Order, Attorney's Escrow Check, MoneyGram or Western Union. Funds not remitted in one of these forms will be returned, and the payoff will not be processed.

### What We Will Do

Upon receipt of payoff funds, we will verify all amounts due and contact the issuer of the funds in the event of any discrepancies.

After the payoff funds have been applied and the account has been reconciled, any overpayment of funds will be returned to the remitter through regular mail within 20 days of the receipt of the funds.

For any questions regarding this payoff quote, the Customer Care Center may be contacted at 800.746.2936, Monday through Friday 8 am to 9 pm and Saturday 8 am to 5 pm ET.

Sincerely,
Loan Servicing

Enclosure

---

NMLS # 1852                                                                  PAYOFFF

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

Page 1 of 8

**082**

# LILLY ENTERPRISES, INC.
# LILLY PROPERTY MANAGEMENT COMPANY

*Celebrating Over 25 Years*
*Of Providing Professional Service*
BROKER LICENSE 00754144

### Homeowner Association Demand Statement

To:   Jenica Pivnik, Escrow Manager- Encore Escrow
23901 Calabasas Rd., #1033 Calabasas, CA 91302
Email: jenica@encoreescrow.com Phone: 818-224-2788  Fax: 818-224-2789

Re:   625 South Berendo Street Penthouse #613, Los Angeles, CA 90005

The following Demand Statement concerns the above-referenced premises and is accurate as of the date herein executed below. If your sale closes after this date, please contact our offices for an updated statement.

1. Assessments are $ 411.00 per month; due on the 1st day of each month and payable as follows: Barcelona Tower Inc. c/o Lilly Property Management Co., 152 W. Walnut Street, Ste 290, Gardena, CA 90248.

2. Delinquent and currently outstanding assessments now total $55,638.88 for the period of July 1, 2006 through February 28. 2018

3. Late charges. Delinquent assessments will be assessed a late charge of (10%) of the amount of the delinquent assessment if not paid by the 16th of the month. A late charge will not be imposed more than once per delinquent installment.

4. Interest. Any installment not paid by the thirtieth (30th) day of the month will accrue interest at the rate of twelve percent (12%) per annum.

5. Assessed late charges total $5,563.89, and interest accrued in the amount of $7,344.33 is outstanding for the period(s) of July 1, 2006 through February 28, 2018.

6. Owner liability for the collection costs and attorney's fees incurred by the Association total $6,061.00.

7. Outstanding charges now totaling $74,608.10 is payable to (the Association), Barcelona Tower Inc.

8. A transfer fee of $50.00 is payable to: "Lilly Property Management, Co."

6. Premium for blanket hazard insurance is included in the monthly assessment.

7. Information regarding new owner(s) that must be provided to the Association to transfer membership:
   a.   Name of new owner(s)
   b.   Mailing address, if different from premises and email address if available
   c.   Telephone number for emergencies
   d.   Date ownership was transferred

Prepared by: _____     Date: February 28, 2018
Susan Fava: Agent

INVESTMENT, MANAGEMENT, DEVELOPMENT
152 West Walnut Street, Suite 290 Gardena, CA 90248
Tel: (310) 324-7400 Fax: (310) 324-7404 WWW.LILLYENTERPRISES.COM

**083**

# EXHIBIT  F

**This page is part of your document - DO NOT DISCARD**

## 20070669089

Pages:
0002

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**03/23/07 AT 01:04PM**

| | |
|---|---|
| Fees: | $31.00 |
| Taxes: | $0.00 |
| Other: | $6.00 |
| Paid: | $37.00 |

0000430094      200703230060098      Counter

## TITLE(S) : DEED

**L E A D   S H E E T**

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**      **Number of AIN's Shown**

THIS FORM IS NOT TO BE DUPLICATED

084

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL THIS DEED AND, UNLESS
OTHERWISE SHOWN BELOW, MAIL TAX STATEMENT TO:

NAME *REAL ESTATE SHORT SALES*
STREET *INC.*
ADDRESS *3580 Wilshire Blvd. #1700*
CITY, STATE *Los Angeles, CA 90010*
ZIP CODE

TITLE ORDER NO._____ ESCROW NO._____

03/23/07

20070669089

SPACE ABOVE THIS LINE FOR RECORDER'S USE

**GRANT DEED** *The value of the property in this conveyance is exclusive of liens and encumbrances is $100 or less and there is no additional consideration*

DOCUMENTARY TRANSFER TAX $ -00- Gift
☐ computed on full value of property conveyed, or
☐ computed on full value less liens and encumbrances remaining at time of sale.

Signature of Declarant or Agent Determining Tax      Firm Name

FOR VALUABLE CONSIDERATION, receipt of which is acknowledged, I (We), *received by Grantor under R or 1119.*
°°*GIANCARLO NICOLAS MOLICA*°° *a single man* _____ (NAME OF GRANTOR(S))

grant to *REAL ESTATE SHORT SALES INC.* (NAME OF GRANTEE(S))

all that real property situated in the City of _____ *LOS ANGELES* (or in an unincorporated area of)
*LOS ANGELES* (NAME OF COUNTY) County, *CA* (STATE) described as follows (insert legal description):

*Property Address: 625 S. Bereño St. #PH-13(613) Los Angeles, CA 90005
An undivided 1/79th interest to Lot 1, of Tract 53887, in the City of
Los Angeles, County of Los Angeles, State of California, as per map
recorded in Book 1296 pages 3 and 4 of maps, in the Office of the County
Recorded of said County.*

Assessor's parcel No. *5502-027-001*

Executed on *March 3, 2007* ___, ___ at _____ *Los Angeles, California*
(CITY AND STATE)

STATE OF *California*
COUNTY OF *Los Angeles*                    *GIANCARLO NICOLAS MOLICA*

On *3/3/07* before me, *Evelyn K. Escoto* Notary Public,
personally appeared *Giancarlo Nicolas Molica* personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

(SIGNATURE OF NOTARY)          (SEAL)

EVELYN K. ESCOTO
Commission # 1693979
Notary Public - California
Los Angeles County
My Comm. Expires Oct 13, 2010

RIGHT THUMBPRINT (Optional)

CAPACITY CLAIMED BY SIGNER(S)
☐ INDIVIDUAL(S)
☐ CORPORATE
OFFICER(S) _____ (TITLES)
☐ PARTNER(S) ☐ LIMITED
☐ GENERAL
☐ ATTORNEY IN FACT
☐ TRUSTEE(S)
☐ GUARDIAN/CONSERVATOR
☐ OTHER:

SIGNER IS REPRESENTING:
(Name of Person(s) or Entity(ies))

MAIL TAX
STATEMENTS TO:

Before you use this form, fill in all blanks, and make whatever changes are appropriate and necessary to your particular
transaction. Consult a lawyer if you doubt the form's fitness for your purpose and use. Wolcotts makes no
representation or warranty, express or implied, with respect to the merchantability or fitness of this form for an intended
use or purpose.

WOLCOTTS FORM 778 - Rev. 3-94b (price class 3A)
GRANT DEED   © 1994 WOLCOTTS FORMS, INC.

085

# EXHIBIT  G

DocuSign Envelope ID: 15DD1FC7-FBB9-49B0-A0A9-55A5401FEE5D



Encore Escrow Company Inc.

23901 Calabasas Rd., #1033, Calabasas, CA 91302

(818) 224-2788 • Fax: (818) 224-2789

Jenica Pivnik
Escrow Officer

Date:  October 4, 2018
Escrow No.:  15662-JP

Property Address:            625 South Berendo Street Unit #613  Los Angeles, CA  90005

## SUPERSEDING INSTRUCTIONS TO PAY COMMISSION

At the close of your above-numbered escrow, you are authorized and instructed to pay the following:

| | | |
|---|---|---|
| Pay Commission to | Rodeo Realty, Inc<br>23901 Calabasas Road #1050<br>Calabasas, CA  91302<br>Agent:  Behnaz Tavakoli | $15,250.00 |
| Pay Commission to | Douglas Elliman of California, Inc.<br>9470 Wilshire Blvd<br>Beverly Hills, CA  90212<br>Agent:  Marc Hernandez & Kevin DaSilva | $15,250.00 |
| TOTAL COMMISSION | | $30,500.00 |

This instruction  irrevocably assigns  the above stated commission  to the above named Broker(s).  This instruction may  not be amended  or revoked without  the written consent  of the Broker(s) hereinabove named.

SELLERS:

Nancy Zamora, also known as Nancy Hoffmeier
Zamora, Trustee for the Chapter 7 Estate for Real
Estate Short Sales, Inc., Case : 1:16-bk-11387-GM

By.     _____
        Nancy Zamora, also known as
        Nancy Hoffmeier Zamora,
        Trustee

Rodeo Realty, Inc.

BY: _____
            Authorized Signature

License # 00951359

Douglas Elliman of California, Inc.
DocuSigned by:
BY: _____Stan Smith_____
      4D1DE1B6607F46A   Authorized Signature
          01947727

License # _____

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

U.S. Bank Tower, 633 West 5th Street, Suite 2600, Los Angeles, CA 90071

A true and correct copy of the foregoing document entitled (*specify*):
MOTION FOR ORDER AUTHORIZING TRUSTEE TO SELL REAL PROPERTY FREE AND CLEAR OF LIENS, SUBJECT TO SHORT SALE APPROVAL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS IN SUPPORT [BERENDO PROPERTY]
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On October 16, 2018, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

United States Trustee: United States Trustee (SV), ustpregion16.wh.ecf@usdoj.gov, Katherine Bunker, kate.bunker@usdoj.gov; S. Margaux Ross, margaux.ross@usdoj.gov;
Trustee: Nancy Zamora, zamora3@aol.com, nzamora@ecf.epiqsystems.com
Debtor's Counsel: Stephen L. Burton, steveburtonlaw@aol.com, ellie.burtonlaw@gmail.com
Debtor's Former Counsel: Giovanni Orantes, go@gobklaw.com, gorantes@orantesjaw.com, cmh@gobklaw.com, gobklaw@gmail.com, go@ecf.inforuptcy.com
Creditors' Counsel: Matthew R. Clark, bkyecf@rasflaw.com, mclark@ecf.courtdrive.com, mclark@rasflaw.com, Allison Chua, achua@mcglinchey.com, mhegel@mcglinchey.com, crico@mcglinchey.com, selizondo@mcglinchey.com; Jill L. Kim, Jill@onelawcorp.com, Jill.Lee.Kim@gmail.com; Kelly M. Raftery, bknotice@mccarthyholthus.com, kraftery@ecf.courtdrive.com; Dean G. Rallis drallis@afrct.com, msinclair@afrct.com, AFRCTECF@afrct.com, mpham@afrct.com; Carol G. Unruh, cgunruh@sbcglobal.net; Kristine A. Zilberstein, ecfnotifications@ghidottilaw.com
Counsel for Interested Party: Charles Shamash, cs@locs.com, generalbox@locs.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On October 16, 2018, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor: Real Estate Short Sales Inc., 6360 1/2 Van Nuys Blvd, Van Nuys, CA 91401
Shareholders and related parties: Nancy Cueva; Julio Molica; Giancarlo Nicolas Molica, 10351 Oklahoma Avenue, Chatsworth, CA 91311
Trustee's Broker: Behnaz Tavakoli, Rodeo Realty, Inc., 23901Calabasas Road, Suite 1050 Calabasas, CA 91302
Escrow: Jenica Pivnik, Encore Escrow Company, Inc., 23901 Calabasas Road, #1033, Calabasas, CA 91302
Title: Michelle Pascual, First American Title Company, 655 North Central Avenue, 8th Floor, Glendale, CA 91203
Trustee's CPA: Samuel R. Biggs, CPA, SLBIGGS, A Division of SingerLewak, 10960 Wilshire Blvd., 7th FL, Los Angeles, CA 90024
First TD Holder: Ocwen Loan Servicing, LLC, 1661 Worthington Road, Suite 100, West Palm Beach, FL 33049
HOA: Barcelona Tower, Inc. c/o Lilly Enterprises Inc./Lilly Management Company, 152 West Walnut Street, Suite 290, Gardena, CA 90248
Second TD Holder: Beneficial California, Inc. c/o Registered Agent CT Corporation System, 818 West Seventh St Suite 930, Los Angeles, CA 90017; 26525 N. Riverwoods Blvd., Mettawa, IL 60045, Attn: Kathryn Madison, Officer
U.S Trustee: Kate Bunker, Esq., Office of the United States Trustee, 915 Wilshire Blvd., Suite 1850, Los Angeles, CA 90017
Judge: The Honorable Geraldine Mund, U.S. Bankruptcy Court, SFV Division, 21041 Burbank Boulevard, Suite 312, Woodland Hills, CA 91367

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on October 16, 2018, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 16, 2018 | Cynthia Casas | /s/ Cynthia Casas |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.