FILED & ENTERED

SEP 03 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Gonzalez DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Real Estate Short Sales Inc<br><br><br><br>                                   Debtor(s). | Case No.: 1:16-bk-11387-GM<br><br>CHAPTER 7<br><br>**MEMORANDUM OF OPINION HOLDING NANCY ZAMORA AND REAL ESTATE SHORT SALES, INC. IN CONTEMPT OF COURT**<br><br>Date:        August 20, 2019<br>Time:        10:00 AM<br>Courtroom:  302 |

The Motion for an Order to Show Cause was brought against Nancy Cueva and Real Estate Short Sales [RESS].  The Order to Show Cause was issued on December 19, 2018 (dkt. 329).

The Motion (dkt. 314) -filed on 12/14/18

The OSC re: Contempt deals with three specific actions:

1.  Violation of the Order Approving Revised Compromise (the "Compromise Order") [dkt. no. 226] that requires Parties to cooperate fully with the Chapter 7

Trustee's marketing and sale of that certain real property commonly known as 10351 Oklahoma Avenue, Chatsworth, California 91311 (the "Chatsworth Property") by filing an opposition to the Sale motion on behalf of Real Estate Short Sales, Inc. without an attorney; refusing on December 11 to schedule an appointment for December 12 or December 13 for interior access to the Chatsworth Property for the purposes of an appraisal required by the lender for buyer Haya Sara Yavor ("Buyer");

2. Violation of the sale order (the "Sale Order") [dkt. no. 302] that requires Parties to vacate the Chatsworth Property by noon on Monday, December 17, 2018 in that on December 14, 1028 Cueva's new counsel informed the Buyer's counsel that Cueva has no intention of vacating the Chatsworth Property by noon on December 17; and

3. Violation of the Compromise Order by opposing Trustee's sale motion for the Chatsworth Property and filing a notice of appeal of the Sale Order.

On December 19, 2018, the Court issued its Order to Show Cause Why Nancy Cueva and Debtor Should Not be Held in Contempt of Court. (Dkt. 329)

Opposition (dkt. 368)- filed on 1/15/19

The reason that they did not move out on December 17 was because the hearing on their stay motion was not set until December 18.  Also they believed (on their own and not from counsel) that the sale order violated the automatic stay of their chapter 13.

The Sale Order did not require the Debtor (as opposed to Cueva/Molica) to vacate the Chatsworth Property by noon on December 17.

Julio Molica was and is very sick, so the failure to allow the appraiser access on December 12 and December 13 and the failure to vacate on December 17 should keep that in mind.  However, after the Court ruled on December 18, the appraiser was promptly granted access.

Cueva believed that the automatic stay of the chapter 13 case precluded the Trustee from pursuing the sale and obtaining possession of the property and thus her conduct was justified.

1
2
Cueva and the Debtor had a justified belief that the setting of the Stay Motion for December 18 meant that they did not have to vacate Chatsworth on December 17.

3
4
5
6
7
8
The Debtor and Cueva did not violate the Compromise Order by opposing the Sale Order due to the filing of the chapter 13 case.  Nor did they do so by appealing the Sale Order based on issues that they believe to be valid.  Requiring that they "cooperate fully with Trustee's marketing and sale of the Chatsworth Property, subject to the Court's approval" cannot be read as a waiver of their rights to oppose the Sale Order.  The automatic stay cannot be waived in advance.

9
This OSC does not apply to Molica.

10
11
Reply (dkt. 375) – filed on 1/22/19

12
13
14
15
16
17
18
19
20
21
22
The Trustee lays out the facts that support her contention of bad behavior by Cueva and Molica - living cost-free in Chatsworth for 6 years before the Trustee was appointed (thus avoiding $500,000 in mortgage payments); remaining in the property without payments for another year after the Trustee was appointed; interfering with the sale of estate property; negotiating in bad faith to purchase the property; and increasing the estate's administrative expenses.  They benefitted by $85,000 by this 13-month extension after the Trustee was appointed.  After a buyer was obtained, they would not vacate the property and would not allow access to the Trustee's appraiser.  The Trustee was forced to petition the Court for an order to remove them, to which they responded by threatening the escrow and title officers with litigation pursuant to a bogus quitclaim deed.

23
24
The Trustee then lays out in detail the actions which interfered, delayed, and otherwise prejudiced the estate.

25
26
27
The Trustee states in her reply (filed on 1/22/19) that the sale has not yet closed due to the delays caused by Cueva and Molica.  The Trustee is not sure that the short sale lender will agree to any further extensions if Cueva and Molica continue to block

28

the sale by their contemptuous conduct. [*By the Court: the sale did close at a later date.*]

As to the specific items in the OSC:

(1) refusal to provide access - Cueva did not act in good faith by failing to allow the appraiser access on December 12 and December 13.  The Compromise Order required Cueva and the Debtor to cooperate with the Trustee's marketing and sale of the property.  This included the appraisal appointment.

(2) refusal to vacate: they were to vacate by noon on December 17, 2018, but Cueva and Molica refused to do so.  They continue to remove their personal property.

(3) violation of the Compromise Order by opposing the Sale Motion and filing a notice of appeal: These violated the provision of the Compromise Order requiring Cueva and the Debtor to cooperate fully with the Trustee's marketing and sale of the Chatsworth Property.

The Court has civil contempt power through 11 USC §105(a).  Civil contempt occurs when a party "disobeys a specific and definite court order by failure to take all reasonable steps within the party's power to comply.  The contempt 'need not be willful,' and there is no good faith exception to the requirement of obedience to a court order." *Go-Vidoe v. Motion Picture Ass'n of America (In re Dual Deck Video Cassetter Recorder Antitrust Litig.)*, 10 F.3d 693, 695 (9th Cir. 1993).  A party must take all reasonable steps to comply with a court order.  *Shuffler v. Heritage Bank,* 720 F.2d 1141, 1146-7 (9th Cir. 1983).

The Trustee has met her burden of proof in the application for the OSC and in the facts laid out in this reply.  Now the burden of proof shifts to the contemnors and they have not met this.  They have not put forth any evidence of an impossibility defense or of their inability to comply.

As to vacating the residence, Molica and Cueva may have moved out on 1/8, but they did not notify the Trustee and they left two inoperable vehicles.  Thus the U.S. Marshal deputies appeared with a locksmith (cost $3,000+ for the Marshals and $1,146

for the locksmith).  Cueva and Molica left the two cars and almost their entire personal property behind, and storage is likely to cost more than $10,000 plus $1,000 per month for insurance.

The Sale Order applies to all parties, including the Debtor.  A corporation acts through its principals.  Cueva and Molica claim to be equity holders, officers, and directors.  Therefore they are responsible for the Debtor's compliance with the Compromise Order and the Sale Order.

There is no medical exception to the obligation to comply with a court order.  There is also no evidence to verify the existence, extent, or duration of Molica's medical issues.  Molica was fully engaged during the appraisal and was seen driving a car with Cueva as his passenger as well as walking around.  They in fact have moved out and there is no showing that Molica's medical condition was an excuse for the delay.

The Chapter 13 filing was a procedural maneuver and not a good faith filing.  They had no interest in the Chatsworth property, so the chapter 13 stay could not apply.  Also, the automatic stay does not apply to the bankruptcy court where the debtor's bankruptcy is pending. [*By the Court: Please note that I cannot tell where the quotation on p. 19-20 of the reply is from.  It also appears to contain several mistakes as to the citations included - ie. according to Lexis, North Coast Village is at 135 B.R., not 132 and Maritime Elec. is at 959 F.3d, not 862.*]

Even if the stay could apply, the Court annulled it and dismissed the chapter 13 case.

There was no waiver of the Compromise Order.  There was no right to waive; also because the cooperation was an obligation of the Order, the discussion of waiver does not apply.

The Debtor and Cueva had no standing to file an appeal of the Sale Order.  There was no pecuniary interest of either in the property.  There was no possibility of surplus.

The Court has the ability to impose civil contempt penalties, which must be either compensatory or designed to coerce compliance.  The Trustee seeks the following compensatory sanctions:

Attorney's fees of no less than $20,000 and increasing

U.S. Marshal's fees of $3,000+ subject to final invoice

Locksmith charge of $1,146

Insurance of $11,672.95 subject to increase

Moving and storage of personal property of at least $10,000, to be determined based on whether Cueva and Molica pay and arrange for their own movers per Court Order or whether statutory notice applies

Misc. costs for certified copies, etc. of $351.62 subject to increase

Supplemental Opposition Declaration by Cueva (dkt. 382) – filed on 1/28/19

Cueva recounts the background of her relation to the Trustee and to the Oklahoma Ave. property and her attempt to sell it.  She had a proposed sale for $1.95 million, but the buyer dropped out when the Trustee wanted to take over. Cueva applied for a loan modification with the senior lien holder, but the Trustee interfered and told the bank that she wanted to do a short sale.

The quitclaim deed filed in December 2018 was not in bad faith.  As to the chapter 13 filed on January 4, 2019, Cueva and Molica employed Jeffrey Hagen and each [or both] paid him $1500.  This was to deal with personal and unsecured debt.

As to vacating on December 17, Cueva became unexpectedly ill and was unable to walk.  On December 25 she was taken to the ICU of West Hills Hospital and ordered to stay in the hospital for immediate surgery, which was performed on December 27, 2018.

On January 3, 2019 Deputy Valdez posted a defective lockout notice because he did not attach the third page of the writ or the order attached to the writ.  They waited for him to return on 1/8, but he never did.  On that day, Cueva, Molica, and the dog moved

to a hotel and have been there ever since.  She has been trying to retrieve the personal property, but had received no response from Deputy Valdez. Attached as an exhibit is a letter that she faxed on January 21, 2019 to David Singer, the United States Marshal, stating that she had made numerous attempts to obtain information about retrieving the personal property, including a visit to the Marshal's office on January 12.  No one has responded to her numerous calls.  This declaration was signed on January 28, 2019. [*The Court notes that the personal property was not removed until January 30, 2019 and that was done by a private moving company and Ms. Cueva was present and had the name of that company. The property was never in the possession of the U.S. Marshals Service.*]

Trustee's Supplemental Brief in Support of the OSC re Contempt (dkt. 438) – filed on 3/1/19

When Cueva and Molica moved out on Jan. 8, they left decades of records and personal property in and around the property and moved into a Ramada Inn.  This shows that they never intended to leave the property, regardless of the Court's order. The Court's Partial Order After Hearing (dkt. #384) had specific instructions with regard to removing the personal property.  Here is what has happened since January 31:

- 1/29/19 – escrow closed
- 1/30-2/1 Excalibur Moving and Storage assisted the Trustee in removing a vast majority of the personal property.  Cueva and Molica were present and took a few personal belongings with them.
- The vast majority of the personal property was moved to an Excalibur storage facility – Trustee paid $7,000
- The Trustee did not take possession of the two vehicles and at least one was still on the property when the buyer took possession
- Cueva and Molica did not remove their records from the garden shed and on 2/8 the Trustee turned possession of these records over to the FBI

- On 1/30 the Trustee served Cueva and Molica with Notices to Former Occupants advising them that if they did not retrieve their belongings from storage on or before 2/14, the Trustee would dispose of the property in accordance with California law.

- On 2/26, after numerous attempts to reach Cueva and Molica as to the stored personal property, Trustee's counsel sent a final notice to Daniel McCarthy, of Hill, Farrer & Burrill LP, by email notifying them that the Trustee intended to destroy all personal property left in storage on 2/28 unless the storage facility was cleaned out by then.

- On 2/27 counsel for the Trustee and the Trustee's real estate broker received correspondence from Cueva that she wished to take over the Excalibur contract.

- On 2/28 at 12:23 p.m. the Trustee received an email from Excalibur that Cueva will not pay the go-forward storage costs.  Therefore the Trustee has contacted an auctioneer.

The Trustee seeks no less than $18,328.72 to reimburse the estate for the costs and expenses that it has incurred and an additional $54,940 for the attorneys ($51,940 fees and $828.59 costs) and an additional estimated amount for additional fees incurred for the preparation of this pleading and the hearing.  The Trustee wishes to enforce the order pursuant to FRBP 7069 which is applicable to judgments.

The calculation of the $18,328.72 is as follows:

| U.S. Marshal to remove Cueva and Molica from the property | $3,248.60 | Needed to force them to vacate |
| --- | --- | --- |
| Excalibur | $7,000 | Moving & Storage fees |
| City One Locksmith | $1,146 | Cueva and Molica refused to turn over the keys |

| | | |
|---|---|---|
| BFRM Legal Support | $335.50 | Process server |
| Trustee Resource Group | $4,976 | Real property insurance |
| Trustee Resource Group | $633.93 | Personal property insurance |
| Echo reporting, Inc. | $98.40 | Transcript re: writ of execution 12/18/18 |
| Ben Hyatt Corp | $890.29 | Transcripts re OSC: 1/29/19, 1/31/19 |

All of the above are supported by invoices.

Molica and Cueva Opposition to Motion – filed on 8/20/19 in case 19-bk-10542[1]

Molica appeared at the hearing on August 20, 2019 (Cueva then being incarcerated) and filed another opposition containing the declarations of Molica and of Cueva. They state that Cueva could not move out at the designated time because she had gallbladder surgery and was hospitalized for a few days. Molica has stage four lung cancer, which requires weekly chemotherapy. He also has a heart condition and he could not arrange a move-out time due to Cueva's health condition.

**ANALYSIS**

Cueva filed an appeal of the OSC re: Contempt (USDC CAC 2:19-cv-00120), an appeal of the sale order (2:18-10689) and of the orders concerning the quitclaim deed recorded on December 26, 2018 (2:18-10742)  These were consolidated (2:18-10689), and the consolidated appeal was dismissed on July 18, 2019. As of the date of this memorandum, no further appeal has been taken.

---

[1] 1:19-bk-10542-MT is the joint chapter 13 filed by Cueva and Molica on March 8, 2019 and dismissed on July 1, 2019. Molica signed Cueva's declaration for her.

The recent history of the multiple chapter 13 filings is as follows:

18-10555 filed 3/2/18 – Molica. Dismissed 9/28/18

18-12486 filed 10/5/18 – Cueva. Dismissed 11/5/18

18-12905 filed 12/3/18 – Cueva and Molica. Dismissed 12/18/18

19-10542 filed 3/8/19 – Cueva and Molica Dismissed 7/1/19

Because Cueva had two or more cases pending and then dismissed within the previous year, there was no stay due to this most recent case.  11 USC §362(c)(4). There is also no stay as to RESS, which is not a debtor in any other bankruptcy filing.

"[I]t is firmly established that the power to punish for contempts is inherent in all courts." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44 (1991).

Civil contempt can be coercive or remedial.  Here the actions complained of are that Cueva and RESS did not comply with an affirmative command that they cooperate with the Trustee in selling the Oklahoma Ave. property and that they vacate that property by a date certain.  Since the time has passed to obey these commands, this might also be considered to be criminal contempt.  But the Trustee has not requested the Court to go down that road and the Court has no desire to jail or fine Cueva.[2]  Thus, this motion sought an OSC re civil contempt only.

Since there is no positive action to be taken at this time (except dealing with the personal property that is in storage and is no longer a liability of the Estate), a coercive order in this civil contempt matter is not possible. So the Court is limited to imposing sanctions for the expenses incurred by the Estate because of Cueva's violation of the Orders.

"Civil contempt. . .consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litig*., 10 F.3d

---

[2] At the hearing on August 20, 2019, Molica advised the Court that Cueva is currently incarcerated.  The Court has no information as to the reason, etc. for this.

693, 695 (9 Cir. 1993). . . . Contempt power, like other "inherent powers" of the judiciary, "must be exercised with restraint and discretion." See *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764-65, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980) (citing *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450-51, 31 S. Ct. 492, 55 L. Ed. 797 (1911); *Green v. United States*, 356 U.S. 165, 193-94, 78 S. Ct. 632, 2 L. Ed. 2d 672 (1958) (Black, J., dissenting)). Nevertheless, "[t]he purpose of contempt proceedings is to uphold the power of the court," *Bessette v. W.B. Conkey Co.*, 194 U.S. 324, 327, 24 S. Ct. 665, 48 L. Ed. 997 (1904), and to ensure that the court's vindication of litigants' rights is not merely symbolic. Our orders would have little practical force, and would be rendered essentially meaningless, if we were unable to prevent parties bound by them from flagrantly and materially assisting others to do what they themselves are forbidden to do. . . .We hold that the Plaintiffs are entitled to recover attorney's fees and costs incurred in bringing and prosecuting these contempt proceedings. "[T]he cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party and those costs would reduce any benefits gained by the prevailing party from the court's violated order." *Perry v. O'Donnell*, 759 F.2d 702, 705 (9 Cir. 1985).

*Research Inst. of Cetacean v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 945, 951, 958 (9th Cir. 2014)

Recognizing the contempt power's virility and damage potential, courts have created a number of prudential principles designed to oversee its deployment. For one thing, in levying contempt sanctions, the court must exercise the least possible power suitable to achieve the end proposed. *Spallone v. United States*, 493 U.S. 265, 110 S. Ct. 625, 632, 635, 107 L. Ed. 2d 644, 58 U.S.L.W. 4103 (1990); *Shillitani v. United States*, 384 U.S. 364, 371, 16 L. Ed. 2d 622, 86 S. Ct. 1531 (1966). Second, "a complainant must prove civil contempt by

clear and convincing evidence." *Langton*, 928 F.2d at 1220. For another thing, civil contempt will lie only if the putative contemnor has violated an order that is clear and unambiguous. See *Local 1291*, 389 U.S. at 76; *NBA Properties, Inc. v. Gold*, 895 F.2d 30, 32 (1st Cir. 1990); *Drywall Tapers and Painters of Greater N.Y., Local 1974 v. Local 530 of Operative Plasterers and Cement Masons Int'l Ass'n*, 889 F.2d 389, 395 (2d Cir. 1989), cert. denied, 494 U.S. 1030, 110 S. Ct. 1478, 108 L. Ed. 2d 615 (1990); *Ferrell v. Pierce*, 785 F.2d 1372, 1378 (7th Cir. 1986); *Inmates of the Allegheny County Jail v. Wecht*, 754 F.2d 120, 129 (3d Cir. 1985); *Reed v. Cleveland Bd. of Educ.*, 607 F.2d 749, 752 (6th Cir. 1979).

Related to this last requirement is the principle that any ambiguities or uncertainties in such a court order must be read in a light favorable to the person charged with contempt. *NBA Properties*, 895 F.2d at 32.

*Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 16 (1st Cir. 1991)

For civil contempt based on disobeying a court order, courts generally require that some version of the following be established:

•The order was in effect at the time of the alleged disobedience;

•The respondent had actual or constructive notice of the order;

•The order is clear and unambiguous;

•The respondent was not reasonably diligent in attempting to accomplish what was ordered; and

•If compensatory damages are sought, proof of actual damages.

*CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016); *Hawkins v. Dep't of Health & Human Servs. for New Hampshire, Com'r*, 665 F.3d 25, 31 (1st Cir. 2012); *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000); *Reliance Ins. Co. v. Mast Constr. Co.*, 84 F.3d 372, 377 (10th Cir. 1996).

**The Compromise Order and the Sale Order Were Both in Effect at the Time That Cueva Disobeyed Them**

The Compromise Order (dkt. 226) provided for a payment plan by which Cueva could effectively buy the Oklahoma Ave. property from the Estate.  But if she failed to comply, the Order states:

> IT IS FURTHER ORDERED that if Cueva fails to timely tender any of the installments on their respective payment deadlines, then Trustee may retain, for the benefit of the Estate, the funds from any previous installments that were paid prior to the missed installment as liquidated damages and Debtor and Cueva will cooperate fully with Trustee's marketing and sale of the Chatsworth Property, subject to the Court's approval …

No appeal was taken from the Compromise Order, which was entered on March 26, 2018 and was never modified.  No payments were tendered and this default triggered the requirement that the Debtor and Cueva cooperate with the marketing and sale of Oklahoma Ave.

The Sale Order (dkt. 302) entered December 4, 2018 required Cueva and Molica to vacate the premises by noon on December 17, 2018:

> N. Residents at the Real Property who are affiliated with Debtor, including, but not limited to, Nancy Cueva and Julio Molica (collectively "Residents"), shall vacate the Real Property, without causing damage, no later than 12:00 noon on December 17, 2018, consistent with that certain Order Approving Revised Compromise (the "Compromise Order") and, if Residents fail to comply with the Compromise Order and this Order then Trustee and/or Buyer shall be entitled to, on an emergency ex parte basis, to seek a writ of possession from this Court and to employ the U.S. Marshal and/or any other local law enforcement to remove Residents and Residents' failure to vacate the Real Property shall not delay the close of the Sale Escrow.

1

2    On December 13, 2018, Cueva, Molica, and the Debtor sought a stay in the

3    bankruptcy court (dkt. 309) and on that same date Cueva, Molica, and Debtor appealed

4    the Sale Order (dkt. #308/335, BAP 18-1336). The bankruptcy court denied an

5    immediate stay and set the hearing for a stay pending appeal for December 18, 2018

6    (dkt. 311).  This was denied by order entered on December 19, 2018 (dkt. 327).  There

7    was no motion for a stay at the BAP and on December 27, 2018 the case was

8    transferred to the district court.  On December 28, 2018, Cueva, Molica, and RESS filed

9    an emergency motion for a stay pending appeal in the district court (2:18-cv-10689-

10   DSF, dkt. 6) and this was denied on January 2, 2109 (dkt. 7).

11   On January 2, 2019, in denying the motion for a stay pending appeal, Judge Dale

12   S. Fischer wrote the following:

13        Appellants have virtually no chance of success on the merits.

14   The record indicates that they are equity holders and possibly unsecured

15   creditors of an insolvent Chapter 7 debtor, along with the debtor itself.

16   Appellants' legal and equitable interests were not affected by the

17   Bankruptcy Court's order allowing the sale of the Chatsworth Property free

18   and clear of interests. Appellants have/had no direct personal interest in

19   that property. In the emergency stay motion before this Court, Appellants

20   claim that Appellants Nancy Cueva and Julio Molica are tenants of the

21   debtor at the Chatsworth Property. There is no support for this assertion in

22   the record and it was never raised before the Bankruptcy Court. All

23   indications in the record are that Cueva and Molica have occupied the

24   Chatsworth Property without any legal right to possession.

25        For similar reasons, Appellants are extremely unlikely to suffer any

26   irreparable harm because they have nothing to gain from a stay or this appeal.

27   In contrast, everyone else involved has something to lose because a stay

28   could cause the pending sale to fail. Right now, the estate will gain $60,000

with which to pay administrative costs and unsecured creditors. If the sale fails,
the first lienholder is very likely to foreclose and wipe out all value to
the estate and other creditors.

On March 12, 2019, Judge Fisher consolidated the three appeals filed by Cueva,
et al: CV 18-10689, CV 18-10742, and CV19-120.[3]

**Cueva Had Actual Knowledge of the Orders**

There is no dispute that Cueva had actual knowledge.  She was a party to
the Compromise Order and appeared in court at hearings and opposed the Sale
Order.

**The Compromise Order is Clear and Unambiguous**

The Compromise Order states that Cueva and RESS "will cooperate fully
with Trustee's marketing and sale of the Chatsworth Property, subject to the
Court's approval."

The Compromise Order arose as a result of the Trustee seeking to market
the property.  On December 11, 2017, the Court had authorized the Trustee to
employ a broker. (dkt. 192)  When Cueva defaulted on the compromise, the
broker listed and actively marketed the property and in August 2018 a purchase
agreement was entered into with Sara Yavor.  This was later amended as to price.
(dkt. 289)

---

[3] CV 18-10689 appeals dkt. 302 (entered 12/4/18) – "Order Authorizing Trustee to Sell Property Free and Clear of
Liens, Subject to Short Sale Approval."
CV 18-10742 appeals dkt. 348 (entered 12/27/18) – "Order (1) Determining Quitclaim Deed Recorded 12/26/18
Null and Void and (2) Authorizing and Directing First American Title Company to Disregard Quitclaim Deed for
Purposed of Insuring Title to Real Property."
CV19-120 appeals dkt. 328 and dkt 329 (entered 12/19/18) – respectively "Writ of Execution for Possession of Real
Property Commonly Known as 10351 Oklahoma Avenue, Chatsworth. CA 91311" and "Order to Show Cause Why
Nancy Cueva and Debtor Should Not Be Held in Contempt of Court."

The docket reflects that on November 12, 2018 the Trustee filed a Motion to Sell Oklahoma Ave, and a Notice of Public Sale of Oklahoma Ave. for $950,000 with a hearing date of December 4. (dkt. 289, 291).  In this motion, the Trustee requested that the Sale Order require Cueva and Molica to vacate by December 11, which would be seven days after the hearing on the Motion.  The Trustee notes that cooperation is required by the Compromise Order.

The sale took place as scheduled on December 4 and on December 11 the Trustee asked Cueva to set up an appointment for December 12 or December 13 for an interior inspection as required by the buyer.  Cueva refused and no reason is given in these papers.  Since the marketing and sale were done with the Court's approval and the Sale Order required that Cueva and RESS take certain actions, this was a clear violation of the Compromise Order.  The Compromise Order is unambiguous that once there is court approval to an action, Cueva was required to comply with it.  She did not do so.  Instead, she filed an appeal of the Sale Order – though none of the Compromise Order.

As can be seen by the order of this court and of the district court, the appeal lacked sufficient merit and thus no stay was granted and the sale was allowed to close.

The recording of a quitclaim deed on December 26, 2108 was a blatant attempt to interfere with the sale. The quitclaim deed stated that – as a gift – RESS "represented by president Nancy A. Cueva" – transferred "66% of the property value of 10351 Oklahoma Ave., Chatsworth, CA 91311" to Cueva and Molica.[4]  It was purportedly signed on October 10, 2015, but only notarized on December 26, 2018.  The property was then in escrow and scheduled to close, so the Court issued an order that the quitclaim deed was null and void and authorized and directed the title company to disregard it for purposes of insuring title to the real property. (dkt. 347, 348).  It was obviously necessary to back-date this

---

[4] It should be noted that Cueva and Molica owned 66% of the interest in RESS and their son owned the balance.(dkt. 368, p. 4)

quitclaim deed since the Oklahoma property was property of this estate and the bankruptcy was filed in 2016.  This is nothing more than a fraudulent document meant to prevent the issuance of title insurance so that the sale would not close.

**Is Molica Subject to this Motion?**

When the motion for an OSC re:contempt was filed, Molica was not named as a party although he had been required to vacate under the Sale Order. In her Reply papers (dkt. 375), the Trustee discussed Molica's actions and at some point she indicated that he might be liable since he was an officer of RESS.  Daniel McCarthy - as counsel for RESS, Cueva, and Molica -  specifically included Molica as an opposing party to the sale and as an appellant on the sale motion (dkt. 309). However, Molica was not named in the OSC.  And while Cueva is the sole driving force of RESS.  It is virtually certain that she discussed the delays with Molica and that he consented and took no action to move, etc. in a timely fashion, and thus could be seen as one who knowingly aided and abetted Cueva in violating the court's order and thus be equally liable with Cueva. *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d at 945.  Had Molica been individually named in the various orders or in the contempt OSC, the Court might also hold him liable for contempt assuming that he had proper notice of the Sale Order, but not as to the Compromise Order since he was not a party to that.  But he was not named.

**Did Cueva and RESS Intentionally Violate the Compromise Order and the Sale Order by Failing to Vacate by 12/17/18?**

Generally, good faith is not a defense to civil contempt. However, the Ninth Circuit recognizes a "narrow" exception to this rule that allows a "good faith" defense in a civil contempt proceeding if the defendant's action appears to be based on a good faith,

reasonable interpretation of the order when the order is otherwise vague or ambiguous. *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d at 953.

Neither the Compromise Order nor the Sale Order can be seen as vague or ambiguous or given any reasonable interpretation other than to cooperate and to move. However, Cueva argues that she did not comply with the order to vacate by December 17 because of the delay in the hearing on a stay until December 18. While under other circumstances this might be a reasonable defense and basis of confusion, it is clear that Cueva did not intend to vacate at any time and that she was doing all that she could to block consummation of the sale. See for example her recording of a quitclaim deed on December 26, 2018 (dkt. 347, 349). The contention that the delay in moving was because the hearing on the stay was set for December 18 was only raised by Cueva's attorney and not by Cueva herself. In her supplemental opposition, Cueva never mentions the stay hearing but asserts that she was ill on December 17 and unable to move.(dkt. 382) Her evidence of admission to the hospital over a week later does not support her inability to have moved in a timely fashion. One simply does not move overnight. It takes time to locate new housing, pack valuables, arrange for a moving company, etc. It is clear that she had made no arrangements to move, had done little or no packing, and intended to remain in the house as long as possible – certainly beyond the December 17 date.

More specifically as to the health issues, the Court has no reason to disbelieve that Molica is in ill health, though no medical records have been provided to substantiate this. But no one expects him to personally pack and move boxes or undertake other physical labor. And his ongoing need for chemotherapy is no excuse for Cueva's refusal to make the necessary arrangements to move.

As to Cueva's health issue, the Court has never received medical records except a form dated January 3, 2019 from Dr. Schreier, a surgical oncologist, that Cueva had emergency surgery on December 28, 2018 and was to have no strenuous activity.(dkt. 382, p. 28). This, together with the Amended Supplemental Declaration of Nancy

Cueva that on December 25, 2018 Cueva was taken to the ICU at West Hills Hospital and that the surgery was performed on December 27 (dkt. 382, p. 2) and her declaration filed and signed on August 20, 2019[5] that she had gallbladder surgery, shows that her health problems arose (or became acute) a week after the required move-out date.

As to the issue of her belief that she was protected by the automatic stay of the new chapter 13, the Court finds that the mere act of filing the chapter 13 was solely for the purpose of interfering with the sale and was to be used as a basis not to vacate the property.  Beyond that, she attempted to keep that case open by lying to the Court [though not under oath] as to her filing of a request for an extension to file her schedules.  She had her attorney state that Cueva had timely filed a request to extend time to file schedules in that case.  The document was never located in the clerk's office and thus the court dismissed the case.  Although Cueva was given an opportunity to vacate the dismissal if she could present a conformed copy of her application to extend, she did not do so. (transcript of 12/18/18 hearing, dkt. 341, pp. 14-17; 62-63)    The Court finds that no such application for extension was ever filed.  Also, on December 4, Cueva represented to the Court that Jeffrey Hagen would be representing her in her chapter 13 case.  (transcript of 12/4/18 hearing, dkt. 325, p. 7)  Although he consulted with her, the chapter 13 was filed pro se.[6]

As to the assertion that the various delays were due to the poor health of Molica - the Court does not accept that as an excuse.  Beyond the fact that the Compromise Order was many months before the Sale Order and thus Molica/Cueva had more than sufficient time to prepare to move, the declaration of Behnaz Tavakoli provides evidence that Molica was not unable to physically move out - he was able to walk and to drive.  Even had he been immobile, this would not be an excuse since he had months to prepare. Beyond that, the move did not require that Molica or Cueva personally move

---

[5] As noted above, this was incorrectly filed in case 19-bk-10542-MT.  The declaration was signed by Molica for Cueva.

[6] 1:18-bk-12905, filed 12/3/18

furniture or possessions.  This could have been done by a moving company, which is capable of packing up everything.

The fact that Cueva and Molica initially stayed in a hotel [the Ramada Suites, dkt. 382, 3:6-7] shows that they made no plan to move.  They did not timely rent an apartment so that their property could have been taken there. They just intended to stay indefinitely – which was an intentional violation of the court orders.

All of these efforts and assertions were in order to prevent the Trustee from completing the sale.  They were obstructionist and not in good faith.

However as to the issue of the opposing the Sale Order and filing the various appeals, the Court does not find that these were a violation of the Compromise Order. That Order did not give the Trustee a blank check to act in any fashion without allowing the Debtor and Cueva to seek judicial review and to be heard.  Here the Trustee acted properly, but the opposition and appeals were not contemptuous.

The Trustee has laid out sufficient facts to meet her burden that by clear-and-convincing evidence the actions by Cueva and the Debtor were an intentional violation of prior orders of this Court - specifically the Compromise Order and the Sale Order.

**What is the Proper Sanction for this Contempt?**

Civil contempt may be used to compensate the aggrieved party even if the action by the contemnor can no longer be undone:

> Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained.  *Gompers v. Bucks Stove & Range Co*., *supra*, at 448, 449. Where compensation is intended, a fine is imposed, payable to the complainant. Such fine must of course be based upon evidence of complainant's actual loss, and his

///
///

right, as a civil litigant, to the compensatory fine is dependent upon the outcome
of the basic controversy.

*United States v. United Mine Workers*, 330 U.S. 258, 303-304 (1947)

A contempt fine accordingly is considered civil and remedial if it either "coerces
the defendant into compliance with the court's order, [or] . . . compensates the
complainant for losses sustained." *United States v. Mine Workers*, 330 U.S. 258,
303-304, 91 L. Ed. 884, 67 S. Ct. 677 (1947). Where a fine is not compensatory,
it is civil only if the contemnor is afforded an opportunity to purge. See *Penfield
Co. of Cal. v. SEC*, 330 U.S. 585, 590, 91 L. Ed. 1117, 67 S. Ct. 918 (1947).
Thus, a "flat, unconditional fine" totaling even as little as $ 50 announced after a
finding of contempt is criminal if the contemnor has no subsequent opportunity to
reduce or avoid the fine through compliance. *Id.*, at 588.

*Int'l Union v. Bagwell*, 512 U.S. 821, 829 (1994)

Here the sanction would be compensatory since there is nothing left for Cueva and
the Debtor to do.  It appears that the proper result would be an order that Cueva pay the
Trustee the sum necessary to compensate for the actions taken as a result of her
contempt.  The Court has the authority to award the sanction in the amount needed to
recover for the Estate the amount of the actual losses it suffered, but not more than that.
*Quinter v. Volkswagen of Am.*, 676 F.2d 969, 975 (3d Cir. 1982).

In her Supplemental Brief (dkt. 438) the Trustee provides an accounting and
evidence of the cost to the Estate.  The cost, exclusive of attorney's fees and expenses
by the attorney, totals $18,328.72.  Exhibit 14 to that document is the recap of the fees
incurred for the Brutzkus Gubner firm to represent the Trustee in her removal of Cueva
from the Oklahoma Avenue property.  It should be noted that the Trustee represented
herself until Cueva's actions made it clear that she and Molica would not voluntarily
move.  Only on December 24, 2018 – a week after the date for the required move-out –

did Ms. Zamora hire counsel.  Had Cueva/Molica moved in a timely fashion, the Estate

would have been spared this expense.  The Court finds that the fees and costs incurred

for counsel for the Estate are reasonable and are the result of Cueva's contempt. Thus

the total amount incurred by the contempt is as follows:

> Attorney fees: $51,940[7]

> Attorney costs: $828.59

> Other itemized costs: $18,328.72


The Court is aware that the Trustee seeks an additional $3,000 for work that was

yet-to-be-done after her last papers were filed, but the Court declines to add those as

they are speculative.


There will be no monetary award as to RESS since it is a corporation whose assets

have now been liquidated and are owned by the Estate.

As to the amount of the sanction on Cueva, if this were a coercive sanction, the

Court would have to determine that she has the ability to make the payment.  But that is

not necessary in this case, which is a compensatory one.

Nonetheless, the Court has reviewed the chapter 13 schedules filed by Cueva and

Molica a few months ago in their most recent chapter 13 case.  These show $314,622 in

assets (most in a lawsuit against John Huynn) and $106,784 in liabilities.[8] Their net

monthly income is about $1,100 which comes from sources that are probably exempt

from garnishment.  However, the Trustee is not precluded from seeking other assets or

moving forward to collect by any legal means.

Beyond that, while the Court has doubted Ms. Cueva's finances, in that she has

never asserted that she did not have sufficient money to comply with the order to move.

And she has hired counsel – Hill, Farrer & Burrill, LP (HF&B) - and paid them a retainer

---

[7] This amount is in line with the $49,000 in fees incurred by Cueva/Molica for HF&B's representation in this case.
(dkt. 426)
[8] 1-19-bk-10542, dkt. 36

of $20,000 and agreed to an hourly rate of $650.  (dkt. 324)  There is evidence that she and Molica owe HF&B an additional $29,000+ for work done in December and January (dkt. 426).  However, it appears that Cueva and Molica's son may be responsible to HF&B for this amount.

Her ability to pay is not really something to consider unless the Trustee intends to seek compliance by incarceration or some such order until the amount of the sanction is paid.  Since the Court is limiting this to a money judgment – which is what the Trustee is seeking - the critical issue is that the amount merely compensate the Estate for the monies expended and the ability of Cueva to pay this becomes irrelevant as it would in any other action on a tort.

"Although a defendant's diligence and good faith efforts are not a defense to contempt, these factors may be considered in assessing penalties, a matter as to which the district court has considerable discretion." *TiVo Inc. v. EchoStar Corp*., 646 F.3d 869, 880 (Fed. Cir. 2011).  In this particular case, the Court believes that it is proper to award the entire compensatory damages to the Trustee.  Cueva did all that she could to delay the sale.  In general she refused to cooperate with the Trustee.  By her actions, she placed the burden on the creditors to absorb the costs that she required the estate to incur.  The Trustee will be given the right to attempt to recover that amount from Cueva by any legal means.

## **RULING**

By clear and convincing evident, the Court finds that Nancy Cueva and Real Estate Short Sales, Inc. are in contempt of the Court as to the Compromise Order and as to the Sale Order.  The Trustee is awarded a judgment against Nancy Cueva in the amount of

//

//

//

$71,097.31.  There will be no monetary judgment against Real Estate Short Sales, Inc. There will be no judgment against Julio Molica in that he was not named in the Motion or in the Order to Show Cause.

###

Date: September 3, 2019

_____

Geraldine Mund
United States Bankruptcy Judge